# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| OCLC, INC., | Case No. 2:25-cv-309 |
| Plaintiff, | |
| v. | |
| Baker & Taylor, LLC; Bridgeall Libraries Ltd., | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

OCLC, Inc. ("OCLC"), by and through counsel, files this Complaint for injunctive relief and damages against Baker & Taylor, LLC ("Baker & Taylor") and Bridgeall Libraries Limited ("Bridgeall") (collectively "Defendants"), and in support thereof, states the following:

### NATURE OF ACTION

1.      OCLC was founded in 1967 in Ohio as a non-profit organization that provides shared technology services, original research, and community programs for its membership and the library community at large.

2.      OCLC has made substantial investments into its bibliographic records database, including $170 million over the past 5 years in creating and enhancing the database and associated data. OCLC markets this robust database as WorldCat®, which is primarily for cataloging purposes but is integrated into and supports many of OCLC's other product and service offerings. Because of OCLC's substantial investments in WorldCat, WorldCat is the authoritative source of bibliographic records for libraries and academic institutions.

3.     In fact, WorldCat was directly responsible for an average of 39% of OCLC's revenue over the last 5 years. WorldCat is responsible, directly and indirectly, for 83% of OCLC's revenue over the last 5 years.

4.     WorldCat is the cornerstone of OCLC's other products and services for libraries and other institutions that require library services.

5.     Baker & Taylor more recently began to focus on expanding its software products and services to libraries. These offerings now include data and analytics, as well as cataloging and technical processing services for libraries.

6.     In 2017, OCLC discovered that Baker & Taylor was improperly gaining access to WorldCat through Baker & Taylor's subsidiary, which OCLC hired as a consultant. After OCLC cut off all access to WorldCat, Baker & Taylor approached OCLC for a license to access and use WorldCat.

7.     Eventually, OCLC and Baker & Taylor entered into a WorldCat Data Licensing Agreement in 2019 (the "Agreement"), which granted Baker & Taylor a license to extract and use a limited number of WorldCat records and associated data. At this time, Baker & Taylor was not offering a cataloging product or service that directly competed with WorldCat, and Baker & Taylor never disclosed to OCLC its intention to develop and provide such a competing product or service in the future.

8.     In 2021, OCLC learned that Baker & Taylor planned to launch BTCat, a cataloging utility and bibliographic database, to directly compete with WorldCat. Shortly after, OCLC notified Baker & Taylor that it was terminating the Agreement and thus all direct access to WorldCat. Baker & Taylor's lawful access for downloading a limited number of WorldCat records under the Agreement officially ended on September 16, 2022.

9. Throughout the term of the Agreement, Baker & Taylor extracted WorldCat records and data in excess of the amount permitted by the license, while also underreporting and misrepresenting to OCLC the scope of its downloads and other activities.

10. Once Baker & Taylor no longer had direct access to WorldCat under its Agreement with OCLC, it needed other means to capture and use WorldCat records and data to build, expand, and train its new BTCat service. Defendants chose to unlawfully obtain WorldCat records and data by targeting OCLC's customers.

11. In 2024, OCLC discovered that BTCat contains enriched and enhanced WorldCat records and associated data, which, on information and belief, is beyond the scope of the Agreement.

12. This led OCLC to investigate Baker & Taylor's relationships with OCLC's customer libraries to protect WorldCat and OCLC's goodwill amongst its customers. OCLC found publicly available contracts for Baker & Taylor's non-cataloging services, including services provided by Bridgeall, that contained a provision requiring libraries to authorize Baker & Taylor to access the library's catalog and license all catalog records to Baker & Taylor for use in BTCat (or any other Baker & Taylor product or service). In exchange, libraries can access BTCat for free.

13. Crucially, many of Defendants' customer libraries are also OCLC and WorldCat customers. This means that Baker & Taylor has been able to access WorldCat records and data in these catalogs without a valid license or other authorization from OCLC.

14. By inserting this provision in their contracts for products and services, Defendants have attempted to create a contractual backdoor to obtain WorldCat records.

15. As Defendants know, WorldCat customers are contractually prohibited from downloading and distributing WorldCat records *en masse* or otherwise taking steps that devalue

WorldCat, such as granting access to or a license for WorldCat records to a direct competitor. Defendants are thus encouraging OCLC WorldCat customers to violate their contracts with OCLC.

16. Through these actions, Defendants have populated BTCat with high-quality WorldCat records and data and bypassed the need to invest the significant time and money necessary to develop similar quality records and data on their own. This shortcut has allowed Baker & Taylor to offer BTCat—again, a competing product to WorldCat—for a fraction of the cost of a WorldCat subscription.

17. OCLC has already lost WorldCat customers to BTCat, and OCLC anticipates that it will lose more current and prospective customers if Defendants are permitted to continue to steal WorldCat records and data to fill BTCat.

18. Defendants' attack on WorldCat is a fundamental threat to OCLC and everything that it does. Indeed, WorldCat is the backbone of OCLC and all its products and services. For these reasons, and others more fully detailed herein, OCLC brings this lawsuit to put a stop to Defendants' attempt to build their BTCat cataloging service on the backs of OCLC and its customer libraries by stealing nearly sixty years of work and hundreds of millions of dollars that OCLC has invested in creating WorldCat and its enriched, high-quality catalog records.

