**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **OCLC, Inc.** | **Case No. 2:25-cv-309** |
| **Plaintiff,** | |
| **v.** | **Judge Edmund A. Sargus, Jr.** |
| **Baker & Taylor, LLC and Bridgeall Libraries, Ltd.,** | |
| **Defendants.** | |

---

## MOTION FOR PRELIMINARY INJUNCTION

---

Pursuant to Federal Rule of Civil Procedure 65(a), Plaintiff OCLC, Inc. ("OCLC") hereby moves for a preliminary injunction enjoining Defendants Baker & Taylor, LLC ("Baker & Taylor") and Bridgeall Libraries, Ltd., from:

1. Including in their agreements any provisions that encourage and/or require customers who are also OCLC WorldCat customers to grant Defendants access to and a license for the customers' cataloging records that include OCLC WorldCat® records and data;

2. Accessing, downloading, or otherwise extracting cataloging records from customers who have signed any provisions described *supra* in No. 1 and are OCLC WorldCat customers;

3. Integrating, distributing, retaining, or otherwise incorporating WorldCat records and data (that is not licensed to Baker & Taylor under the WorldCat Data and Licensing Agreement with OCLC) in BTCat or any other products or services; and

4. Downloading, distributing, displaying, or making available to the public or any customers any OCLC WorldCat records and data (not licensed to Baker & Taylor under the WorldCat Data and Licensing Agreement with OCLC), including those affiliated with the BTCat cataloging utility and database.

Absent this injunction relief pending resolution of this action, OCLC will suffer substantial irreparable harm.

Respectfully submitted,

/s/ *Jeffrey M. Walker*
Jeffrey M. Walker (0096567), Trial Attorney
Traci L. Martinez (0083989)
Kathryn M. Brown (0100426)
Brittany Silverman (0102263)
Erin Hassett (0099970)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: (614) 365-2700
Facsimile: (614) 365-2499
jeffrey.walker@squirepb.com
traci.martinez@squirepb.com
kathryn.brown@squirepb.com
brittany.silverman@squirepb.com
erin.hassett@squirepb.com

*Attorneys for Plaintiff OCLC, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| OCLC, Inc., | Case No. |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Baker & Taylor, LLC and Bridgeall Libraries, Ltd., | |
| Defendants. | |

---

## MEMORANDUM IN SUPPORT OF PLAINTIFF OCLC, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………………… ...........ii

I.     INTRODUCTION ......................................................................................................... 1

II.    STATEMENT OF FACTS ......................................................................................... 2

      A.     OCLC's WorldCat, the World's Premier Bibliographic Database, is at the Heart of OCLC's Products and Services. ............................................................. 2

      B.     OCLC's Framework Agreement and WorldCat Policy Govern OCLC's Relationship with WorldCat Customers. ................................................................ 4

      C.     Baker & Taylor Breached Its Licensing Agreement with OCLC and Launched BTCat as a Direct Competitor to WorldCat. ........................................ 5

      D.     Defendants Hide Contractual Provisions in its Agreements with Customers that Grant Defendants Access to and a License to Use WorldCat Records........... 6

      E.     OCLC Discovers Defendants' Plan to Steal WorldCat Records for BTCat. ......... 7

III.    LAW AND ARGUMENT ......................................................................................... 7

All four factors of the Sixth Circuit's balancing test for preliminary injunctions support issuing a preliminary injunction against Defendants that prohibits them, among other things, from including provisions in their agreements that induce WorldCat customers to grant Baker & Taylor access to and a license to use customers' WorldCat records, accessing customers' cataloging libraries based on those provisions, using WorldCat records in BTCat or any other service, and making available to the public or any customers WorldCat records for which Defendants do not have a license, including those affiliated with the BTCat cataloging utility and database. *See* Fed. R. Civ. P. 65; *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 607 (6th Cir. 2024).

      A.     OCLC Will Prevail on the Merits of Its Claims. .................................................. 8

OCLC will succeed on the merits of its claims because it "raise[s] questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372, 385 (6th Cir. 2023) (quoting *Certified Restoration Dry Cleaning Network, L.L.C*, 511 F.3d 535, 543 (6th Cir. 2007)).

          1.     Defendants Are Tortiously Interfering with OCLC's Contractual Relationships........................................................................................... 9

OCLC will succeed on the merits of its tortious interference with contractual relationships claim, demonstrating that Defendants wrongfully interfered with OCLC's contractual relationships with its customers when it included contractual provisions in Defendants' agreements with WorldCat customers inducing the WorldCat customers to breach the Framework Agreement and WorldCat Policy. *See NCR Corp. v. Korala Assocs.*, 512 F.3d 807, 817 (6th Cir. 2008).

          2.     Defendants are Tortiously Interfering with OCLC's Prospective Business Relationships............................................................................ 13

i

OCLC will succeed on the merits of its tortious interference with prospective business relationship claim, demonstrating that Defendants wrongfully interfered with OCLC's prospective customer relationships when it used wrongfully obtained WorldCat records to populate BTCat and then offered BTCat for a cheaper price than WorldCat. *See Equity Res., Inc. v. Thoman*, 682 F. Supp. 3d 707, 717 (S.D. Ohio 2023).

3. Baker & Taylor Breached its Agreement with OCLC............................ 14

OCLC will succeed on the merits of its contractual breach claim against Baker & Taylor, showing that Baker & Taylor violated the WorldCat Data Licensing Agreement with OCLC when it extracted WorldCat records in excess of that permitted by the Agreement, failed to accurately report which records it had extracted, and failed to provide the report in a timely manner. *New Lansing Gardens Hous. Ltd. P'ship v. Columbus Metro. Hous. Auth.*, 46 F.4th 514, 520 (6th Cir. 2022).

4. OCLC is likely to show Defendants were Unjustly Enriched. ................ 15

OCLC will succeed on the merits of its unjust enrichment claim against Defendants by showing that the Defendants received a benefit, WorldCat records, and unjustly retained that benefit when it did not obtain a license from OCLC or otherwise provide renumeration. *Bunta v. Superior VacuPress, LLC*, 218 N.E.3d 838, 848 (Ohio 2022).

B. Defendants' Wrongful Conduct is Irreparably Harming OCLC.......................... 16

OCLC will suffer irreparable injury, an injury "not fully compensable by monetary damages." *Tennessee v. Becerra*, ---F.4th---, No. 24-5220, 2025 WL 751585, at *11 (6th Cir. 2025) These injuries include the loss of customer good will, interference with customer relationships, and damage to reputation. *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 503–04 (6th Cir. 2022); *see also Cavalier Distrib. Co., Inc. v. Lime Ventures, Inc.*, No. 23-3283, 2023 WL 9052002, at *4 (6th Cir. Dec. 28, 2023).

