# Exhibit B

| | |
|---|---|
| **OCLC, INC.,** | Case No. 2:25-cv-00309 |
| Plaintiff, | |
| v. | Judge Edmund Sargus, Jr. |
| Baker & Taylor, LLC; Bridgeall Libraries Ltd., | |
| | **Magistrate Judge Elizabeth Preston Deavers** |
| Defendants. | |

# PLAINTIFF OCLC, INC.'S PROPOSED FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO BRIDGEALL LIBRARIES LTD.

Plaintiff OCLC, Inc., by and through its undersigned counsel, hereby requests that, within 28 days, or a shorter period set by the Court, of the date of service hereof, Defendant Bridgeall Libraries Ltd. responds in writing to each of the following Interrogatories and Requests for Production of Documents (collectively "Requests").

## DEFINITIONS

1. "Bridgeall" shall refer to defendant Bridgeall Libraries Ltd., and its predecessors, successors, parents, subsidiaries, officers, directors, employees, agents, attorneys, representatives and any other Persons acting on behalf of or in cooperation with any of the foregoing.

2. The terms "You" and "Your" shall refer to Bridgeall.

3. "Baker & Tayor" shall refer to defendant Baker & Taylor, LLC and its predecessors, successors, parents, subsidiaries, officers, directors, employees, agents, attorneys, representatives and any other Persons acting on behalf of or in cooperation with any of the foregoing.

4. "Complaint" shall refer to the Complaint filed by Plaintiff in the above-captioned case on March 26, 2025.

5. "Defendants" shall refer to Defendants Baker & Taylor and Bridgeall.

6. "Lawsuit" shall refer to the above-captioned case filed on March 26, 2025.

7. "BTCat" shall refer to the cataloging utility and database developed, marketed, designed, and/or operated by You and Defendants, as described in the Complaint.

8. "Licensing Agreement" shall refer to the 2019 WorldCat Data Licensing Agreement (attached as Exhibit 1), any amendments thereto, and any follow-on options exercised thereunder.

9. "OCLC WorldCat® Customers" shall refer to the OCLC member libraries, which can be found through a searchable directory available on OCLC's website at https://www.oclc.org/en/contacts/libraries.html.

10. "Plaintiff" and "OCLC" shall refer to plaintiff OCLC, Inc. and its predecessors, successors, parents, subsidiaries, officers, directors, employees, agents, attorneys, representatives and any other Persons acting on behalf of or in cooperation with any of the foregoing.

11. The terms "communication" and "communications" are used in the broadest possible sense and mean every conceivable manner or means of disclosure, transfer or exchange of oral or written information between one or more persons or entities and shall include, without limitation, notes, letters, memoranda, e-mail, facsimiles, reports, briefings, telegrams, telexes, or by oral contact by such means as face to face meetings and telephone conversations, or any form of transmittal of information in the form of facts, ideas, inquiries or otherwise.

12. The terms "document" and "documents" are used in the broadest meaning ascribed by Fed. R. Civ. P. 34(a), and shall mean all written, recorded, or graphic matter, or computer or

electronic records of written, recorded or graphic matter, of every type or description in your possession, custody, or control, whether an original, copy, or draft, wherever located. Documents also shall include the memorializations of communications encompassing all forms by which information or Documents can be transmitted or exchanged, including but not limited to meetings, other face-to-face exchanges, telephone conversations, letters, facsimiles, electronic mail, notes of any of the foregoing, and the like.

13. The term "including" shall be construed to mean "including but not limited to" as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

14. The terms "relate to," "relates to," "relating to," and "related to" mean referring to, summarizing, reflecting, constituting, containing, concerning, embodying, mentioning, discussing, describing, consisting of, comprising, showing, commenting on, tending to support or tending to refute, or in any way logically or factually connected with the matter that is the subject of the Request.

## **INSTRUCTIONS**

1. In answering and responding to these Requests, You shall furnish such documents and information in Your possession, custody or control, including documents and information that is in the possession, custody or control of Your agents, investigators, consultants, and (subject to any otherwise applicable privileges) attorneys.

2. If You feel any discovery request is unclear, overbroad, or otherwise objectionable, you should immediately contact Plaintiff's counsel for clarification.

