# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| OCLC, INC., | CASE NO. 2:25-CV-309 |
| PLAINTIFF, | JUDGE: EDMUND A. SARGUS |
| V. | MAGISTRATE: ELIZABETH PRESTON DEAVERS |
| BAKER & TAYLOR, LLC, *ET AL.,* | |
| DEFENDANTS. | |

---

## DEFENDANT BRIDGEALL LIBRARIES LTD.'S MOTION TO DISMISS

---

Defendant Bridgeall Libraries Ltd. ("***Bridgeall***") moves this Court to dismiss Plaintiff OCLC, Inc.'s ("***OCLC***" or "***Plaintiff***") Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6). The reasons for this motion are more fully set forth in the accompanying Memorandum in Support and the Declaration of Steven Legowski, Bridgeall's Vice President of Technology and Software Service, which are attached hereto and hereby incorporated by reference.

Respectfully submitted,

/s/ Derek P. Hartman
Derek P. Hartman (0087869), Trial Attorney
Michael C. Cohan (0013542)
CAVITCH FAMILO & DURKIN CO., L.P.A.
1300 East Ninth Street, Twentieth Floor
Cleveland, Ohio 44114
Telephone:    (216) 621-7860
Facsimile:    (216) 621-3415
Email:    mcohan@cavitch.com
          dhartman@cavitch.com

*Attorneys for Defendant Bridgeall Libraries Ltd.*

/s/ Frank E. Noyes, II (admitted pro hac vice)
Frank E. Noyes, II (PA Bar No. 48366)
Nafiz Cekirge (CA Bar No. 255710)
OFFIT KURMAN, P.A.
222 Delaware Avenue, Suite 1105
Wilmington, Delaware 19801
Telephone:    302-351-0900
Facsimile:    302-351-0915
Email:    fnoyes@offitkurman.com
          nafiz.cekirge@offitkurman.com

*Attorneys for Defendant Bridgeall Libraries Ltd.*

## MEMORANDUM OF LAW

### I.    INTRODUCTION

In furtherance of OCLC's unrelenting crusade against fair competition, OCLC made the strategic decision to include Bridgeall – a foreign analytics company from Glasgow, Scottland – as a party in this lawsuit. Bridgeall does not belong in this lawsuit. Indeed, OCLC references Bridgeall a mere three (3) times in the entire 154-paragraph Complaint:[1]

> 12.    This led OCLC to investigate Baker & Taylor's relationships with OCLC's customer libraries to protect WorldCat and OCLC's goodwill amongst its customers. OCLC found publicly available contracts for Baker & Taylor's non-cataloging services, including services provided by Bridgeall, that contained a provision requiring libraries to authorize Baker & Taylor to access the library's catalog and license all catalog records to Baker & Taylor for use in BTCat (or any other Baker & Taylor product or service). In exchange, libraries can access BTCat for free.

> 21.    Bridgeall Libraries Limited, a subsidiary of Baker & Taylor, LLC, is a Scotland private limited company with its principal place of business in Glasgow, Scotland.

> 82.    At least as early as May 2022, Defendants began to include new contractual provisions in the service contract for collectionHQ, a tool that helps libraries manage their collections. collectionHQ is owned by Baker & Taylor's subsidiary, Bridgeall.

*See* Compl. ¶¶ 12, 21, 82, ECF No. 1 at PageID 3, 5, 14.

---

[1] In its Complaint, OCLC uses the defined term "Defendants" to define Baker & Taylor, LLC ("***Baker & Taylor***") and Bridgeall, collectively. Upon closer review, the allegations directed at the "Defendants" are allegations that can only be asserted against Baker & Taylor, not Baker & Taylor & Bridgeall, collectively.

Even if taken at face value, OCLC fails to allege facts sufficient to state plausible claims against Bridgeall for: (1) tortious interference with contractual relationships (Count One); (2) tortious interference with prospective business relationships (Count Two); and (3) unjust enrichment (Count Four). As such, the Court should dismiss these claims pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6).