## THE PARTIES

19. OCLC, Inc. ("OCLC") is an Ohio nonprofit corporation with its principal place of business in Dublin, Ohio.

20. Baker & Taylor, LLC is a Delaware limited liability company with its principal place of business in Charlotte, North Carolina. Its sole member is BTAC Holding Corporation, which is incorporated in Delaware.

21.     Bridgeall Libraries Limited, a subsidiary of Baker & Taylor, LLC, is a Scotland private limited company with its principal place of business in Glasgow, Scotland.

## JURISDICTION AND VENUE

22.     This is a complaint for declaratory relief, injunctive relief, and damages under Ohio law for tortious interference of contract, tortious interference of prospective business relationships, contractual breach, and unjust enrichment. Jurisdiction is conferred by 28 U.S.C. §§ 1332 and 2201. There is complete diversity of citizenship among the parties, the amount in controversy exceeds the value of $75,000, exclusive of interest and costs, and an actual controversy exists between the parties.

23.     Defendants themselves and through their agents and/or affiliates transacted business in Ohio; contracted to supply services or goods in Ohio; caused tortious injury by an act or omission in Ohio; caused tortious injury in Ohio by an act or omission outside Ohio and regularly do or solicit business, engage in a persistent course of conduct, and/or derive substantial revenue from services rendered in Ohio; and caused tortious injury in Ohio to OCLC by an act outside Ohio committed with the purpose of injuring OCLC, when they might reasonably have expected OCLC would be injured thereby in Ohio. Ohio Rev. Code § 2307.382(A)(1)–(4), (6).

24.     Venue is appropriate in this district under 28 U.S.C. § 1391.

## STATEMENT OF FACTS

### I.     OCLC Provides Industry-Leading Technological Services to Libraries.

25.     OCLC is based in Dublin, Ohio. It is a tax-exempt, non-profit, membership, computer library service and research organization dedicated to the public purposes of furthering access to the world's information and reducing the rate of the rise in library costs.

26.     OCLC has 1,314 employees worldwide, and 793 are based in Ohio.

27.     More than 29,000 libraries in 124 countries and territories around the world rely on OCLC's services to locate, acquire, catalog, lend, preserve, and manage library materials.

28.     Today's libraries must operate and serve their communities in a constantly evolving technological landscape and attendant user needs, nearly all of which occurs digitally. OCLC's services provide a range of products that address these challenges by sharing data, streamlining workflows, and connecting people to the knowledge held in the world's library collections.

### A.     WorldCat is the Heart of OCLC's Services.

29.     WorldCat is the world's most comprehensive database of information about library collections and is utilized in almost all OCLC's services. It is the result of nearly six decades of development and innovation and hundreds of millions of dollars. WorldCat is, without question, OCLC's most valuable and important asset.

30.     For example, all products in OCLC's Discovery Services search WorldCat to allow OCLC's customer libraries and their patrons to find and access materials from their own library and other libraries around the world. Similarly, all products in OCLC's Resource Sharing Services search WorldCat to allow libraries and their patrons to locate and borrow materials from libraries worldwide.

31.     Put simply, OCLC's services use WorldCat and derive their utility from WorldCat because WorldCat is such a robust bibliographic record database.

32.     OCLC has invested significant resources into developing, maintaining, improving, and enhancing WorldCat.

33.     Two hundred and sixty-four (264) OCLC employees are devoted to the development, procurement, maintenance, and enhancement of WorldCat records and data. These employees include developers, analysts, software engineers, data scientists, data specialists,

quality engineers, information developers, and more. Approximately 20% of OCLC's workforce focuses on WorldCat.

34.     WorldCat accounts directly for 39% of OCLC's revenue and for 83% directly and indirectly, considering its impact on OCLC's services and downstream products.

**B.      WorldCat is the Most Robust and Innovative Bibliographic Record and Cataloging Product Available.**

35.     WorldCat is a collection of OCLC customer-contributed records, publisher records and OCLC-created records, all of which exist digitally. These records and the data that comprises them help libraries achieve a greater online presence. This pool of records in WorldCat allows OCLC customer libraries to access and create more comprehensive bibliographic records, which OCLC then enhances. The more libraries that participate, the better and more useful WorldCat becomes to libraries, their patrons, and other organizations that want to interact with libraries online.

36.     Rather than hardcopy card cataloging records and systems, WorldCat offers digital bibliographic records that contain electronic fields filled with data. WorldCat thus enables libraries to bring their library collections online in meaningful ways while facilitating digital management of cataloging records and data.

37.     For instance, WorldCat serves as a bibliographic record supply of comprehensive, high-quality records, which allows customer libraries to operate more efficiently, most fundamentally, by eliminating the need for hardcopy card cataloging and creating all digital catalog records from scratch.

38.     WorldCat is also a digital registry of library holdings and a discovery environment, which means libraries can represent their catalog of holdings online, increasing the reach of

libraries and patron access to libraries through online research, resource sharing, and even local discovery of materials, *i.e.*, checking out materials from a local library.

39. WorldCat also provides infrastructure for system-wide maintenance of data—an absolute necessity for libraries in a digital age. By having a strong data infrastructure, customer libraries can easily make system-wide revisions (and improvements to records), perform more powerful searches by relying on enriched data structure, and syndicate data with other WorldCat customers.

40. WorldCat contains more than 600 million bibliographic records. When combined with the more than 1,500 collections from leading publishers, WorldCat provides its customers with more than 5 billion items from a variety of resources.