C. The Balance of Equities Favors an Injunction..................................................... 19

The injury to OCLC should the Court deny its request for injunctive relief outweighs any harm to Defendants, which is due to their own making from their illegal conduct. *ACT, Inc*, 46 F.4th at 498 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982); *Concentrix CVG Customer Mgmt. Grp. Inc. v. Daoust*, No. 1:21-CV-131, 2021 WL 1734284, at *16 (S.D. Ohio May 3, 2021). Importantly, Defendants' customers will still have access to similar services from OCLC through WorldCat. *Certified Restoration*, 511 F.3d at 551.

D. Injunctive Relief Will Serve the Public Interest. ................................................ 21

Injunctive relief will advance the public interest by preventing significant injury to OCLC's employees, including those in Ohio, *DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743, 747 (6th Cir. 2020); by preventing injury to OCLC's non-profit, government, academic, and library customers; and by "preserving the sanctity of contractual relations and preventing unfair competition have traditionally been in the public interest." *Total*

*Quality Logistics, LLC v. Riffe*, No. 1:19-CV-23, 2019 WL 5553293, at *7 (S.D. Ohio Oct. 28, 2019); *Certified Restoration,* 511 F.3d at 551.

      E.     The Court Should Order OCLC to Post Only a Minimal Bond............................ 23

A small bond is supported and consistent with Federal Rule of Civil Procedure 65(c) because an injunction will cause Defendants only a minimal loss of revenue because they will still be able to offer products and services that do not involve WorldCat records and because BTCat is offered at a discounted fee or for free.

IV.    CONCLUSION ............................................................................................................ 23

# Table of Authorities

Page(s)

**Cases**

*ACT, Inc. v. Worldwide Interactive Network, Inc.*,
    46 F.4th 489 (6th Cir. 2022) ........................................................................16, 19

*Bunta v. Superior VacuPress, LLC*,
    218 N.E.3d 838 (Ohio 2022) ................................................................................16

*Cavalier Distrib. Co., Inc. v. Lime Ventures, Inc.*,
    No. 23-3283, 2023 WL 9052002 (6th Cir. Dec. 28, 2023) ....................................16

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,
    511 F.3d 535 (6th Cir. 2007) .......................................................8, 9,  16, 18, 20, 23

*Concentrix CVG Customer Mgmt. Grp. Inc. v. Daoust*,
    No. 1:21-CV-131, 2021 WL 1734284 (S.D. Ohio May 3, 2021) ...........................20

*DV Diamond Club of Flint, LLC v. Small Bus. Admin.*,
    960 F.3d 743 (6th Cir. 2020) ...............................................................................22

*Equity Res., Inc. v. Thoman*,
    682 F. Supp. 3d 707 (S.D. Ohio 2023) .................................................................13

*First Star Logistics, LLC v. Bernard*,
    No. 1:16-cv-1070, 2020 WL 7698130 (S.D. Ohio Dec. 28, 2020)..........................13

*Gray-Jones v. Jones*,
    738 N.E.2d 64 (Ohio Ct. App. 2000) ....................................................................14

*Martin-Marietta Corp. v. Bendix Corp.*,
    690 F.2d 558 (6th Cir. 1982) ...............................................................................19

*McNeilly v. Terri Lynn Land*,
    684 F.3d 611 (6th Cir. 2012) .................................................................................8

*MPW Indus. Servs., Inc. v. Pollution Control Servs., Inc.*,
    No. 2:02-CV-955, 2006 WL 640438 (S.D. Ohio Mar. 9, 2006).......................12, 13

*NCR Corp. v. Korala Assocs.*,
    512 F.3d 807 (6th Cir. 2008) .................................................................................9

*New Lansing Gardens Hous. Ltd. P'ship v. Columbus Metro. Hous. Auth.*,
    46 F.4th 514 (6th Cir. 2022) ................................................................................14

*PUI Audio, Inc. v. Van Den Broek*,
    No. 3:21-CV-284, 2021 WL 5164935 (S.D. Ohio Nov. 4, 2021) ..........................................10

*QFS Transp., LLC v. Huguely*,
    No. 1:21-CV-00769, 2022 WL 395756 (S.D. Ohio Feb. 9, 2022) ..........................................12

*S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*,
    860 F.3d 844 (6th Cir. 2017) ..........................................................................................8, 19

*Stryker Emp. Co., LLC v. Abbas*,
    60 F.4th 372 (6th Cir. 2023) ..................................................................................................8

*Tee Turtle, LLC v. Swartz*,
    No. 2:21-CV-01771, 2021 WL 2349389 (S.D. Ohio June 9, 2021).......................................20

*Tennessee v. Becerra*,
    ---F.4th---, No. 24-5220, 2025 WL 751585 (6th Cir. Mar. 10, 2025) ...................................16

*Tennessee v. Dep't of Educ.*,
    104 F.4th 577 (6th Cir. 2024) ................................................................................................8

*Total Quality Logistics, LLC v. Riffe*,
    No. 1:19-CV-23, 2019 WL 5553293 (S.D. Ohio Oct. 28, 2019) ..........................................22

*Total Quality Logistics, LLC v. Riffe*,
    No. 1:19-CV-23, 2022 WL 877396 (S.D. Ohio Mar. 24, 2022)............................................11

**Other Authorities**

Fed. R. Civ. P. 65 ....................................................................................................................8, 23

## I.    INTRODUCTION

Plaintiff OCLC, Inc., ("OCLC") has spent six decades and invested hundreds of millions of dollars in developing the industry-leading bibliographic cataloging database used by thousands of libraries and academic institutions around the world, WorldCat®. The fruits of OCLC's labors are apparent; WorldCat is the world's most comprehensive database of more than 600 million bibliographic records. WorldCat has saved catalog librarians uncountable hours creating bibliographic records and has helped libraries all over the world make their library collections easily discoverable online. Not only is WorldCat one of OCLC's most important offerings financially, WorldCat is also the cornerstone of all OCLC's other services.

Rather than creating and developing a competing cataloging database from the ground up, Defendants Baker & Taylor, LLC ("Baker & Taylor") and Bridgeall Libraries Limited ("Bridgeall") populated BTCat, Defendants' competing cataloging utility and bibliographic database, with WorldCat records that Defendants stole directly from OCLC and OCLC's WorldCat customers. First, Defendants tricked WorldCat customers into giving Baker & Taylor access to and a purported license to use their cataloging records, *i.e.*, WorldCat records, by burying contractual provisions in the terms and conditions for Baker & Taylor products and services that have nothing to do with cataloging. Second, Baker & Taylor violated its own licensing agreement with OCLC—which permitted Baker & Taylor to download a very limited number of WorldCat records—by, among other things, downloading excessive WorldCat records. Defendants then uploaded these ill-begotten WorldCat records to BTCat and now offer BTCat for a significantly discounted price (and sometimes free) and in direct competition to WorldCat.