3. In providing Your responses, You are requested to make a full and thorough search and to furnish all documents and information available to You, including documents and information in the possession of Your present and former attorney(s), agent(s), and any other

representative(s) or person(s) acting on Your behalf, not merely such documents in Your possession or information presently known to You.

4. If You cannot provide some or any of the requested documents or information (after exercising due diligence to secure them), state and specify the reasons for Your inability to produce the remainder of the documents or information and state whatever information or knowledge You have concerning the documents or information not provided.

5. With respect to documents, the term "identify" means to give the date, title, origin, author, addressee, and the identity of any and all persons who receive copies and to describe the document sufficiently well to enable OCLC to know what the document is and to retrieve it from a file; and, further, the term means to give the name, address, position, and title of the person who has custody of the document, whether or not it is in the possession of and subject to the control of the responding party.

6. In connection with an event or communication, the term "identify" means the date, place and time the event occurred and, in the case of a communication, the person or persons who made it.

7. With respect to persons, the term "identify" includes the following information: (1) the name of the person, firm, corporation, or other agency whose identity is sought; (2) in the case of an individual, the last known home address and office address; and (3) in the case of non-individuals, the office address.

8. Where the context in the Requests makes it appropriate, each singular word shall include its plural and each plural word shall include its singular. The words "any," "and," and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery all responses which might otherwise be construed to be outside its scope. Each of

the following words includes the meaning of every other word: "each," "every," "all," and "any." The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

9. Any Documents responsive to these Requests that are not produced by a reason or a claim of privilege, work product, or for any other reason shall be identified in a writing which expressly makes the claim on which the document is being withheld. Such a writing shall describe nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing the information that itself is privileged or protected, will enable other parties to assess the claim. Such a claim must meet the requirements of Federal Rule of Civil Procedure 26(b)(5).

10. If no Documents exist that are responsive to a particular Request, state in writing that no responsive Documents exist.

## INTERROGATORIES

**Interrogatory 1.** Identify Your corporate structure and Your relationship to any parents, subsidiaries, affiliates, and other related entities, including Baker & Taylor, LLC.

**Response:**

**Interrogatory 2.** Describe in detail Your involvement, participation, and/or contribution in the development, design, strategy, operations, implementation, and/or oversight of BTCat.

**Response:**

**Interrogatory 3.** Describe in detail how You use BTCat data in any of Your products and/or services.

**Response:**

## REQUESTS FOR PRODUCTION

**Request for Production 1.** Any communications that refer to OCLC, WorldCat, and/or WorldCat records, from January 1, 2021 to the present.

**Response:**

**Request for Production 2.** Any communications related to BTCat's or any of Your service's or product's use of WorldCat records or data.

**Response:**

**Request for Production 3.** Documents sufficient to show all OCLC WorldCat Customers that You have communicated with about BTCat or any other of Your products and services, OCLC, WorldCat, and/or WorldCat records from January 1, 2021 to the present.

**Response:**

**Request for Production 4.** Documents sufficient to show any agreements, contracts, terms, and/or consent forms between You and any OCLC WorldCat Customers related to BTCat, including Your agreement for collectionHQ (as described in Paragraphs 83-84 of the Complaint) and any agreements that include provisions related to downloading, linking, uploading, accessing, sharing, and/or licensing the customer's cataloging records for use in BTCat or Your other products and services.

**Response:**

**Request for Production 5.** Documents sufficient to show how You share cataloging records with Baker & Taylor for use in BTCat or any of Your products and services.

**Response:**

**Request for Production 6.** Documents sufficient to show how You integrate cataloging records into any of Your products and services.

**Response:**

**Request for Production 7.** All evidence or documents You intend to rely on or use to support Your position that You can lawfully use, display, or make available any WorldCat record in the BTCat service.

**Response:**

**Request for Production 8.** All documents that you rely on to support Your responses to Interrogatories 1 through 3 to the extent not already provided herein.

**Response:**

**Request for Production 9.** All evidence or documents You intend to rely on or use to show any harm that You allege You will suffer if the Court imposes OCLC's proposed injunction.