## II.    THE RELEVANT ALLEGATIONS

In the interest of brevity and to avoid repetition, Bridgeall incorporates "Section II: The Relevant Allegations" from Baker & Taylor's Motion to Dismiss, filed contemporaneously with this motion, as if fully set forth herein.

### A.    BRIDGEALL IS AN ANALYTICS COMPANY FROM SCOTLAND WITH DE-MINIMIS CONTACTS WITH THE STATE OF OHIO.

Bridgeall is a private limited company specializing in business and domestic software development. (*Steven Legowski Decl.* ¶ 8, attached hereto as **Exhibit "1"**.) It is incorporated under the laws of Scotland and has its principal place of business in Glasgow, Scotland. (*Id.*) Bridgeall is renowned for its flagship product, collectionHQ, a data-driven collection management solution designed to assist libraries in optimizing their collections through evidence-based methodologies. (*Id.* at ¶ 9.)

Bridgeall currently has forty (40) employees, all based out of the United Kingdom, with thirty-nine (39) based in Scotland and one (1) based in Manchester, England. (*Id.* at ¶ 10.) Around seventy-five percent (75%) of Bridgeall's employees are technical staff, but all employees service Bridgeall's various products in different ways. (*Id.*) Bridgeall does not own servers or other similar physical assets. (*Id.* at ¶ 11.) To ensure that its products run smoothly around the world, Bridgeall uses AWS (Amazon Web Services) Cloud Based Infrastructure. (*Id.*) For customers based in the United States, Bridgeall uses AWS Cloud Infrastructure in Northern Virginia. (*Id.* at ¶ 12.)

Bridgeall does not contract with any vendors or third-party servicers in Ohio. (*Id*. at ¶ 13.) Bridgeall employees service, maintain, operate, and improve Bridgeall's products directly from Glasgow. (*See id*.)

Founded in Glasgow in 2008, collectionHQ introduced the Evidence Based Stock Management (EBSM) methodology to the public library sector, enabling librarians to make informed decisions about their collections. (*Id*. at ¶ 15.) The platform integrates with any Integrated Library System ("***ILS***") and offers tools for selection, management, promotion, and evaluation of library materials. (*Id*.) CollectionHQ provides libraries with valuable analytics, such as reports on which materials are being "checked-out", and which materials are collecting dust on the shelf. (*Id*. at ¶ 16.) CollectionHQ also makes strategic recommendations and assists libraries with executing on collectionHQ's strategic recommendations. (*Id*. at ¶ 17.) There are currently over five hundred (500) collectionHQ customers around the world. (*Id*. at ¶ 24.) Of these five hundred plus (500+) customers, only nineteen (19) are library systems based in Ohio. (*Id*.)

To promote collectionHQ, the company utilizes general marketing campaigns through its website, LinkedIn, webinars, and email communications. (*Id*. at ¶ 22.) These communications are not meant to target a community or location directly. (*Id*.) They are general informational communications that are sent globally. (*Id*.) In fact, collectionHQ is generally available worldwide. (*Id*. at ¶ 23.) There is no specific market or region that collectionHQ targets. (*Id*.)

When customer libraries purchase a subscription for collectionHQ, they sign subscription agreements. (*Id*. at ¶ 14.) While the current provisions may vary, a copy of a collectionHQ subscription agreement between Baker & Taylor and San Rafael Public Library dated April 13, 2022 was attached to OCLC's Complaint as Exhibit "D". Importantly, a Baker & Taylor employee in the United States issues a new subscription agreement to the customer for the collectionHQ

product. (*Steven Legowski Decl.* ¶ 14.) The subscription agreement includes an option for the customer library to gain access to BTCat, Baker & Taylor's bibliographic database. (*Id*. at ¶ 27.) When libraries opt in, they license their MARC records to Baker & Taylor. (*Id*.) When signing, the library represents that it has the authority to license these records. (*Id*.)