41. WorldCat is a union of catalogs from around the world, as well as the closest approximation of a national union catalog of library holdings in the United States. WorldCat is the fullest single source of worldwide library holdings available, access to which improves the efficiency with which items can be located in—and requested from—library collections.

**C.      WorldCat Records Capture Information from Hardcopy Catalog Cards and Much More.**

42. WorldCat records are bibliographic data, including the title, author, publisher, and number of pages. This information is obtained from OCLC customer libraries, publishers, vendors, national libraries, etc.

43. To ensure the highest quality, OCLC includes its own unique identifying number, the "OCN," which creates more effective queries and serves as an authoritative index for identifying and referring to specific titles. OCLC also adds Dewey Decimal Classification numbers and Faceted Application of Subject Terminology headings, which is derived from the Library of Congress Subject Headings.

44. OCLC merges, de-duplicates, arranges, and adds metadata to enhance these records to support discovery of, exploration of, and access to the records. OCLC accomplishes this with algorithms that search for duplicates and populate other data control to maintain the high quality of WorldCat records.

45. OCLC is constantly developing new enhancements for WorldCat records. For instance, OCLC created embedded identifiers in WorldCat records, that OCLC calls "WorldCat Entities." These WorldCat Entities make WorldCat more discoverable through web search engines, like Google, and allow the user to link records back into the library catalog.

46. OCLC has also developed WorldCat record enhancements that automatically merge duplicate records. The enhancements recognize similarities between records and then merges the records together, improving the quality of WorldCat.

47. These additions further enrich the cataloging records and support better discovery of those records.

48. Of the entire WorldCat collection, more than 93% of the records have been modified, improved, and/or enhanced by OCLC.

49. The critical value of WorldCat is these modifications, improvements, and/or enhancements by OCLC.

**D.      OCLC's Cooperative of Customer Libraries Drives WorldCat.**

50. Over 10,000 libraries have cataloging subscriptions for WorldCat, and over 20,000 libraries are WorldCat customers, meaning their membership and subscriptions for OCLC's services depend in some way on WorldCat.

51. OCLC works neutrally with all integrated library systems ("ILS") and library service platform ("LSP") providers. Though OCLC offers an LSP, which is built around WorldCat data, any ILS/LSP can use WorldCat for cataloging purposes.

52. Of all OCLC's customers, approximately 72% are WorldCat customers. These WorldCat customers include academic libraries (such as The Ohio State University), community colleges (including Columbus State Community College), public libraries (such as the Columbus Metropolitan Library, Dayton Metro Library, Worthington Public Library, and Cincinnati and Hamilton County Public Library), government libraries (such as the Library of Congress and Federal Reserve Bank of Cleveland), and library consortia (like OhioLINK).

53. When a library receives a new title, it searches for that work in WorldCat to add or create a cataloging record for that title so its patrons, and patrons across the world, can search for and find the item. If there is a record, the library can download the record, add additional information, and then add the record to their local library catalog or ILS/LSP. Often, WorldCat already has a record for a title. In addition to OCLC's extensive cataloging efforts, OCLC has relationships with national libraries, libraries across the world, publishers, and other vendors who provide these records. WorldCat thus saves libraries hundreds of hours of cataloging work.

54. Many publisher and vendor records are immediately added to WorldCat because OCLC has worked for decades to develop relationships with publishers and establish electronic feeds of the records to WorldCat of published titles.

55. If a library receives a new title that does not already have a WorldCat record, the library creates a record, which is then added to WorldCat for WorldCat cataloging customers to utilize. Even when a library is adding a new record, it rarely starts from scratch; a library pulls up a similar record for a work that already exists in WorldCat and uses that record to build its "new" record.

56. The more libraries that use WorldCat, the more records WorldCat customers have access to and the more accurate and robust the data is within those records.

57.     OCLC bears significant costs in the ongoing provision of the high-quality database on which WorldCat customers rely.

58.     This requires WorldCat customers to share the benefits and costs of WorldCat as part of the overall OCLC Cooperative.

59.     To that end, customers must have a paid subscription to use WorldCat.

60.     Because there is a practical need to sustain the economic viability and value of WorldCat over the long term, all WorldCat customers must agree to OCLC's contractual requirements, including WorldCat's Rights and Responsibilities, to be part of the OCLC Cooperative ("WorldCat Policy") (attached here as Exhibit A). Under the WorldCat Policy, customers cannot (among other things) download WorldCat records *en masse*, distribute the records, or take any action that would devalue WorldCat and the OCLC Cooperative.

61.     In turn, OCLC agrees to maintain the exceptionally high quality of WorldCat data, enrich the data, make it available for discovery purposes so individuals can easily search libraries' catalogs, and otherwise "use member-contributed data to support its public purposes and to benefit the cooperative."

## II.     Baker & Taylor Recently Moves to Software and Technology Library Services.

62.     Baker & Taylor began as a book binder, publisher, distributor, and seller.

63.     Baker & Taylor eventually moved to software and other technological library services, though it did so much later than OCLC and industry leaders. Baker & Taylor never recovered from its slow transition to software and technology, which now drives the library services market.