Defendants' conduct is illegal. This wrongful conduct constitutes a breach of contract, tortious interference with contract, tortious interference with prospective business relationships

and unjust enrichment. Moreover, Defendants' wrongful actions undermine the strength and benefits of WorldCat itself. By taking WorldCat records and offering them in a competing service for a fraction of the price, Defendants are undermining OCLC's ability to compete in the integrated library system ("ILS") and library services platform ("LSP") market. OCLC has already lost WorldCat customers because of Defendants' BTCat scheme, and OCLC has lost and will continue to lose prospective customers to BTCat. The appeal is simple—why pay more for OCLC's WorldCat services when a library can get many of the same WorldCat records elsewhere for less?

Without a preliminary injunction, Defendants will continue to induce OCLC's WorldCat customers to hand over the keys to their WorldCat records and use them to populate BTCat. OCLC will suffer irreparable harms like the loss of customer goodwill for WorldCat and OCLC's other services that it has spent substantial time and resources to develop. Defendants' actions threaten the jobs of its employees in Ohio and around the world, devalue an important informational resource, and flout the law.

The Court should, therefore, enter a preliminary injunction to protect OCLC, WorldCat, OCLC's customers, and the public interest.

## II. STATEMENT OF FACTS

### A. OCLC's WorldCat, the World's Premier Bibliographic Database, is at the Heart of OCLC's Products and Services.

OCLC is an Ohio non-profit membership, computer library service, and research organization dedicated to increasing access to the world's information and reducing the rate of the rise in library costs. Declaration of William Rozek ("Rozek Decl.") ¶ 6, filed concurrently with this Motion. WorldCat is the heart of OCLC's services. *Id.* ¶ 11. WorldCat is the world's most comprehensive database of information about library collections and the authoritative

source of library bibliographic records. *Id.* WorldCat contains over 600 million bibliographic records and provides customers with access to more than 5 billion items around the world. *Id.* ¶ 12. As is relevant here, WorldCat customers rely on WorldCat to create, enhance, and otherwise manage their record catalogs. *Id.* ¶¶ 10, 12. Moreover, WorldCat is integrated into and supports many of OCLC's other product and service offerings. *Id.* ¶ 21.

WorldCat's contents are a combination of customer-contributed records, publisher records, and OCLC-created records that give libraries a greater web-scale presence. *Id.* ¶ 13. The records contain bibliographic data, such as the title, author, and number of pages. Declaration of Mary Sauer-Games ("Sauer-Games Decl.") ¶ 8, filed concurrently with this Motion. Because WorldCat records start with submissions from OCLC customer libraries, publishers, and national libraries, the more libraries that participate, the better and more useful WorldCat becomes to libraries, their end users, and other organizations that want to interact with libraries on the Web. Rozek Decl. ¶ 13.

After customers contribute records, OCLC selects, arranges, and adds metadata to enhance these records to improve the discovery of the records, such as adding OCLC's unique identifying number, the "OCN," and enhancements that recognize connections between titles and then links and/or merges the duplicate records together. Sauer-Games Decl. ¶ 9. OCLC also created embedded identifiers called "WorldCat Entities" that make WorldCat more discoverable through web search engines, like Google, and allow the user to link records back into the library catalog. *Id.* OCLC has improved and enhanced more than 93% of WorldCat records. *Id.* ¶ 10. The value of WorldCat are these improvements and enhancements. *Id.*

But these improvements and enhancements are not free: for nearly six decades, OCLC has made substantial investments—170 million dollars over the past five years—in developing,

maintaining, and enhancing the library bibliographic records and associated metadata that OCLC markets as WorldCat. *Id*. ¶ 7; Rozek Decl. ¶ 15. More than 20% of OCLC's total workforce is focused entirely on WorldCat. Rozek Decl. ¶ 16.

Because of these significant costs of supporting WorldCat, customers are asked to share the benefits and costs of WorldCat as members of the overall OCLC Cooperative. *Id.* ¶ 18. As a result, customers must have a paid subscription to use WorldCat. *Id*. Currently, over 10,000 libraries have cataloging subscriptions for WorldCat and over 20,000 libraries have subscriptions for OCLC services that depend on WorldCat (all "WorldCat customers"). *Id*. ¶¶ 10, 18. About 72% of all OCLC's customers are WorldCat customers. *Id*. ¶ 19.

WorldCat is one of OCLC's most financially important offerings, directly making up an average of 39% of OCLC's revenue over the past 5 years. *Id*. ¶ 17. However, because WorldCat is integrated into almost all OCLC's other products and services, WorldCat directly and indirectly accounts for 83% of OCLC's total revenue. *Id.* ¶ 22.

### B. OCLC's Framework Agreement and WorldCat Policy Govern OCLC's Relationship with WorldCat Customers.

OCLC requires every OCLC customer to agree to OCLC's Framework Agreement and the accompanying "Schedule(s)" that apply to the products or services they receive from OCLC (collectively, the "Framework Agreement"). Compl. Exh. E, Dkt. 1-5; Rozek Decl. ¶ 23. The Framework Agreement provides that OCLC is the "exclusive owner[] of all rights and interests in" OCLC's products, including WorldCat, and that the license OCLC customers have to use OCLC products is "nontransferable." Compl. Exh. E, Dkt. 1-5 at §§ 5.1, 5.2. OCLC customers also agree to the responsibilities outlined in Section 3 of Schedule 2 to the Framework Agreement, including that any use or transfer of WorldCat data is governed by the WorldCat

Rights and Responsibilities for the OCLC Cooperative (the "WorldCat Policy"). *Id.* at Schedule 2, Section 3.

The WorldCat Policy defines WorldCat as offering a "club good" because WorldCat derives its value through the efforts and investments of OCLC and its customers, members of the OCLC Cooperative. Compl. Exh. A, Dkt. 1-1 (Glossary, "Public Good"); Rozek Decl. ¶ 25. As a result, when a person or entity uses WorldCat without permission, that use diminishes the ability of customers who contribute to enjoy the benefits of the good. *Id.* To prevent this diminution, WorldCat customers may not engage in: (1) "mass downloading from WorldCat without OCLC's prior written consent"; (2) "mass distribution of data directly from WorldCat to non-members without OCLC's prior consent"; or (3) "other activities that diminish the value of WorldCat to the OCLC cooperative." *Id.* § 3(B)(6)(b)–(d). WorldCat customers do not have the right to share or transfer WorldCat data to another ILS/LSP company for that company's commercial use under the WorldCat Policy. Rozek Decl. ¶ 29.