**Response:**

**Request for Production 10.** All evidence or documents You intend to rely on or use in opposing OCLC's Motion for a Preliminary Injunction to the extent not already provided herein.

**Response:**

# Exhibit 1

# Exhibit 1

**WorldCat Data and Licensing Agreement**


This WorldCat Data and Licensing Agreement (the "Agreement") is effective as of January 1, 2019 (the "Effective Date"), by and between Baker & Taylor, LLC, a Delaware limited liability company, located at 2550 West Tyvola Road, Suite 300, Charlotte, North Carolina 28217, email: amandeep.kochar@baker-taylor.com, ("B&T"), and OCLC, Inc., located at 6565 Kilgour Place, Dublin, OH 43017-3395 and its Affiliates, email: busdev@oclc.org ("OCLC").

**WHEREAS**, B&T and OCLC desire to license a set number of WorldCat records to B&T for use as provided herein.

**NOW THEREFORE**, B&T and OCLC agree as follows:

**I.** **DEFINITIONS:**

    A. "B&T Database" means the database of bibliographic records maintained by B&T.

    B. "Customer" means any and all libraries doing business with B&T, as determined by B&T in the exercise of B&T's sole discretion.

    C. "Credentials" means the authorization number and passwords for B&T employees to access WorldCat.

    D. "Extract", "Extraction", "Extracted" or "Extracting" means the permanent export or download of a WorldCat Record or of a field or part of a WorldCat Record via Connexion, or Z39.50; *provided*, accessing WorldCat to "copy and paste" any field or part of a WorldCat Record that is not being Extracted is strictly prohibited.

    E. "Non-OCLC Customer" means a customer that does not subscribe to OCLC cataloging services.

    F. "WorldCat" means a set of databases and resources comprised of a global network of library data, collections and services.

    G. "WorldCat Record" means a bibliographic record with an OCLC control number from WorldCat (without holdings information).

**II.** **License Grant**

    A. OCLC hereby grants B&T the non-exclusive, non-transferable world-wide right to access WorldCat by means of Connexion and Z39.50 solely for purposes of identifying and Extracting WorldCat Records which B&T may use for any purpose, as determined by B&T in the exercise of its sole discretion, pursuant to this Agreement. The above license grant is limited to the number of WorldCat Records as listed in Schedule 1 attached hereto.

    B. B&T shall use commercially reasonable efforts to limit the use of B&T Credentials to only authorized B&T employees and contractors under written agreement.

B&T shall immediately notify OCLC of a suspected or actual loss, theft or disclosure of any Credentials and of any unauthorized access.  Should OCLC become aware of unauthorized use of B&T's Credentials or unauthorized access to WorldCat, OCLC will notify B&T and may exercise commercially reasonable efforts to prevent such unauthorized use and access including, but not limited to, deactivation of affected credentials.  B&T is responsible for authorizing its employees and contractors with access to WorldCat, assigning privileges, and creating, maintaining, and terminating accounts.

### III. PROPRIETARY RIGHTS

Nothing in this Agreement shall diminish OCLC's rights to WorldCat and WorldCat Records in any way or B&T's rights to the B&T Database.

### IV. PAYMENTS AND FEES

A. For the period beginning January 1, 2019, and ending on December 31, 2020, the fee for the license granted hereby (the "Fee") shall be $45,000; and
B. For the period beginning January 1, 2020, and ending on December 31, 2021, the Fee shall be $45,000.

OCLC reserves the right to increase the above-stated License Fees for each 12-month period of the Term, beginning January 1, 2021, by delivering written notice of such increase to B&T.  Any such increase shall not exceed five percent (5%) of the above-stated Fees for the relevant period.

Within 45 days after the date of invoice, B&T shall pay to OCLC the applicable Fee.  Fees are exclusive of taxes and B&T shall pay any such taxes invoiced from which B&T is not exempt other than taxes on OCLC's net income.  Accounts not paid within 45 days after the date of invoice shall be deemed delinquent and are subject thereafter to interest charges of 12% per annum on the unpaid balance.  OCLC reserves the right to suspend B&T's access to WorldCat if the account remains in delinquent status 60 days or more, provided that the delinquent status is undisputed.   Any termination by OCLC for B&T's failure to pay will not relieve B&T from paying past due Fees plus interest.  In the event of collection enforcement of an undisputed amount due hereunder, B&T will be liable for OCLC's reasonable attorneys' fees, court costs and collection agency fees incurred in such collection enforcement action.  Payments shall be made in United States currency.