Once the subscription is purchased, the customer library gains access to collection HQ through their preferred web browser. (*Id*. at ¶ 18.) The customer libraries do not have to download anything onto their systems. (*Id*.) A customer library is then able to initiate a transfer of its MARC data feed to collectionHQ. (*Id*. at ¶ 19.) This transfer of data allows collectionHQ to determine the materials in that library's collection. (*Id*.) collectionHQ then uses the information provided by the library, as well as information from public sources, to analyze a library's circulation patterns and provide recommendations on how to manage the collection. (*Id*. at ¶ 20.) CollectionHQ does not display or share the MARC data feed provided by the customer with any other customer. (*Id*. at ¶ 21.)

When customer libraries set up their subscription or require assistance later on, they engage customer success managers. (*Id.* at ¶ 25.) These customer success managers are Baker & Taylor employees. (*Id*.) The Baker & Taylor customer success managers are based in Michigan, Pennsylvania, Florida, and California. (*Id*. at ¶ 26.) Based upon the foregoing, Bridgeall's contacts with Ohio are de-minimis, at best.

## III. LAW AND ARGUMENT.

### A. BRIDGEALL IS NOT SUBJECT TO PERSONAL JURISDICTION IN THIS COURT.

#### 1. Standard of Review Under Fed. Civ. R. 12(b)(2).

When jurisdiction is challenged under Fed. R. Civ. P. 12(b)(2), the "plaintiff bears the burden of establishing the existence of jurisdiction." *Air Prods. & Controls, Inc. v. Safetech Int'l,*

*Inc.*, 503 F.3d 544, 549 (6th Cir. 2007 (*citing Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). At the pleading stage, the burden is on the plaintiff to "make at least a prima facie showing of jurisdiction." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 502 (6th Cir. 2020.

"Under Ohio law, personal jurisdiction over non-resident defendants is only available if: (1) the long-arm statute confers jurisdiction; and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012.  But, when jurisdiction is improper under the Due Process Clause, an analysis into the state's long-arm statute is unnecessary. *Id.* at 711–12. Therefore, the Court's exercise of personal jurisdiction is subject to the Fourteenth Amendment's Due Process Clause. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 261 (2017 (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011). Under this due process framework, federal courts recognize two types of personal jurisdiction: "general" personal jurisdiction and "specific" personal jurisdiction. *Bristol-Myers*, 582 U.S. at 262.

General personal jurisdiction is jurisdiction that is "independent of whether the cause of action arises out of the defendant's contacts with the forum state." *Baker v. Bensalz Prods.*, 480 F.Supp.3d 792, 801 (S.D. Ohio 2020 (*citing Third Nat'l Bank in Nashville v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). This exists when an entity's contacts "are so continuous and systematic as to render [a foreign defendant] essentially at home in the forum State." *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012 (*quoting Goodyear*, 564 U.S. at 919). OCLC does not allege that Bridgeall is subject to general personal jurisdiction in Ohio.

Specific personal jurisdiction, on the other hand, "arises out of a defendant's contacts with the forum state." *Baker*, 480 F.Supp.3d at 801. In the Sixth Circuit, a three part test exists to

determine the existence of specific personal jurisdiction: 1) the defendant must purposely avail itself of the privilege of acting in the forum state or causing a consequence in the forum state; 2) the cause of action must arise from the defendant's activities there; and 3) the acts of the defendant must have had a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 794 (6th Cir. 1996. As explained below, these elements are not present as to Bridgeall.

When personal jurisdiction is challenged at the pleading stage, factual support outside the complaint may be provided in support of a motion to dismiss. *See Stewart Coach Industries, Inc. v. Moore*, 512 F.Supp. 879, 883 (S.D. Ohio 1981 ("[W]here a motion to dismiss for [] lack of personal jurisdiction is filed, pursuant to F.R.C.P. 12(b)(2), [] and said motion is supported by affidavit, it is well settled that the non-moving party [] may not rest upon allegations or denials in his pleadings, but his response by affidavit or otherwise must set forth specific facts showing that the court has jurisdiction.'") (internal citations omitted).