64.     Nevertheless, Baker & Taylor today describes itself as "the leading supplier of library content, software and services to public and academic libraries in the U.S." that "also provide[s] sales, manufacturing, warehousing and distribution support to small and mid-sized

publishers." Baker & Taylor supplies books, audiovisual, and eContent, as well as "workflow solutions."

65.     As a part of its "workflow solutions," Baker & Taylor provides "data and analytics" and "technical services." Baker & Taylor's data and analytics offerings include collectionHQ, a tool that helps libraries manage their collections, including identifying materials libraries may need to purchase and to transfer to other branches. Today, its technical services include BTCat.

66.     BTCat is a "cataloging utility and database." Baker & Taylor has positioned BTCat to directly compete with WorldCat, characterizing BTCat as "a reasonably priced, modern cataloging" alternative "that provides efficient, easy to use features combined with strong, high-quality records" without duplicates.

### III.    OCLC Grants Baker & Taylor a License for a Small Number of WorldCat Records, which Baker & Taylor Misuses to Launch BTCat.

67.     In 2002, OCLC hired a company, Libros Sin Fronteras, to do consulting work. To complete this consulting work, OCLC gave the Libros Sin Fronteras access to WorldCat.

68.     Over time, OCLC discovered that access and use of WorldCat records under Libros Sin Fronteras's consulting agreement exponentially increased. That increased use and activity on WorldCat exceeded the scope of work that Libros Sin Fronteras was asked to do for OCLC, so OCLC terminated all access to WorldCat.

69.     OCLC also discovered that Libros Sin Fronteras was owned by Baker & Taylor and that Baker & Taylor was using Libros Sin Fronteras to improperly gain access to WorldCat records and data through its affiliate's consulting relationship with OCLC.

70.     When OCLC raised the issue with Baker & Taylor, Baker & Taylor asked for a license to use WorldCat records. OCLC and Baker & Taylor engaged in negotiations for over a year.

71.     On November 5, 2019, OCLC granted Baker & Taylor a license through the WorldCat Data Licensing Agreement (attached as here Exhibit B). Under the Agreement, Baker & Taylor was permitted to access WorldCat, extract a set number of WorldCat records, and use the records "for any purpose." The license set forth two one-year terms, during which Baker & Taylor could extract from WorldCat 50,000 WorldCat records per year. In the event Baker & Taylor did not extract all 50,000 records in the first year, it could extract the additional records but only upon providing OCLC with a written report identifying which records it extracted.

72.     The license OCLC granted Baker & Taylor was exceedingly narrow in the number of records that Baker & Taylor could download and use. At most, Baker & Taylor could only extract 50,000 records per year, and OCLC has hundreds of millions of WorldCat bibliographic records.

73.     Baker & Taylor agreed to pay a $45,000 yearly fee for the license. (Amendment No. 1, attached here as Exhibit C).

74.     Baker & Taylor never supplied a report reflecting the number of extracted records in the first year under the Agreement.

75.     In January 2021, Baker & Taylor began to offer BTCat, a cataloging tool for libraries to use to create and edit bibliographic records to be added into their local catalog.

76.     Apart from Defendants' alleged misuse of WorldCat records, BTCat's bibliographic records and data come from three main sources: records that have been created by Baker & Taylor cataloging staff, records provided by publishers and national libraries (like the Library of Congress), and a community pool of cataloging records from Baker & Taylor's customers' library catalogs.

77.     Accordingly, on May 12 and 19, 2021, OCLC provided proper written notice to Baker & Taylor under the Agreement of its intent to terminate the Agreement. In response, Baker & Taylor exercised its option to purchase a one-year license beginning on the date OCLC's termination would have otherwise been effective. This one-year extension allowed Baker & Taylor to extract 50,000 WorldCat records through September 16, 2022.

78.     OCLC agreed to honor Baker & Taylor's option and requested Baker & Taylor provide a report of the records it had extracted from WorldCat under the license to date. Baker & Taylor provided a report representing to OCLC that it had extracted nearly 22,000 records.

79.     On information and belief, Baker & Taylor proceeded to extract more than the permitted number of WorldCat records over the remainder of the original term and the one-year extension period, exceeding the overall extractions permitted by the Agreement.

80.     Baker & Taylor's license expired on September 16, 2022, and OCLC has refused to grant Baker & Taylor another license due to Baker & Taylor's suspected misfeasance.

## IV.     Defendants Add Contractual Provisions to Agreements with Its Customers to Obtain WorldCat Records from WorldCat Customers without OCLC's Permission.

81.     Undeterred by OCLC's refusal, Defendants devised a way to misappropriate WorldCat records without a license or authorization from OCLC.

82.     At least as early as May 2022, Defendants began to include new contractual provisions in the service contract for collectionHQ, a tool that helps libraries manage their collections. collectionHQ is owned by Baker & Taylor's subsidiary, Bridgeall.

83.     collectionHQ's "Standard Terms and Conditions" contains a provision that requires collectionHQ subscribers to authorize Baker & Taylor to access the subscriber library's catalog

and to license all catalog records to Baker & Taylor for use in BTCat, which collectionHQ customers may then use for free.[1] An example of this provision is attached here as Exhibit D.