### C. Baker & Taylor Breached Its Licensing Agreement with OCLC and Launched BTCat as a Direct Competitor to WorldCat.

In November 2019, Baker & Taylor entered into a two-year WorldCat Data Licensing Agreement with OCLC (the "Agreement"). Compl. Exh. B, Dkt. 1-2; Sauer-Games Decl. ¶ 17. The Agreement permitted Baker & Taylor to extract and use 50,000 WorldCat records each year. Compl. Exh. B, Dkt. 1-2 (Schedule 1, § D.a). If Baker & Taylor did not extract all 50,000 WorldCat records in the first year, Baker & Taylor could rollover the unused balance into the second year of the Agreement once it submitted a report to OCLC identifying the records it had extracted. *Id.* Baker & Taylor did not submit the report after the first year of the license. *Id.*

After OCLC discovered Baker & Taylor planned to launch BTCat to compete with WorldCat, OCLC gave proper notice of termination of the Agreement in May 2021. Sauer-

Games Decl. ¶ 19. Baker & Taylor then exercised its option to buy a one-year limited license that permitted Baker & Taylor to extract and use an additional 50,000 records during that third year. *Id*. ¶ 21. At most, the Agreement permitted Baker & Taylor to download and use what amounts to 0.025% of the 600 million records in WorldCat. Baker & Taylor extracted and used records in excess of the amount permitted by the Agreement because Baker & Taylor knew it was about to lose its access to WorldCat records, which it was using to populate BTCat. *Id*. ¶ 23.

Shortly after OCLC notified Baker & Tayor of its intent to terminate the Agreement, Baker & Taylor launched BTCat. BTCat is Baker & Taylor's "cataloging utility and database." Baker & Taylor has positioned BTCat to directly compete with WorldCat, characterizing BTCat as "a reasonably priced, modern cataloging" alternative "that provides efficient, easy to use features combined with strong, high-quality records."

The one-year option extending the Agreement expired in September 2022. *Id*. ¶ 24.

**D.      Defendants Hide Contractual Provisions in its Agreements with Customers that Grant Defendants Access to and a License to Use WorldCat Records.**

After OCLC gave notice to terminate the Agreement, Baker & Taylor devised a new plan to misappropriate WorldCat records without a license or authorization from OCLC. Beginning as early as May 2022, Defendants included new contractual provisions in the standard terms for its collectionHQ service, a tool that helps libraries manage their collections that is owned by Bridgeall. *Id*. ¶ 28. In collectionHQ's "Standard Terms and Conditions," subscribers "authorize the use of your cataloging records by Baker & Taylor" by signing the Standard Terms and Conditions. *Id*. ¶ 29. For collectionHQ subscribers that are also current or former OCLC WorldCat customers, this means that Baker & Taylor is being granted access to download and use OCLC WorldCat records that are included in the subscribers' catalogs. In exchange, subscribers get access to BTCat at no charge. *Id*. On information and belief, Defendants are

including this language in contracts for other services and products offered by Defendants and their affiliated entities. *Id.* ¶ 30.

### E. OCLC Discovers Defendants' Plan to Steal WorldCat Records for BTCat.

In September 2024, OCLC uncovered Defendants' misappropriation of WorldCat records. Defendants posted a demonstrative video of BTCat's capabilities, which showed that WorldCat records are in BTCat and that BTCat's customer libraries prefer to use WorldCat records over other, less robust records created by Defendants in BTCat. *Id.* ¶ 25. Also, a WorldCat customer told OCLC that it wanted to cancel its WorldCat subscriptions and stated that it was switching to BTCat. *Id.* ¶¶ 27. These incidents spurred OCLC to investigate BTCat, which led OCLC to the publicly available collectionHQ contracts with the Standard Terms and Conditions provision. *Id.* ¶ 28.

This lawsuit for tortious interference of contract, tortious interference of prospective business relationships, contractual breach, and unjust enrichment followed. Compl., Dkt. No. 1. OCLC seeks declaratory, injunctive, and, in the alternative, monetary relief. *Id.* at PageID #.

## III. LAW AND ARGUMENT

OCLC seeks immediate relief from the Court to stop Defendants from continuing to irreparably harm OCLC by wrongfully using and continuing to amass WorldCat records. Specifically, OCLC seeks a preliminary injunction that will prohibit Defendants from (1) including provisions in their agreements that encourage or require WorldCat customers to grant Defendants access to and a license to use customers' cataloging records that include WorldCat records, (2) accessing in any manner cataloging records from customers who have signed any such provisions and are OCLC WorldCat customer, (3) using any WorldCat records for which Defendants do not have a license in BTCat or any other products or services; and

(4) making available to the public or any customers WorldCat records for which Defendants do not have a license, including those in the BTCat cataloging utility and database.

When determining whether to issue a preliminary injunction under Federal Rule of Civil Procedure 65, courts balance four factors: (1) the likelihood that the plaintiff will succeed on the merits of its claim at trial, (2) whether the movant would suffer irreparable harm without the injunction, (3) whether the "balance of equities tip" in the movant's favor, and (4) whether issuing the injunction would serve the public interest. *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 607 (6th Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). These four considerations are "factors to be balanced and not prerequisites that must be satisfied." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Jones v. City of Monroe, MI*, 341 F.3d 474, 476 (6th Cir. 2003)). These factors "simply guide the discretion of the court." *McNeilly v. Terri Lynn Land*, 684 F.3d 611, 615 (6th Cir. 2012) (quoting *In re Eagle-Picher Indus. Inc.*, 963 F.2d 855, 859 (6th Cir. 1992)). Here, all four factors counsel granting OCLC a preliminary injunction.

### A.     OCLC Will Prevail on the Merits of Its Claims.

At the preliminary injunction stage, a plaintiff does not need to "prove his case in full." *Certified Restoration*, 511 F.3d at 543 (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). This is because the adjudication of a motion for preliminary injunction "necessarily happen[s] before the parties have had an opportunity to fully develop the record." *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848 (6th Cir. 2017). Ordinarily, a plaintiff must only "raise[] questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372, 385 (6th Cir. 2023) (quoting

*Certified Restoration*, 511 F.3d at 543). For the reasons that follow, OCLC is likely to prevail on the merits of its claims, weighing in favor of granting a preliminary injunction for OCLC.

### 1. Defendants Are Tortiously Interfering with OCLC's Contractual Relationships.

To succeed on a tortious interference of contract claim, plaintiff must show: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *NCR Corp. v. Korala Assocs.*, 512 F.3d 807, 817 (6th Cir. 2008) (quoting *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999)). OCLC has a strong likelihood of succeeding on all elements of its claim for tortious interference with contract.

*First*, there are two contracts between OCLC and WorldCat customers. When customers subscribe to WorldCat, they agree to the Framework Agreement and the WorldCat Policy. Rozek Decl. ¶ 23.