### V. TERM AND TERMINATION.

A. The term of this Agreement shall commence on the Effective Date and continue for a period of two (2) years ("Initial Term"). Upon expiration of the Initial Term, this Agreement will automatically renew for successive one-year terms (each a "Renewal Term"), unless either party provides the other party with written notice of its decision not to renew at least 120 days prior to the expiration of the Initial Term.  For purposes of this Agreement, the Initial Term and any Renewal Term are collectively referred to herein as the "Term".

B. After the Initial Term, either party may terminate this Agreement for convenience upon one hundred twenty (120) days prior written notice to the other party. In such an event, this Agreement automatically will terminate on the date set forth in the terminating party's notice except as provided in Section V.E hereof. In the event of OCLC's termination for convenience

pursuant to this Section V.B, B&T shall receive a prorated refund of any annual Fee paid for any unexpired portion of the Initial Term or any Renewal Term, as applicable.

C. In the event of a material breach of this Agreement by the breaching party, the nonbreaching party may terminate this Agreement upon written notice to the breaching party if, within thirty (30) days after receipt of written notice thereof, the breaching party has not cured such breach, or if such breach is not reasonably curable within such period, taken steps reasonably calculated to remedy such breach within a reasonable period of time. In the event of breach by OCLC pursuant to this section, B&T will be entitled to a refund of any pre-paid annual fee.

D. Upon expiration or termination of this Agreement pursuant to B&T's termination for convenience or B&T's material breach, B&T will cease accessing WorldCat for the purpose of Extracting WorldCat Records. B&T may continue to use the records Extracted prior to expiration or prior to the effective date of termination of this Agreement in accordance with the license granted in this Agreement.

E. Upon expiration or termination of this Agreement due to nonrenewal by OCLC or pursuant to OCLC's termination for convenience or OCLC's material breach, B&T may purchase a limited license for the period beginning twelve (12) months following the effective date of such expiration or termination in exchange for payment of an annual follow-on license fee (the "Follow-on License Fee"). Such limited license allows B&T to Extract 50,000 WorldCat Records for the same purpose and in the same manner permitted under this Agreement for the calendar year in which such expiration or termination occurred (the "Follow-on License"). The Follow-on License Fee shall be equal to the annual Fee in effect for the calendar year in which the expiration or termination occurred. Upon the expiration or termination of the Follow-on License, B&T may continue to use the records Extracted prior to such expiration or prior to the effective date of termination thereof in accordance with the license granted in this Agreement.

## VI. WARRANTIES AND INDEMNIFICATION

A. **Warranties**.

1. Each party represents and warrants that it has the right to enter into this Agreement and to grant the rights and licenses granted herein, and that the exercise of such in accordance with the terms and conditions of this Agreement will not infringe upon the rights of any third party.

2. WorldCat Records are provided "AS IS" and in the form present in WorldCat on the date Extracted. OCLC does not warrant the accuracy or completeness of WorldCat Records. OCLC will replace defective copies of WorldCat Records if caused through the fault of OCLC.

3. Except as provided in Sections VI A.1 and A.2 above, OCLC AND ITS AFFILIATES DISCLAIM ALL WARRANTIES OF ANY KIND EXPRESS OR IMPLIED, CONCERNING THE WORLDCAT RECORDS, INCLUDING BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL OCLC OR ITS AFFILIATES HAVE ANY LIABILITY WHATSOEVER FOR, AND B&T HEREBY EXPRESSLY RELEASES OCLC AND ITS AFFILIATES FROM DAMAGES OR LIABILITY OF ANY KIND ARISING FROM CLAIMS, LOSS OR DAMAGE CAUSED BY ERRORS OR OMISSIONS IN THE WORLDCAT RECORDS, WHETHER SUCH ERRORS OR OMISSIONS RESULT FROM NEGLIGENCE, ACCIDENT, OR ANY OTHER CAUSE, REGARDLESS OF WHETHER OR NOT OCLC HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