### a.  The Court Lacks General Personal Jurisdiction over Bridgeall because Bridgeall is not at Home in Ohio.

As stated above, general personal jurisdiction exists when a corporation or business entity is "at home" in the forum state. *Schneider*, 669 F.3d at 701. The Supreme Court has found that a corporation is at home in the forum state if the state is its principal place of business or its formal place of incorporation. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014. While "exceptional" cases may allow a court to exercise general personal jurisdiction outside of a defendant's state of incorporation or principal place of business, this may only occur when a defendant's activities in the state are so substantial to render it at home in the forum state. *Id.* at n.19.

OCLC has failed to make a prima facia showing of general personal jurisdiction. OCLC alleges—and admits— that Bridgeall is a "Scotland private limited company with its principal

place of business in Glasgow, Scotland." (Compl. ¶ 21, ECF No. 1 at PageID 5.) Plaintiff has

made no other allegations that Bridgeall is "at home" in Ohio, nor has it alleged that there are any

exceptional circumstances that would allow the Court to expand general personal jurisdiction. In

fact, Bridgeall is only mentioned three (3) times in the 154 numbered paragraphs of the Complaint,

and none of these allegations pertain to any alleged fact that would permit the exercise of general

personal jurisdiction.[2] Even if Bridgeall were to have operations in Ohio, in-state business on its

own "does not suffice to permit the assertion of general jurisdiction," if it does not rise to the level

of systematic and continuous contacts. *BNSF Ry. v. Tyrrell*, 581 U.S. 402, 414 (2017 (finding that

a defendant was not at home in the forum state despite having 2,000 miles of railroad track and

more than 2,000 employees in the state). As such, because OCLC has not met its initial burden,

the Court does not have general personal jurisdiction over Bridgeall.

> **b.    The Court Lacks Specific Personal Jurisdiction over Bridgeall because Bridgeall's Contacts in Ohio are not "Continuous or Systematic."**

Specific personal jurisdiction is narrower than general personal jurisdiction because the

claims asserted must arise from or be related to Bridgeall's contacts with Ohio. *Intera Corp. v.

Henderson*, 428 F.3d 605, 615 (6th Cir. 2005 (*citing Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106

F.3d 147, 149 (6th Cir. 1997). The Sixth Circuit has adopted a three-prong test that requires a court

to find: 1) the defendant must purposely avail itself of the privilege of acting in the forum state or

causing a consequence in the forum state; 2) the cause of action must arise from the defendant's

activities there; and 3) the acts of the defendant must have had a substantial enough connection

with the forum state to make the exercise of jurisdiction reasonable. *Nationwide Mut. Ins. Co. v.

---

[2] Bridgeall is referred to, collectively, with Baker & Taylor in the defined term "Defendants." But none of those allegations address whether Bridgeall is at home in Ohio

*Tryg Int'l Ins. Co.*, 91 F.3d 790, 794 (6th Cir. 1996). OCLC has not plead facts sufficient to establish specific personal jurisdiction over Bridgeall.

**i.**      **Bridgeall has not Purposefully Availed Itself of Jurisdiction in this Court.**

In the Sixth Circuit, the "purposeful availment requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum state, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being hauled into court there." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985) (internal quotation marks omitted). By limiting specific personal jurisdiction in this way, a court ensures that "a defendant will not be hauled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp.*, 471 U.S. at 475).

The Sixth Circuit has found that "something more than passive availment" is required; the actions of the defendant must be "akin to a deliberate undertaking to do or cause an act or thing to be done in" Ohio. *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 478 (6th Cir. 2003 (*quoting Neogen Corp. v. Neo Gen Screening, Inc*, 282 F.3d 883, 891 (6th Cir. 2002). In *Bridgeport*, the Court adopted the commerce "plus" approach to purposeful availment. *Bridgeport*, 327 F.3d at 480. Under this approach, "the placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 479 (*quoting Asahi Metal Industry Company, Ltd. v. Superior Court*, 580 U.S. 102, 112 (1987 (O'Connor, J.) (plurality op.)).