84.    This provision states:

> In addition, as a subscriber to the Service, you have the opportunity to access Baker & Taylor's BT CAT community pool of cataloging records **at no charge if you authorize the use of your cataloging records by Baker & Taylor**. By signing this Agreement, **you are authorizing Baker & Taylor to utilize your cataloging records** and are confirming that you have the right to make this authorization. This authorization means that **your cataloging records are licensed to Baker & Taylor on a perpetual, fully paid-up, nonexclusive, non-transferable, and irrevocable, basis for use in BT CAT and in any and all other products offered at any time by Baker & Taylor to its customers**.… Baker & Taylor reserves all rights with respect to the use all such contributed cataloging records in BT CAT and in any and all other products offered at any time by Baker & Taylor to its customers.

85.    On information and belief, Defendants and its affiliated entities are including similar contractual provisions in contracts for other products and services.

86.    On information and belief, Defendants began to include these provisions as soon as OCLC notified Defendants of the termination of the Agreement. Defendants inserted these provisions in contracts for products and services that are unrelated library cataloging.

87.    Defendants have built BTCat from WorldCat records that Defendants improperly obtained, both through these customer contracts and excessive downloads from the Agreement, as discussed in paragraphs 67–80.

88.    In September 2024, OCLC discovered a YouTube video demonstrating BTCat's capabilities. The "demo" shows a cataloging librarian searching for a record to add to their library's catalog. The search results for a particular record included the BTCat record along with other records retrieved from library catalogs with a "Best" quality designation. The BTCat record was

---

[1]  *E.g.*, Standard Terms And Conditions for the Service § 4.5, City of San Rafael, https://publicrecords.cityofsanrafael.org/WebLink/DocView.aspx?id=35010&dbid=0&repo=City ofSanRafael&searchid=28c290fd-3b1e-49e1-b870-a7c2149abf49 (last visited March 24, 2025).

color-coded yellow to designate basic bibliographic information was present, while the library record with the "Best" designation was green, contained high quality information, and was clearly the fully enriched WorldCat record, based on certain data fields in the record.

89.     In the demonstration, the catalog librarian picked the most robust record, which was an enriched WorldCat record, over the lower-quality versions originating from BTCat.

90.     The demonstration also markets BTCat as having 70 million bibliographic records without any duplicates and seamless ability to integrate BTCat records into the example library's ILS/LSP, mimicking WorldCat's best selling points and key offerings.

91.     This demonstration was hosted by a company that provides services to libraries and shares many customers with OCLC. The demonstration also featured a WorldCat customer encouraging libraries to switch to BTCat.

92.     Also in September 2024, a WorldCat customer contacted OCLC to not renew their subscription to WorldCat and noted it was switching to BTCat.

93.     In October 2024, another WorldCat customer notified OCLC that it was canceling its WorldCat subscription and stated it was switching to BTCat because it was substantially cheaper.

94.     These events prompted OCLC to investigate BTCat's potential improper use of WorldCat records, specifically, whether BTCat was storing WorldCat records in a shared place where BTCat customers who are not WorldCat customers could access WorldCat records without a WorldCat subscription.

95.     OCLC discovered through contracts available online that Baker & Taylor has been including problematic provisions in certain customer contracts, as described in paragraphs 81–86.

96.     Defendants know that most collectionHQ subscriber libraries (and any of their other customers) are also OCLC customers and current or former WorldCat customers.[2] This means that through its collectionHQ activities, Defendants have been able to access WorldCat records and data in these catalogs and incorporate them into BTCat.

97.     Through these "Standard Terms and Conditions," Defendants are actively inducing WorldCat customers to violate their contractual agreements with OCLC. Notably, Defendants are inserting these provisions in its contracts for products and services that are unrelated to cataloging, which obscures for libraries the potential impact of the provision on the libraries' contractual obligations to OCLC and the OCLC Cooperative.

## V.     OCLC and WorldCat Customers Are Contractually Forbidden from Sharing WorldCat Records with Competitors like Defendants.

98.     All OCLC customers who subscribe to WorldCat and other OCLC services agree to the terms of OCLC's Framework Agreement and the accompanying "Schedule(s)" that apply to the products or services they receive from OCLC (collectively, the "Framework Agreement"). The Framework Agreement is attached as Exhibit E and is available on OCLC's website.

99.     Section 5.1 of the Framework Agreement provides, "OCLC and/or its licensors or suppliers are the exclusive owners of and retain all right, title, and interest (including all copyrights, trademarks, patents, and any other proprietary rights) to the Products, Services, WorldCat, and all other materials produced or provided by OCLC." OCLC customers are granted a license to use OCLC products or services "solely for the noncommercial purposes described in the Product Description and the applicable Schedule."

---

[2] *E.g.*, Columbus Metropolitan Library (https://www.collectionhq.com/welcome-columbus-metropolitan-library/) (last visited March 24, 2025); Worthington Libraries (https://www.collectionhq.com/resources/worthington-libraries-oh/) (last visited March 24, 2025); Dayton Metropolitan Library (https://www.collectionhq.com/collectionhq-welcomes-dayton-metro-library/) (last visited March 24, 2025).

100. All WorldCat customers also agree to the OCLC customer responsibilities outlined in Section 3 of Schedule 2 to the Framework Agreement.

101. Among other things, WorldCat customers agree "that the use and transfer by the Institution of WorldCat Data is subject to the [WorldCat Rights and Responsibilities for the OCLC Cooperative]" (the "WorldCat Policy"). The WorldCat Policy sets forth WorldCat customer's and OCLC's rights and responsibilities "associated with the stewardship of the WorldCat . . . bibliographic and holdings database . . . including the use and exchange of OCLC member-contributed data comprising that database." The WorldCat Policy is available on OCLC's website and attached here as Exhibit A.