*Second*, Defendants are aware of the Framework Agreement and WorldCat Policy between OCLC and its current and former customers. It is common industry knowledge that OCLC protects WorldCat through contracts (which are available online) with WorldCat customers. Sauer-Games Decl. ¶ 32. Defendants themselves had the licensing Agreement with OCLC for use of WorldCat records and nearly 300 third-party cataloging agreements with OCLC, demonstrating Defendants' awareness of OCLC's contractual efforts to protect WorldCat. *Id.* And in February 2018, Baker & Taylor notified its customer libraries that they could not offer WorldCat records through Baker & Taylor's products and services unless the library is a full WorldCat cataloging customer and had the proper third-party agency agreements in place with Baker & Taylor and OCLC. *Id.* Further, OCLC sent Defendants a cease-and-desist

letter and had discussions with Defendants where OCLC notified Defendnats that they were interfering with contracts between OCLC and its WorldCat customers. *Id.* ¶ 37.

However, Defendants continue to include the Standard Terms and Conditions provision in its contracts, thereby encouraging OCLC's WorldCat customers to breach their contractual obligations owed to OCLC. *See id.* ¶ 38. Under these circumstances, courts have inferred a defendant's knowledge of contracts. *See, e.g.*, *PUI Audio, Inc. v. Van Den Broek*, No. 3:21-CV-284, 2021 WL 5164935, at *7-8 (S.D. Ohio Nov. 4, 2021) (concluding that letters from a party's attorneys discussing the relevant contracts demonstrated awareness of the contracts).

*Third*, OCLC can satisfy the third element because Defendants intentionally induced WorldCat customers to breach the Framework Agreement and the WorldCat Policy. The Framework Agreement grants WorldCat customers a limited license to use WorldCat records. Rozek Decl. ¶ 24. Such use, however, must comply with the WorldCat Policy. *Id.* ¶ 25. The WorldCat Policy prohibits (1) mass downloads of records, (2) mass distribution of records, and (3) activities that diminish the value of WorldCat, *i.e.*, sharing WorldCat records and metadata to a non-contributing user or direct competitor of OCLC. Compl. Exh. A, Dkt. 1-2 at § 3(b). Additionally, the Framework Agreement provides that any license a WorldCat customer has is nontransferable. *Id.* § 5.2.

Through Defendants' Standard Terms and Conditions for certain products and services, like collectionHQ, with WorldCat customers, Defendants require those customers to grant Defendants access to and a license to use the customers' catalog records. Sauer-Games Decl. ¶ 29. WorldCat customer's cataloging records consist of WorldCat's records. *Id.* ¶ 31. So, when a WorldCat customer grants Defendants access to and a license to use the customer's catalog records, the customer necessarily also grants access to and a license to use the WorldCat records

in that subscriber's catalog for BTCat, a direct competitor. *Id*. Therefore, by including these Standard Terms and Conditions, Defendants are inducing WorldCat customers—many of whom are now Baker & Taylor customers—to violate the Framework Agreement and WorldCat Policy. *Id*. ¶ 35. Specifically, Defendants are inducing WorldCat customers to violate the WorldCat Policy's prohibition on downloading and distributing WorldCat records *en masse*, the WorldCat Policy's prohibition on any activities that devalue WorldCat, and the Framework Agreement's provision stating that WorldCat customer's licenses to use WorldCat records are nontransferable.

*Fourth*, Defendants' procurement of these breaches was intentional and improper. A defendant intentionally procures a breach when the defendant "[wanted] the breach of contract, or [knew] that a breach of contract is substantially certain to result from the interference." *Total Quality Logistics, LLC v. Riffe*, No. 1:19-CV-23, 2022 WL 877396, at *13 (S.D. Ohio Mar. 24, 2022) (quoting *Union of Needletrades, Indus. And Textile Emps. AFL-CIO v. Am. Capital Strategies, Ltd.*, 546 F. Supp. 2d 546, 561 (S.D. Ohio 2008)).

Defendants, at a minimum, know that the Standard Terms and Conditions provision is substantially certain to result in a breach. Throughout the industry, it is common knowledge that: (1) most libraries and academic institutions are current or former WorldCat customers and (2) WorldCat supplies the majority of the world's library bibliographic records, as WorldCat offers more than 600 million records. *Id*. ¶ 35. Moreover, Defendants themselves know that OCLC protects its WorldCat records through contractual agreements, such as a license agreement and third-party cataloging agreements. *Id*. ¶ 32. And in 2018, Baker & Taylor notified its customer libraries that they could not offer WorldCat records unless the library had a WorldCat subscription and proper third-party agreements in place. *Id*. Defendants thus also know that because OCLC is the world's leading cataloging database, most of Defendants'

customers (including collectionHQ subscribers) are also current or former WorldCat customers with WorldCat records and data in their library catalogs. *Id*. ¶ 35. And importantly, Defendants sought these breaches of the Framework Agreement and WorldCat Policy to populate BTCat with WorldCat records and metadata. *Id*. ¶ 33. Therefore, OCLC is likely to succeed in proving that Defendants know that by including these Standard Terms and Conditions, a breach of OCLC's Framework Agreement and WorldCat Policy is substantially likely to result.

*Fifth*, OCLC can show that the interference was neither justified nor privileged. Interference is justified only if "the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract." *QFS Transp., LLC v. Huguely*, No. 1:21-CV-00769, 2022 WL 395756, at *7 (S.D. Ohio Feb. 9, 2022) (quoting *Inwood Vill., Ltd. v. Christ Hosp.*, No. C-110730, 2012 WL 3104407, at *4, (Ohio App. Ct. Aug. 1, 2012)). In contrast, the interference may not be privileged or justified if a defendant has purposefully directed its contractual interference against the "most lucrative" aspect of the plaintiff's business. *MPW Indus. Servs., Inc. v. Pollution Control Servs., Inc.*, No. 2:02-CV-955, 2006 WL 640438, at *9 (S.D. Ohio Mar. 9, 2006).

Applying these rules here, Defendants' interference was not justified. Defendants' contractual interference permits them to benefit from WorldCat records that they have no right to access, let alone incorporate into BTCat, a competing product. Rozek Decl. ¶ 30. Defendants then incorporate and offer these same WorldCat records and data on BTCat for free to libraries who grant them licenses to use the records or at a low cost to undercut OCLC. Sauer-Games Decl. ¶ 36. This is not "fair competition." Moreover, WorldCat customers complying with their contracts with OCLC does not impair any legitimate interest of Defendants; it impairs only Defendants' ability to gain an unfair advantage over WorldCat. Further, WorldCat is the

financial powerhouse of OCLC, making up 39% of its revenue, directly, and 83% of its revenue, directly and indirectly combined. Rozek Decl. ¶¶ 17, 22. By going after the "most lucrative" aspect of OCLC's business, Defendants cannot claim that their actions were privileged. *MPW Indus. Servs., Inc,* 2006 WL 640438, at *9.