B. **Indemnification**. Each party hereby agrees to indemnify, defend and hold the other harmless from any loss, liability, costs or damages arising from actual claims or causes of action

resulting from a third party action brought against the indemnified party, their officers, directors, employees, agents, affiliates and pay any final judgment awarded such third party in such action, to the extent such action or judgment is based on or arises from the obligations or rights under this Agreement, *provided* upon the conditions that: (i) the indemnified party promptly delivers to the indemnifying party written notice of any such claim; and (ii) the indemnified party gives the indemnifying party all information and assistance reasonably requested, together with primary authority to investigate, settle, and defend such claim. The indemnified party may obtain legal counsel, at its own expense, to participate in such defense provided doing so does not diminish the indemnifying party's authority to conduct such defense.

    C.    **Limitation of Liability**. THE AGGREGATE LIABILITY OF EITHER PARTY FOR ALL CLAIMS PURSUANT TO OR ARISING OUT OF THIS AGREEMENT SHALL BE LIMITED TO THE LESSER OF (1) THE ACTUAL DAMAGES INCURRED BY LICENSEE AND (2) ANY PREPAID FEE. NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, LOST PROFITS OR LOST DATA) ARISING OUT OF THIS AGREEMENT, EVEN IF SUCH DAMAGES ARE FORESEEABLE OR SUCH PARTY HAS BEEN ADVISED OR HAS CONSTRUCTIVE KNOWLEDGE OF THE POSSIBILITY OF SUCH DAMAGES. THE FOREGOING LIMITATIONS OF LIABILITY EXCLUDE THE INDEMNIFICATION OBLIGATIONS OF THE PARTIES CONTAINED HEREIN.

## VII.    CONFIDENTIAL INFORMATION.

Each party agrees to treat as confidential the terms and conditions of this Agreement and any negotiations, information or agreements furnished in writing and designated as confidential by the other party or that a reasonable person ought to know is confidential ("Disclosed Information"), and to use internally with the same degree of care it uses in maintaining its own confidential and trade secret information of similar kind and nature, but in any event no less than reasonable care. Each party agrees that it will not use any Disclosed Information of the other for any purpose other than assistance to the other under and for its own internal purposes in the performance of this Agreement. The parties' obligations under this Section shall not extend to Disclosed Information which (a) is publicly available without violation of this Agreement; (b) can be shown to have been known by it prior to the time of disclosure; (c) is received from a third party without breach of duty to the disclosing party; d) is disclosed by the disclosing party to any third party without restriction on further disclosure; (e) is independently developed by recipient personnel without reliance on the disclosing party's Disclosed Information, or (f) is required to be disclosed by law or governmental authority. The Parties' obligations under this Section shall continue after termination until such Confidential Information is no longer confidential.

## VIII.    GENERAL PROVISIONS

A. **Entire Agreement**. This Agreement (including its Schedule or Schedules) is the final, complete and exclusive statement of the Parties' agreement with respect to the subject matter thereof. This Agreement may be signed in separate counterparts, each of which shall constitute an original and all of which when taken together shall constitute one agreement.

B. **Survival.**  All rights and obligations shall cease upon termination or expiration of this Agreement, except that any Sections that by their nature survive termination or expiration, shall survive.

C.  **Severability**. If any provisions of this Agreement shall be found by any court of competent jurisdiction to be invalid or unenforceable, the invalidity or unenforceability of a provision will not affect any other provision of this Agreement.

D.  **Notice**. Except as stated elsewhere in the Agreement all notices shall be in writing and shall be deemed sufficient if (i) received by a party via e-mail to the e-mail address set forth in the introductory paragraph, (ii) delivered by hand, or (iii) sent by certified or registered mail, return receipt requested, or international carrier to the address for such party set forth in the introductory paragraph, or to such other address as has been furnished by means of a notice given in accordance with this Section.

E.  **Non-Waiver**. A failure or delay in enforcing an obligation under this Agreement does not prevent enforcement of the provision at a later date. A waiver of a breach of one obligation does not amount to a waiver of any other obligation, and it will not prevent a party from subsequently requiring compliance with that obligation.