In its Complaint, Plaintiff has not alleged that Bridgeall has taken deliberate action to do or cause things to be done in Ohio that would create a substantial connection to the state. Plaintiff's

9

allegations are conclusory and void of factual support. For example, in paragraph 23, Plaintiff merely recites Ohio's long-arm statute without providing any factual support. Without saying more, Plaintiff cannot show that Bridgeall has purposefully availed itself to Ohio. Indeed, Bridgeall has not purposefully availed itself to this forum because, *inter alia*:

- Bridgeall's principal place of business is in Glasgow, not Ohio;

- Bridgeall's 40 employees are all based in the United Kingdom, not Ohio;

- Bridgeall does not own any physical assets, like servers, in Ohio;

- Bridgeall does not contract with any vendors or third-party servicers in Ohio; and

- Bridgeall does not specifically target Ohio or Ohio-based customers in its marketing of its products.

(*See Legowski Decl.* ¶¶ 8, 10, 11, 13, 22–23.) The placement of its collectionHQ product into the stream of commerce is merely "passive availment." *See Asahi*, 580 U.S. at 112. None of Bridgeall's attenuated contacts in Ohio would provide a reasonable anticipation of being hauled into court here. Therefore, Bridgeall has not purposefully availed itself of the forum state.

      ii.    **OCLC's Claims do not Arise from Bridgeall's Activities in Ohio.**

The second prong of the specific personal jurisdiction test requires that the plaintiff's cause of action arise from the defendant's conduct in the forum state. In other words, the cause of action must still have a "substantial connection with the defendant's in-state activities." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002 (*quoting Third Nat'l Bank*, 882 F.2d at 1091). The operative facts of the controversy must be directly tied to the defendant's contacts, and these contacts must "form the *heart* of the cause of action." *Intera Corp. v. Henderson*, 428 F.3d 605, 617–18 (6th Cir. 2005 (emphasis added) (internal quotation marks omitted).

As stated above, OCLC fails to make any specific allegations as to Bridgeall's conduct in Ohio, choosing to only group it with allegations made against Baker & Taylor. Plaintiff merely mentions Bridgeall a few times, without alleging that it has done anything in Ohio that connects it to the tortious interference and unjust enrichment claims. As such, Plaintiff has failed to meet its burden of establishing personal jurisdiction.

It is impossible for the causes of action to arise out of Bridgeall's conduct in Ohio. As described in the declaration of Steven Legowski, collectionHQ is a service that provides libraries with circulation analytics on the books in its collection based on the records the library uploads to collectionHQ. (*See Legowski Decl.* ¶¶ 15–20.) This service provides libraries with data to help it decide which books to purchase or discard. (*See id.*) The "heart" of OCLC's Complaint hinges on the allegations that Baker & Taylor misappropriated OCLC's WorldCat records through its collectionHQ service.[3] (Compl. ¶¶ 133, 138, 139, 151, ECF No. 1 at PageID 24–25, 27.) But the Complaint fails to allege that Bridgeall gained access to WorldCat records through any Ohio-based collectionHQ customer.

Further, Bridgeall does not directly interact with any of the customer libraries. When a customer library signs up for a collectionHQ subscription, it signs a contract provided to them by a Baker & Taylor salesperson, not a Bridgeall employee. (*Id.* at ¶ 14.) Once their collectionHQ subscription begins, all interactions are conducted through Baker & Taylor's customer success managers. (*Id.* at ¶ 25.) As such, Bridgeall's actions in Ohio do not form a basis for either tortious interference claim because Bridgeall has not induced any customer library to breach its relationship with OCLC, and no OCLC records are involved in these actions. Even accepting the sparse allegations about Bridgeall as true, which Bridgeall does not concede, Ohio is not the proper forum

---

[3] Curiously, Plaintiff has failed to define what "WorldCat records" are. None of the documents attached to the Complaint, nor the Complaint itself, define what these are.

to pursue these claims because none of the wrongdoing has occurred in Ohio. Accordingly, OCLC's claims do not arise under Bridgeall's conduct in or contacts with Ohio.