102. The WorldCat Policy defines WorldCat as offering a "club good," "member good," or "collective good," meaning that WorldCat derives its value through the efforts and investments of OCLC and its customers, who are members of the OCLC Cooperative. Unauthorized use "by those who do not contribute toward the cost of providing the good" diminishes the ability of members who contribute to enjoy the benefits of the good. As the WorldCat Policy explains, "OCLC's public purposes include promoting the evolution of library use, of libraries themselves, and providing processes and products for the benefit of libraries and their users." OCLC seeks to protect its customers' investments, as well as its own substantial financial contribution to maintain, enrich, and improve the quality of WorldCat records and associated data.

103. WorldCat customers are required to "[a]bide by this policy, [to] ensure awareness of it both within their institutions and on the part of their agents, their cooperatives, and other organizations to which they make their data available," and to "[m]ake reasonable efforts to ensure that the subsequent re-use and transfer of their WorldCat data by non-members is consistent with

this policy and OCLC's public purposes and supports the long-term viability and utility of WorldCat."

104.    Under Section 3(B) of the WorldCat Policy, WorldCat customers are prohibited from "engaging in mass downloading from WorldCat without OCLC's prior written consent," "engaging in mass distribution of data directly from WorldCat to non-members without OCLC's prior consent," or "engaging in other activities that diminish the value of WorldCat to the OCLC cooperative."

105.    The WorldCat Policy does not grant WorldCat customers the right to share or transfer WorldCat records and data to another ILS/LSP company for that company's use or grant a competing entity a license for use of the WorldCat records. Sharing or transferring WorldCat records in this manner results is unauthorized, *i.e.*, non-contributing use, of the WorldCat records and data. Likewise, extracting or downloading WorldCat records in large quantities and distributing those files to ILS/LSP services for use by non-WorldCat customers violates the WorldCat Policy and the Framework Agreement.

106.    Upon information and belief, Defendants know of the existence of the Framework Agreement and WorldCat Policy and the obligations that these impose on OCLC customers and WorldCat customers.

107.    Upon information and belief, Defendants know that they are actively encouraging OCLC's WorldCat customers to breach the Framework Agreement and WorldCat Policy by including in their contracts for products and services a provision requiring libraries to grant Baker & Taylor access to and a license for using libraries' catalogs with WorldCat records—including populating BTCat with those records.

108. Upon information and belief, Defendants are also aware that they are encouraging OCLC's Ohio-based customers to breach their agreements with OCLC.

109. Most libraries and academic institutions are WorldCat customers, even if the library uses ILS/LSP services offered by a different company. Accordingly, upon information and belief, Defendants know that by encouraging their customers to sign agreements that include the above-described provisions, they are encouraging many WorldCat customers to link to, download, upload, and/or otherwise transfer WorldCat records and data for Baker & Taylor to use in BTCat.

110. Defendants are also aware that such conduct encourages WorldCat customers to violate the Framework Agreement and WorldCat Policy. It is common industry-wide knowledge that OCLC uses contractual provisions to protect WorldCat.

111. Additionally, Defendants know that OCLC must contractually permit use of its WorldCat records. In February 2018, Baker & Taylor notified its customer libraries that they could not offer WorldCat records through Baker & Taylor's products and services unless the library is a full WorldCat cataloging customer and had the proper third-party agency agreements in place with Baker & Taylor and OCLC. And Baker & Taylor itself has entered into contracts with OCLC in order to be able to access and use WorldCat records, including the 2019 Agreement and nearly 300 third-party cataloging contracts.

112. Upon information and belief, Defendants also know that by linking to, uploading to, and/or otherwise transferring WorldCat records to BTCat and then offering those WorldCat records and metadata to BTCat customers at a much-reduced cost, Defendants are interfering with potential future WorldCat customers. Any potential WorldCat customers are unlikely to pay (or continue to pay) for access to WorldCat if the same high-quality records are available for a smaller fee through BTCat.

113. Baker & Taylor has positioned BTCat to directly compete with WorldCat. Baker & Taylor has marketed BTCat as "a reasonably priced, modern cataloging" alternative "that provides efficient, easy to use features combined with strong, high-quality records."

114. During in-person industry meetings, Baker & Taylor has taken even more direct aim at WorldCat. In 2023, Baker & Taylor had libraries share their BTCat experiences during a conference. Libraries expressly stated BTCat was cheaper than WorldCat. Overall, Baker & Taylor used this meeting to encourage libraries to leave WorldCat for BTCat.

115. On February 25, 2025, OCLC notified Baker & Taylor's Chief Executor Officer and General Counsel that Defendants and their related affiliates must immediately cease and desist their tortious interference and contractual breach in relation to BTCat.

116. Even after Defendants were made aware of their illegal conduct, they have continued their wrongful conduct.

## VI. Defendants' Conduct Has Caused and Will Continue to Cause OCLC Significant, Irreparable Harm.

117. Upon information and belief, Defendants' efforts to obtain WorldCat records without a license and through OCLC customers, including surreptitiously through unrelated agreements, in exchange for free use of BTCat, is a direct attack on OCLC's WorldCat. Rather than invest the extensive time and resources to fully develop a competing cataloging database, Defendants are taking a shortcut by improperly collecting WorldCat records and metadata in BTCat. Defendants can thus afford to offer BTCat publicly for a much-discounted fee, undercutting OCLC's WorldCat.