As to the last element, OCLC has been and will continue to be harmed by Defendants' conduct. *See infra*, Part III.B. OCLC will also demonstrate resulting damages through discovery, which are significant given its investment into, and revenues from, WorldCat. *Id.* ¶¶ 30–42.

### 2. Defendants are Tortiously Interfering with OCLC's Prospective Business Relationships.

To prove a claim for tortious interference of prospective business relationships, OCLC must prove: "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Equity Res., Inc. v. Thoman*, 682 F. Supp. 3d 707, 717 (S.D. Ohio 2023) (quoting *First Star Logistics, LLC v. Bernard*, No. 1:16-cv-1070, 2020 WL 7698130, at *7 (S.D. Ohio Dec. 28, 2020)). OCLC shows it has a strong likelihood of success on the merits of its tortious interference of prospective business relationships claim.

*First*, OCLC has prospective business relationships with libraries and academic institutions around the world. OCLC continually fosters these relationships to recruit new WorldCat customers. For instance, OCLC offers demonstrations, webinars, conference presentations, and on-site sales presentations that inform libraries of OCLC's services. Sauer-Games Decl. ¶ 11.

*Second*, OCLC can demonstrate that Defendants know about these relationships. As explained above, it is well-known in the industry that WorldCat offers the most expansive collection of bibliographic records and a premier library cataloging service. *Id.* ¶ 35. It is also

well-known that as a result of WorldCat's impressive offering, institutions looking for such a service will at least consider WorldCat as a possibility. *Id.* Because Defendants are sophisticated players in the industry, they must know that any institution they solicit to subscribe to BTCat is considering subscribing to WorldCat. *Id.* ¶ 32.

*Third*, Defendants are intentionally interfering with OCLC's prospective business relationships. Because BTCat contains on wrongfully obtained WorldCat records and Defendants did not have to incur the expense of developing BTCat from scratch, BTCat can provide a version of WorldCat, but at a much lower price. *Id.* ¶¶ 29, 36. As a result, these prospective customers will not pay WorldCat's higher price when it appears that much of the same service is offered elsewhere for less. *Id.* ¶ 36. And as discussed above, Defendants are interfering with prospective business relationships without privilege or justification. *See* Part II.A.1. Defendants are offering wrongfully obtained WorldCat records and metadata via BTCat for a greatly reduced price, which specifically targets OCLC's most lucrative service/product. *Id.* That is not the kind of fair competition that is privileged or justified. *Id.* Instead, Defendants "set out on a course of conduct designed to kill" any relationship between OCLC and prospective WorldCat customers. *Gray-Jones v. Jones*, 738 N.E.2d 64, 102 (Ohio Ct. App. 2000) (affirming the trial court's holding that the defendant had tortiously interfered with a prospective business relationship).

*Fourth*, OCLC has been and will continue to be damaged by Defendants' behavior. *See infra* Part III.B.

### 3. Baker & Taylor Breached its Agreement with OCLC.

Under Ohio Law, a plaintiff must prove four elements for a breach of contract claim: "(1) "the existence of a contract"; (2) "performance by the plaintiff"; (3) "breach by the defendant"; (4) "damage or loss to the plaintiff." *New Lansing Gardens Hous. Ltd. P'ship v. Columbus Metro. Hous. Auth.*, 46 F.4th 514, 520 (6th Cir. 2022) (quoting *Savedoff v. Access*

*Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008)). OCLC will likely succeed on the merits of its claim that Defendant Baker & Taylor breached its contract with OCLC.

*First*, Baker & Taylor and OCLC had a contract. In 2019, OCLC and Baker & Taylor entered into a two-year WorldCat Data Licensing Agreement with OCLC (the "Agreement"), under which OCLC granted Baker & Taylor a license to a number of WorldCat records. Compl. Exh. B, Dkt. 1-2; Sauer-Games Decl. ¶ 17; Compl. Exh. C, Dkt. 1-3; Sauer-Games Decl. ¶ 18. Baker & Taylor exercised its option to extend the Agreement for a third year, which expired in September 2022. Sauer-Games Decl. ¶ 19.

*Second*, OCLC performed under the Agreement. As promised in the License Agreement, OCLC allowed Baker & Taylor to extract and use a set number of WorldCat records. *Id.* ¶ 18.

*Third*, OCLC is likely to succeed in showing Baker & Taylor breached the Agreement. Under the Agreement, Baker & Taylor was permitted to extract and use no more than 50,000 WorldCat Records per year and only if Baker & Taylor provided a report indicating which records it downloaded. *Id.* Because Baker & Taylor has put 70 million records in BTCat, many of which are WorldCat records, it is likely that Baker & Taylor exceeded the downloads permitted by the Agreement. *Id.* ¶¶ 23, 26. Moreover, Baker & Taylor did not provide a written report after the first year of the Agreement, as is required. *Id.* ¶ 20. And when Baker & Taylor later provided a report to OCLC in July 2021, it misrepresented the number of the records it had downloaded from WorldCat. *Id.*

*Fourth*, Baker & Taylor's breach has damaged, and will continue to damage, OCLC. *See infra* Part III.B.

### 4. OCLC is likely to show Defendants were Unjustly Enriched.

An unjust enrichment claim "requires a showing that (1) a benefit was conferred by the plaintiff on the defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant

retained the benefit under circumstances in which it was unjust to do so without payment." *Bunta v. Superior VacuPress, LLC*, 218 N.E.3d 838, 848 (Ohio 2022) (citing *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)). As an alternative claim to breach of contract, OCLC is likely to show Defendants were unjustly enriched by their conduct related to WorldCat.

OCLC can establish each element of an unjust enrichment claim. First, Defendants received a benefit from OCLC—WorldCat records in excess of what Defendants reported and/or is permitted under the Agreement. Sauer-Games Decl. ¶ 23. Second, Defendants knew they received this benefit—in fact, they uploaded those records to BTCat rather than engineer bibliographic records themselves. *Id.* ¶ 25. And third, Defendants retained the benefit of these WorldCat records and data without paying OCLC for them. *Id.* ¶ 36. Though Defendants paid $45,000 per year under the Agreement, this payment was only for 50,000 records per year. *Id.* ¶ 18. Defendants did not pay for any records beyond what is permitted by the Agreement. *Id.*

## B. Defendants' Wrongful Conduct is Irreparably Harming OCLC.

Without a preliminary injunction, OCLC will continue to suffer immediate and irreparable injury. In the context of a request for injunctive relief, an injury is irreparable if it is "not fully compensable by monetary damages." *Tennessee v. Becerra*, ---F.4th---, No. 24-5220, 2025 WL 751585, at *11 (6th Cir. Mar. 10, 2025) (quoting *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)). An injury is "not fully compensable by money damages" if "the nature of the plaintiff's loss would make the damages difficult to calculate." *Certified Restoration*, 511 F.3d at 550 (quoting *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)). Competitive injuries—like "interference with customer relationships and damage to reputation"—are "precisely the sorts of injuries this circuit has said are difficult to quantify monetarily, and thus constitute irreparable harm." *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 503–04 (6th Cir. 2022) (citing cases); *see also Cavalier Distrib. Co.,*

*Inc. v. Lime Ventures, Inc.*, No. 23-3283, 2023 WL 9052002, at *4 (6th Cir. Dec. 28, 2023) ("[U]nder our precedent, the loss of goodwill constitutes irreparable harm, even if the affected product only constitutes a small portion of a distributor's portfolio." (citing *S. Glazer's*, 860 F.3d at 853)).