F.  **Injunction**. B&T agrees that if any unauthorized transfer, disclosure, display, copy or use of a OCLC's intellectual property addressed in this Agreement is made, OCLC will have the right to seek an injunction in addition to any other rights and remedies to which it may be entitled.

G.  **Export Laws**. The services under this Agreement may be used only in full compliance with U.S. export regulations. OCLC's obligations hereunder are contingent upon necessary export licenses being obtained from federal agencies of the U.S.

H.  **Governing Law**. The laws of the State of Ohio and the United States of America without regard to any conflict of law principles, govern this Agreement.

I.  **Assignment**. Except as provided for in this Agreement, a Party shall not assign or otherwise transfer (voluntarily, by operation of law or otherwise) this Agreement or any right, interest or benefit under this Agreement, including pursuant to a merger or a transfer of a majority of its assets, without the prior written consent of the other Party which shall not be unreasonably withheld. Any attempted assignment, sublicense or transfer in derogation hereof shall be null and void.

J.  **Press Release**. No Party shall issue public statements, press releases or promotional materials regarding this Agreement, without obtaining the other Party's prior written approval of the content of such.

K.  **Independent Contractors**. The relationship of the Parties is that of independent contractors, and no agency, employment, partnership, joint venture, or any other relationship is created by this Agreement.

L.  **Force Majeure**. Neither party shall be responsible for losses or damages to the other occasioned by delays in the performance or the non-performance of any of said party's obligations (other than the obligation to make payments when due) when caused by acts of God, acts of the other party or any other cause beyond the control of said party and without its fault or negligence.

M.  **Applicable Law**. In the performance of this Agreement, each of the Parties warrants to the others that it shall comply with all applicable federal, state and local laws and regulations thereunder.

**N. Rights.** Nothing in this Agreement shall require OCLC to provide access to or otherwise supply any record or other material for which it lacks the rights necessary to do so. In the event OCLC determines that it does not have the right or is otherwise not able to provide B&T with access to and/or use of any record from WorldCat, OCLC will provide B&T with written notice identifying the relevant record(s) or record supplier and B&T agrees not to access or extract such record(s) from WorldCat.

**O. Report.** Upon written request by OCLC, B&T shall provide OCLC with a written report identifying all WorldCat Records Extracted by B&T pursuant to this Agreement and an authorized representative of B&T shall certify the accuracy of such report.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their authorized representatives.

BAKER & TAYLOR, LLC                     OCLC, INC.

By: *Amandeep S. Kochar*                By: *William Nilges*
Amandeep S. Kochar                      William Nilges
Executive Vice Pressident               Vice President

Date: 5th November 2019                 Date: November 5, 2019

<h1>Schedule 1</h1>

A. **WorldCat access Grant.** B&T shall access WorldCat via Connexion and z39.50 as provided in this Agreement.

B. **Term for WorldCat Record Licensing:**
   - **Year 1**: **January** 1, 2019 – December 31, 2020
   - **Year 2: January** 1, 2020 – December 31, 2021

C. **Contributing records to WorldCat:** B&T shall have the right, but not the obligation to send all B&T enhanced Extracted WorldCat Records back to OCLC to be loaded in WorldCat as long as the records meet OCLC's quality standards.

D. **Number of WorldCat Records to be Extracted and Use of OCLC Log-In Credentials for Applicable OCLC Cataloguing Customers.**

   a. Number of WorldCat records licensed per year to B&T which B&T may Extract and use as provided in this Agreement: 50,000 records (a total of 100,000 WorldCat records licensed in the Initial Term). Notwithstanding the foregoing, if during the first year of this Agreement, B&T has not Extracted 50,000 records, the balance of those records will be available to be Extracted during the second year. In such case, B&T shall provide OCLC with a written report identifying all WorldCat Records Extracted by B&T pursuant to this Agreement in the first year and an authorized representative of B&T shall certify the accuracy of such report.

   b. For the avoidance of doubt, for OCLC cataloging customers, B&T shall use the OCLC log-in credentials for the applicable customer to retrieve WorldCat records. B&T will update the records to comply with the customer's cataloging requirements then submit them back to the applicable customer. B&T shall not use these records for any other customer or for any other purpose. These records will not count against the total of records licensed.