### iii. The Exercise of Specific Personal Jurisdiction over Bridgeall would be Unreasonable.

The third requirement for finding specific personal jurisdiction tests whether the exercise of specific personal jurisdiction over the defendant would be reasonable. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 794 (6th Cir. 1996. The Sixth Circuit has outlined three factors for reasonableness: "(1) the burden on the defendant; (2) the forum state's interest; and (3) the plaintiff's interest in obtaining relief." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 904 (6th Cir. 2017). But, when the plaintiff fails to meet the first two prongs—"either of which is dispositive—the Court need not dwell on the third." *Baker*, 480 F.Supp.3d at 807 (*citing LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1303 (6th Cir. 1989).

OCLC has failed to allege any facts establishing that Bridgeall purposefully availed itself of Ohio's laws and that the purported causes of action are connected to Bridgeall's conduct in Ohio. Consequently, it is clear that the "traditional notions of fair play and substantial justice" would be offended by litigating this case in Ohio. *Sullivan v. LG Chem., Ltd.*, 79 F.4th 651, 674 (6th Cir. 2023).

Even if the Court finds that the first two prongs of the specific personal jurisdiction test are met, the burden of exercising specific personal jurisdiction over Bridgeall in this case creates an unreasonable burden on Bridgeall. In *Baker*, this Court found that the exercise of specific personal jurisdiction was unreasonable for out-of-state defendants. *Baker*, 480 F.Supp.3d at 807. The Court held that the defendants, being out-of-state entities, would have a high burden of litigating the case in Ohio. *Id.* Further, although the plaintiff was an Ohio resident, the case did not involve "novel questions of Ohio law or important recurring issues within the state." *Id.* The Supreme Court has

held that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight" in this analysis. *Asahi Metals*, 480 U.S. at 114.

Bridgeall is a Scottish entity with its principal place of business in Glasgow, Scotland. (*See Legowski Decl.* ¶ 8.) The burden of litigating this case to the end would prove substantially burdensome because Ohio is a "foreign legal system" to Bridgeall. Bridgeall does not have any connection in Ohio: There are no employees, servers, or places of business. (*See Legowski Decl.* ¶¶ 10–13.) The need for potential Bridgeall witnesses would create a distinct hardship on Bridgeall. Forcing a Scottish company to incur serious expenses to litigate a case in which it is sparsely mentioned would be unreasonable. Moreover, although OCLC may be an Ohio entity—and of course would have an interest in litigating the claim in Ohio—none of the causes of actions raise novel issues of Ohio law. The claims are founded in tort and contract law, and do not include any nuances or unique provisions of Ohio law. Therefore, because Bridgeall has not availed itself of the forum state, because the causes of action do not arise out of Bridgeall's conduct in Ohio, and because the exercise of specific personal jurisdiction would be unreasonable, this Court does not have personal jurisdiction over Bridgeall.

### B. OCLC HAS FAILED TO STATE A CLAIM AGAINST BRIDGEALL.

In the interest of brevity and to avoid repetition, Bridgeall incorporates Section III from Baker & Taylor's Motion to Dismiss, filed contemporaneously with this motion, as if fully set forth herein, substituting Bridgeall for Baker & Taylor where appropriate.

A key distinction, however, is that OCLC misconstrues Bridgeall's role in the dispute and conflates its involvement by including it in allegations that do not pertain to it. In its Complaint, OCLC contends that Defendants inserted a provision in its contracts for a service unrelated to cataloging called collectionHQ that "require[d] collectionHQ subscribers to authorize Baker &

Taylor to access the subscriber library's catalog and to license all catalog records to Baker & Taylor for use in BTCat, which collectionHQ customers [could] then use for free." (Compl. ¶ 83, ECF No. 1 at PageID 14–15.) OCLC further alleges that because "most collectionHQ subscriber libraries . . . are also OCLC customers and current and former WorldCat customers," Defendants were able to "access WorldCat records and data in these catalogs and incorporate them into BTCat." (Compl. ¶ 96, ECF No. 1 at PageID 17.)   OCLC maintains that this "contractual backdoor" that Defendants devised "to obtain WorldCat records" tortiously interfered with its contracts with collectionHQ subscribers as well as its prospective business relationships. (Compl. ¶ 14, ECF No. 1 at PageID 3.)