118. Given WorldCat's importance to OCLC's operations and its other product and service offerings, the unlawful incorporation of OCLC's WorldCat records into Defendants' BTCat will destroy OCLC's current and future customer base for WorldCat and fundamentally

threaten OCLC's continued operation. The harm to OCLC is immediate and far-reaching because Defendants have access to a large number of WorldCat records and can use them in BTCat or any other products and services. Moreover, it will be difficult for OCLC to fully trace and evaluate Defendants' use of those records and associated data.

119. Defendants' conduct poses a fundamental threat to OCLC membership and participation in WorldCat generally. As described above, the more libraries that participate in WorldCat and catalog their records with OCLC, the more records that are available through WorldCat and the more comprehensive and thus valuable WorldCat is to OCLC's customers. Any loss in OCLC membership and WorldCat participation has a directly harmful impact on OCLC's customers and WorldCat customers. Defendants' ability to offer BTCat either for free (in exchange for OCLC's WorldCat records) or at a reduced rate compared to WorldCat will cause OCLC to lose customers.

120. OCLC has already had WorldCat customers cancel their WorldCat subscriptions and transition to BTCat. Nearly 30 customers, that OCLC knows of, have transitioned to solely using BTCat. OCLC knows that 14 customers, including one Ohio library, are considering transitioning to BTCat.

121. OCLC has already lost at least $686,720.15 in subscription fees from current OCLC customers canceling WorldCat and other related services due to BTCat. At least an additional $446,431.61 in subscription fees are currently at risk based on OCLC's conversations with customers.

122. OCLC also has prospective business relationships with libraries around the world. OCLC continually fosters these relationships to recruit new WorldCat customers. For example,

OCLC regularly runs sales campaigns and offers informational webinars on OCLC's services for libraries.

123. However, OCLC will never know the precise harm Defendants have caused it. Some customers have not and will not disclose their reasons for leaving WorldCat, and OCLC will never know the prospective customers (whether for WorldCat cataloging specifically or OCLC's other services that depend on WorldCat) OCLC lost to BTCat. Moreover, with each customer that leaves WorldCat, WorldCat's value decreases because it is a club good. As WorldCat's value decreases, OCLC will lose an inestimable number of current and future customers.

124. WorldCat is OCLC's most financially important offerings to its customers, making up an average of 39% of OCLC's direct revenue, and 83% of OCLC's revenue, directly and indirectly, over the past 5 years. WorldCat is the core of OCLC's family of products and services. OCLC's services all benefit from WorldCat records. Accordingly, OCLC's services will all be affected by Defendants' conduct.

125. Providing WorldCat records through BTCat not only undermines the strength and value of WorldCat in the market, but it also decreases WorldCat's value to OCLC's other services, which further devalues OCLC as a whole to current and potential customers. The negative impact of Defendants' use of WorldCat records in BTCat will have catastrophic consequences for every aspect of OCLC's operations.

126. Further, Defendants' wrongful conduct is not only presently affecting OCLC. Defendants' conduct will affect OCLC's future developments and future revenue. As libraries move toward more advanced methods of capturing and representing bibliographic data, libraries will need robust data, which OCLC's WorldCat provides. By damaging OCLC and WorldCat

today, Defendants are impacting OCLC's ability to develop WorldCat into its next iteration for customers.

127.    Defendants know of WorldCat's importance to OCLC's operations and its ability to continue to compete in the ILS/LSP market generally. Baker & Taylor also had a licensing agreement with OCLC, which demonstrates OCLC's commitment to protecting WorldCat records.

128.    For these reasons, and upon information and belief, Defendants' intentional conduct overtly targets OCLC's WorldCat and is willful, malicious, and demonstrates at least a conscious disregard of OCLC's rights. If allowed to continue, Defendants' unauthorized use of WorldCat records will irreparably harm one of OCLC's most important offerings and cripple OCLC's ability to provide its other products and services, including those that compete directly with Defendants' products and services in the ILS/LSP market.

129.    For these reasons, OCLC has been and will be injured in Ohio and elsewhere.

## COUNT ONE
### Tortious Interference with Contractual Relationships

130.    OCLC incorporates the foregoing paragraphs above by reference as if fully restated herein.

131.    OCLC and WorldCat customers entered into contractual agreements, the Framework Agreement and WorldCat's Rights and Responsibilities for the OCLC Cooperative, or the WorldCat Policy.

132.    Defendants know that WorldCat customers have a contractual relationship with OCLC.

133.    Defendants have intentionally, deliberately, willfully, maliciously, and without justification solicited WorldCat customers to grant Defendants access to their cataloging records that include WorldCat records and a license for unlimited use of those WorldCat records in any

service or product by Defendants, which violates the WorldCat Policy agreement and materially interferes with OCLC's contractual relationships with its customers.

134. As a direct and proximate result of Defendants' tortious interference with OCLC's contractual agreements with its customers, OCLC has and/or will suffer immediate and irreparable injury, loss, or damage in Ohio and elsewhere for which there is no adequate remedy at law, including irreparable injury to its business and loss of customer good will, and other intangible assets, and additional damages and expenses that are not readily calculable.