Absent injunctive relief, OCLC will continue to face significant, irreparable harm from Defendants' scheme to populate BTCat with WorldCat records. First, because Defendants did not have to expend the resources to create equally high-quality records and build BTCat from scratch, they can afford to offer subscriptions to BTCat, which consists of WorldCat records, at a much lower fee than OCLC. Rozek Decl. ¶ 30. And because BTCat subscriptions are available at a much lower cost, or even for free if libraries grant Defendants access to and a license to use their WorldCat records under Defendants' Standard Terms and Conditions, current and future WorldCat customers will not pay for access to WorldCat. Sauer-Games Decl. ¶ 36.

This is already happening: OCLC has lost nearly 30 known WorldCat customers since BTCat launched. Rozek Decl. ¶ 35. Moreover, OCLC knows that at least 14 customers, including one Ohio library, are considering transitioning to BTCat. *Id*. But these estimates do not include (1) the customers OCLC has lost because of BTCat who did not expressly tell OCLC why they canceled their WorldCat subscription and (2) unknown prospective customers that chose BTCat over WorldCat. *Id*. ¶¶ 35–36. Because the precise number of direct WorldCat subscriptions lost cannot be known, monetary damages are insufficient, and this competitive harm cannot be calculated. *Id*. ¶ 40.

Further, Defendants obtained these WorldCat records by interfering with OCLC's contracts with WorldCat customers. Sauer-Games Decl. ¶ 36. This "likely interference with customer relationships resulting from the breach" of a binding agreement and the "loss of fair

competition" are injuries that are "'not fully compensable by money damages'" because "'the nature of the[se] loss[es] would make the damages difficult to calculate.'" *Certified Restoration*, 511 F.3d at 550 (finding irreparable injury in the context of an alleged violation of a non-compete agreement).

Not only is Defendants' conduct leading OCLC to lose current and prospective WorldCat customers, but Defendants' conduct is also harming WorldCat as a club good. Rozek Decl. ¶ 33. The quality of WorldCat as a whole is directly related to the number of customers it has. *Id*. The more libraries and institutions that participate in WorldCat and catalog their bibliographic records with OCLC, the more records that are available through WorldCat. *Id*. The more records that are available through WorldCat, the more beneficial WorldCat becomes to OCLC's customers. *Id*. So, every departing WorldCat customer's absence causes a direct, negative impact on customers that remain. *Id*. ¶¶ 33, 35. Crucially, this harm is the result of Defendants' wrongfully obtaining WorldCat records and then offering those records at a steep discount—not legitimate market competition. *Id*. ¶¶ 30–31. As explained above, Defendants' unlawful conduct allows them to offer BTCat at a reduced price, which entices WorldCat customers to leave. Sauer-Games Decl. ¶ 36. And when the overall quality of WorldCat is reduced, more WorldCat customers will cancel their subscription and OCLC will lose more unknown, prospective customers. Rozek Decl. ¶¶ 33, 35, 37.

And finally, the competitive injuries that Defendants have caused and will continue to cause without injunctive relief result in real, but difficult to calculate, financial injuries to OCLC as a whole. WorldCat is one of OCLC's most financially important offerings. *Id*. ¶ 37. Of all OCLC's customers, about 72% are WorldCat customers. *Id*. ¶ 19. And many of OCLC's other services, such as OCLC's Discovery Services and OCLC's Resource Sharing Services, and the

products that form each of these service lines, depend on WorldCat. *Id.* ¶ 21. Thus, damage to WorldCat causes a rippling effect throughout all OCLC—and the exact value of the loss of revenue and customers cannot be calculated. *Id.* ¶¶ 38, 40.

Again, WorldCat brought in an average of 39% of OCLC's revenue, directly, and 83% of OCLC's revenue, directly and indirectly combined, over the past 5 years. *Id.* ¶¶ 17, 22. Defendants' actions risk a significant loss of goodwill among OCLC's customers, for the reasons just explained. *Id.* ¶¶ 32–33. The Sixth Circuit has found irreparable harm in circumstances where there was a loss of goodwill related to products that contribute a much smaller percentage of a company's total product portfolio. *See, e.g.*, *S. Glazer's*, 860 F.3d at 852–53 (finding irreparable harm where the product served at 25% of the branch's product line revenue and 4% of the branch's overall revenue and noting irreparable harm has been found when a manufacturer's products comprise .51% of overall business).

In sum, monetary damages cannot adequately measure the damage to OCLC's customer relationships, WorldCat itself, OCLC's services that depend on WorldCat, and the unknowable loss in sales of other products and services. *Id.* ¶ 40. And all these injuries come from the same source: Defendants' anti-competitive and wrongful conduct. *See supra*, Part III.A.

## C. The Balance of Equities Favors an Injunction.

The irreparable harm OCLC would face absent an injunction far outweighs any harm to others that the injunction might cause. For this factor, the Court must balance the irreparable injury OCLC will suffer if its motion for injunctive relief is denied against any harm others will suffer if OCLC's motion is granted. *ACT, Inc*, 46 F.4th at 498 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Martin-Marietta Corp. v. Bendix Corp.,* 690 F.2d 558, 568 (6th Cir. 1982). If injunctive relief were granted here, the only "others" that Defendants

may argue are potentially harmed are Defendants themselves and potential customers of the BTCat service.