These claims, however, fall flat. The sample agreement attached to the Complaint as Exhibit D shows that Baker & Taylor and the library customers are the only signatories to the subscription agreements. OCLC has failed to properly allege that Bridgeall is a party to the collectionHQ agreements that allegedly create this "back door" to WorldCat records. Further, OCLC has failed to allege that Bridgeall has been enriched by the alleged access to WorldCat records. Bridgeall does not display or share any records uploaded by its customer libraries within the collectionHQ system. (*See Legowski Decl.* ¶ 22.) The records uploaded by the customer library are used only for the benefit of that specific customer. Since Bridgeall has no direct connection to OCLC, there simply is no opportunity for Bridgeall to do anything with these WorldCat records that would benefit it. The allegations that are inexplicably tied to Bridgeall have no correlation to Bridgeall's activities through collectionHQ, and therefore, OCLC has failed to plausibly state a claim that connects Bridgeall to the alleged misconduct, its claims must be dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

IV.    **CONCLUSION**

The Court should dismiss the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

First, the Court lacks personal jurisdiction over Bridgeall. OCLC has failed to make even a prima facie showing of general jurisdiction because Bridgeall is not "at home" in Ohio. Nor has OCLC plausibly alleged specific jurisdiction. Bridgeall's limited contacts with Ohio are neither continuous nor systematic, and exercising jurisdiction here would offend traditional notions of fair play and substantial justice.

Second, OCLC's claims against Bridgeall should be dismissed for failure to state claims for which relief can be granted.  Specifically:

- The tortious interference with contract claim fails because:

  o   The WorldCat Policy is not a contract, and even if it were, it does not prohibit the conduct OCLC complains of—namely, Baker & Taylor's access to library catalogs voluntarily shared by CollectionHQ subscribers (critically, OCLC concedes it does not own the records at issue); and

  o   There is no inducement because the contract language cited by OCLC does not require a library to do anything, and when the written instrument contradicts the allegations in the Complaint, the written instrument prevails;

- The tortious interference with prospective business relationships claim fails because OCLC identifies no actual prospective customers or relationships—just vague allegations and speculation; and

- The unjust enrichment claim fails because Bridgeall cannot have been unjustly enriched by records OCLC admits it does not own.

Respectfully submitted,

/s/ Derek P. Hartman
Derek P. Hartman (0087869), Trial Attorney
Michael C. Cohan (0013542)
CAVITCH FAMILO & DURKIN CO., L.P.A.
1300 East Ninth Street, Twentieth Floor
Cleveland, Ohio 44114
Telephone:     (216) 621-7860
Facsimile:     (216) 621-3415
Email:         mcohan@cavitch.com
               dhartman@cavitch.com

*Attorneys for Defendant Bridgeall Libraries Ltd.*

/s/ Frank E. Noyes, II (admitted pro hac vice)
Frank E. Noyes, II (PA Bar No. 48366)
Nafiz Cekirge (CA Bar No. 255710)
OFFIT KURMAN, P.A.
222 Delaware Avenue, Suite 1105
Wilmington, Delaware 19801
Telephone:     302-351-0900
Facsimile:     302-351-0915
Email:         fnoyes@offitkurman.com
               nafiz.cekirge@offitkurman.com

*Attorneys for Defendant Bridgeall Libraries Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

On May 27, 2025, this document was filed electronically with the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties.

*/s/ Derek P. Hartman*
Derek P. Hartman (0087869)
*One of the Attorneys for Defendant Bridgeall*
*Libraries Ltd.*