135. Alternatively, the actions as described above will and/or have caused OCLC to be damaged in an amount to be determined at trial.

## COUNT TWO
### Tortious Interference with Prospective Business Relationships

136. OCLC incorporates the foregoing paragraphs above by reference as if fully restated herein.

137. OCLC, as the owner of the world's preeminent cataloguing record service, WorldCat, has had or will have prospective business relationships with potential customers seeking a cataloging record service and other products and services as part of their ILS/LSP platforms.

138. Defendants know OCLC has these prospective business relationships, which is why Defendants devised a scheme to access OCLC's WorldCat records without a license or permission from OCLC, incorporate those records into BTCat, and then offer BTCat publicly at a lower cost than WorldCat.

139. Defendants have thus intentionally, deliberately, willfully, maliciously, and without justification caused or will cause these prospective WorldCat customers to not enter into a business relationship with OCLC for WorldCat.

140.    As a direct and proximate result of Defendants' tortious interference with OCLC's prospective business relationships with future WorldCat customers, OCLC will suffer immediate and irreparable injury, loss, or damage in Ohio and elsewhere for which there is no adequate remedy at law, including irreparable injury to its business and loss of customer good will, and other intangible assets, and additional damages and expenses that are not readily calculable.

141.    Alternatively, the actions as described above will and/or have caused OCLC to be damaged in an amount to be determined at trial.

## COUNT THREE
### Breach of Contract (Baker & Taylor, LLC)

142.    OCLC incorporates the paragraphs above by reference as if fully restated herein.

143.    OCLC and Baker & Taylor had a valid and binding contract, WorldCat Data Licensing Agreement, where OCLC granted Baker & Taylor a license to extract and use no more than 50,000 WorldCat records and associated data per year.

144.    OCLC fully performed its obligations under the Agreement by providing Baker & Taylor with access to WorldCat records.

145.    Baker & Taylor materially breached the terms set forth in the Agreement by, including but not limited to, extracting more than the allotted 50,000 WorldCat records per year and underreporting and misrepresenting to OCLC the scope of its downloads and other activities.

146.    As a direct and proximate result of Baker & Taylor's breach, OCLC has incurred damages, OCLC has suffered immediate and irreparable injury, loss, or damage in Ohio and elsewhere for which there is no adequate remedy at law, including irreparable injury to its business and loss of customer good will, and other intangible assets, and additional damages and expenses that are not readily calculable.

147.    Alternatively, the actions as described above will and/or have caused OCLC to be damaged in an amount to be determined at trial.

## COUNT FOUR
## Unjust Enrichment

148.    OCLC incorporates the paragraphs above by reference as if fully restated herein.

149.    OCLC conferred a benefit upon Defendants by allowing Defendants to access, extract, and use WorldCat records and data.

150.    Defendants have knowledge of the benefit of WorldCat records, as demonstrated by their desire to extend the license for use under the Agreement and their incorporation of WorldCat records into BTCat.

151.    Defendants have unjustly retained WorldCat records, despite cease-and-desist requests made by OCLC, by avoiding getting a written license from OCLC for additional WorldCat records and by offering access to the WorldCat records in BTCat, which has caused OCLC to lose current and prospective WorldCat customers.

152.    Defendants' retention of the WorldCat data is in bad faith because Defendants knew that OCLC intended to terminate the Agreement and so Defendants worked to extract additional WorldCat records while it still had access.

153.    Defendants' unjust enrichment proximately caused OCLC to suffer immediate and irreparable injury, loss, or damage in Ohio and elsewhere for which there is no adequate remedy at law, including irreparable injury to its business and loss of customer good will, and other intangible assets, and additional damages and expenses that are not readily calculable.

154.    Alternatively, the actions as described above will and/or have caused OCLC to be damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, OCLC, Inc. requests that the Court enter judgment in its favor and against Defendants as follows:

(a)      a declaration that Defendants' conduct in relation to its BTCat product constitutes tortious interference, with OCLC's contractual relationships and prospective business relationships, and constitutes a breach of contract and unjust enrichment;

(b)      preliminary and permanent injunctive relief prohibiting Defendants from taking any action that interferes with OCLC's contractual relationships and prospective business relationships, continuing to breach the Agreement, or unjustly retaining the benefit of WorldCat records;

(c)      an award of compensatory damages in favor of OCLC against Defendants in an amount to be determined at trial in excess of $75,000;

(d)      an award of punitive damages;

(e)      an award of attorney fees, pre-judgment interest, costs, and expenses, incurred in connection with this action; and/or

(f)      for such other and further relief as the court deems just.

Plaintiff respectfully demands a trial by jury of the maximum number permitted by law.

Respectfully submitted,

Dated: March 26, 2025                    /s/ *Jeffrey M. Walker*
                                                        Jeffrey M. Walker (0096567), Trial Attorney
                                                        Traci L. Martinez (0083989)
                                                        Kathryn M. Brown (0100426)
                                                        Brittany Silverman (0102263)
                                                        Erin Hassett (0099970)
                                                        SQUIRE PATTON BOGGS (US) LLP

2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: +1 614 365 2700
Facsimile: +1 614 365 2499
jeffrey.walker@squirepb.com
traci.martinez@squirepb.com
kathryn.brown@squirepb.com
brittany.silverman@squirepb.com
erin.hassett@squirepb.com

*Attorneys for Plaintiff OCLC, Inc.*