The injunctive relief requested by OCLC would, admittedly, cause some harm to Defendants because it would curb their ability to operate BTCat as they have been, specifically, its access to and use of wrongfully taken WorldCat records. However, this harm to Defendants is outweighed by the harm to OCLC, as described above. Moreover, any potential harm that granting injunctive relief could have on Defendants would be of Defendants' own making, given that they have been actively soliciting and incorporating WorldCat records and metadata into BTCat, even once they knew that such records and metadata are and were provided to them in violation of OCLC's agreements with its customers. *Cf. Concentrix CVG Customer Mgmt. Grp. Inc. v. Daoust,* No. 1:21-CV-131, 2021 WL 1734284, at *16 (S.D. Ohio May 3, 2021) (finding that any harm to the company defendant "would be of [its] own making" given that it "proceeded with employing [plaintiff's former employee], even once it knew of the [non-compete agreement]"). In other words, Defendants will not "suffer hardship" by being "required to comply with the law." *Tee Turtle, LLC v. Swartz*, No. 2:21-CV-01771, 2021 WL 2349389, at *3 (S.D. Ohio June 9, 2021).

BTCat customers will be only minimally harmed by the injunction because they will not lose access to BTCat's records—they will lose access only to those records *on BTCat.* That is, because BTCat's records are almost entirely wrongfully obtained from WorldCat, BTCat customers can access BTCat's records by subscribing to WorldCat. *See, e.g.*, *Certified Restoration*, 511 F.3d at 551 (finding this factor did not "counsel[] against issuing the preliminary injunction" where "[t]he only third parties that might be affected by the injunction are Defendants'... customers" and "they would still be able to obtain ... services from

Plaintiff"). Moreover, any small harm to potential BTCat customers from having to pay fully for WorldCat instead of BTCat is negligible when compared to the harm that these same customers will experience if Defendants can successfully push OCLC from the ILS/LSP market by destroying OCLC's core WorldCat offering through Defendants' tortious conduct. In other words, although Defendants and their customers would suffer some harm from OCLC's proposed injunction, the harm OCLC faces without an injunction, *see supra*, Part III.B far outweighs any harms to others. All in all, this factor does not weigh against granting the injunction here.

### D. Injunctive Relief Will Serve the Public Interest.

OCLC's proposed injunction is in the public's interest. First, the injunction would protect the benefits of WorldCat, on which many institutions and patrons rely. WorldCat customers, which include non-profit, government, academic, and library customers around the world, rely on continued and uninterrupted access to WorldCat's catalog of records. Sauer-Games Decl. ¶¶ 19–20. And, in turn, WorldCat customers' patrons, students, researchers, and customers rely on their institutions' access to those records. *See id.* ¶¶ 9–10, 20. Because WorldCat's benefit is directly related to the number of customers it has, and because Defendants' actions will unfairly reduce the number of customers, an injunction will preserve the "club good" of WorldCat. Compl. Exh. A, Dkt. 1-2 (§ 2(D) (flush language) & Glossary, "Public Good"); Rozek Decl. ¶ 25.

Relatedly, as part of the WorldCat Policy, OCLC promises to ensure customer-contributed data is used to support and benefit the cooperative. Rozek Decl. ¶ 26. When OCLC customers contribute data to the Cooperative, which is then enriched by OCLC and other customers, and other customers give that data away in violation of the WorldCat Policy and

Framework Agreement, the benefits of the Cooperative's data are conferred to others, such as Defendants and non-OCLC-customers, who have not shared in the associated costs of maintaining the Cooperative, *i.e.*, WorldCat, or contributed to its benefit, such as by contributing records, paying a licensing fee, etc. *Id.* ¶¶ 26, 30. Without an injunction to protect that "club good," there is a significant risk of harm to the non-profit, government, academic, and library institutions that are an essential part of our communities and economies. *Id.* ¶¶ 30, 33, 35.

Next, an injunction will protect OCLC's employees. OCLC currently employs over 1,314 workers worldwide and 793 in Ohio; a fifth of OCLC's workforce works primarily or exclusively on WorldCat. *Id.* ¶¶ 7, 16, 42. And as explained above, WorldCat is interwoven with most of OCLC's other products and services. *Id.* ¶¶ 21, 38. More than half of OCLC's employees have WorldCat-related jobs. *Id.* ¶ 16. Without an injunction, Defendants' anti-competitive conduct will make current enrollment in WorldCat and other OCLC products and services drop precipitously and destroy OCLC's prospects of future enrollment. *Id.* ¶ 41. That loss of enrollment will significantly shrink OCLC's revenue. *Id.* ¶¶ 40–41. Faced with such a loss of revenue, OCLC would have no choice but to reduce its workforce. *Id.* ¶ 42. Those job losses would be felt not only by the employees and their families, but also by the communities in which they live, including here in Ohio. *See DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743, 747 (6th Cir. 2020) (explaining that the public interest was served by Paycheck Protection Program loans because they would "protect and support" employees).

Finally, under Ohio law, "[p]reserving the sanctity of contractual relations and preventing unfair competition have traditionally been in the public interest." *Total Quality Logistics, LLC v. Riffe*, No. 1:19-CV-23, 2019 WL 5553293, at *7 (S.D. Ohio Oct. 28, 2019) (quoting *Total Quality Logistics, LLC v. OTC Logistics LLC*, No. 1:19-CV-151, 2019 WL 1300223, at *5 (S.D.

Ohio Mar. 21, 2019)); *Certified Restoration*, 511 F.3d at 551 ("Enforcement of contractual duties is in the public interest."). Here, Defendants are intentionally inducing OCLC's WorldCat customers to breach their agreements with OCLC in order to steal OCLC's customers and further consolidate their dominance in the ILS/LSP market, and Baker & Taylor is breaching its own contract with OCLC. The public has a strong interest in preserving the sanctity of these contracts and preventing unfair competition by enjoining Defendants' wrongful actions.

### E. The Court Should Order OCLC to Post Only a Minimal Bond.

As a general rule, the Court may issue a preliminary injunction only if the movant posts a bond "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). OCLC's proposed injunction will cause Defendants only minimal loss of revenue because they will still be able to offer products and services that do not involve WorldCat records, as well as because BTCat is offered at a discounted fee or for free. Accordingly, this Court should order that OCLC need post only a minimal bond.

## IV. CONCLUSION

Accordingly, OCLC respectfully requests that the Court issue a preliminary injunction as set forth in OCLC's Motion accompanying this memorandum.

Respectfully submitted,

/s/ *Jeffrey M. Walker*
Jeffrey M. Walker (0096567), Trial Attorney
Traci L. Martinez (0083989)
Kathryn M. Brown (0100426)
Brittany Silverman (0102263)
Erin Hassett (0099970)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: (614) 365-2700

Facsimile: (614) 365-2499
jeffrey.walker@squirepb.com
traci.martinez@squirepb.com
kathryn.brown@squirepb.com
brittany.silverman@squirepb.com
erin.hassett@squirepb.com

**CERTIFICATE OF SERVICE**

On March 26, 2025, this document was filed electronically with the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties. Additionally, this document was sent by email to the following counsel for Defendant and will be served upon the parties with the summons and complaint in this matter:

*Jeffrey M. Walker*
Trial Attorney for Plaintiff OCLC, Inc.