IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

OCLC, INC.,

      Plaintiff,

           Case No. 2:25-cv-0309
           Judge Edmund A. Sargus, Jr.
     v.          Magistrate Judge Elizabeth P. Deavers

BAKER & TAYLOR, LLC, *et al.*,

      Defendants.

## ORDER AND MEMORANDUM DECISION

This matter is before the Court on the parties' discovery dispute regarding Plaintiff's Request for Production Nos. 3–6.  The parties submitted letter briefing to the Court via e-mail, attached hereto.  Defendant Baker & Taylor, LLC ("B&T") argues that these discovery requests are not relevant based on its interpretation of several of Plaintiff's contracts and its issue with how Plaintiff defined a term in its requests.  (Defendant B&T's Position Statement.)  Defendant B&T also makes a conclusory argument that the discovery requests are unduly burdensome.  (*Id.*)  The Court finds that Plaintiff has clearly established the relevance of Request for Production Nos. 3–6.  (*See* Plaintiff's Position Statement.)  As Plaintiff notes, Defendant's objection is not based on relevance—it is "improperly injecting the merits into this discovery dispute."  (Plaintiff's Reply.)  Defendant B&T's "relevance" objection does not address the relevance of Plaintiff's requests, and it provides no evidence that the requests are unduly burdensome.  Having thoroughly reviewed the parties' letter briefing and appropriate case law, the Court **GRANTS** Plaintiff's request and **ORDERS** Defendant B&T to promptly respond to Request for Production Nos. 3–6.

**IT IS SO ORDERED.**

Date:  June 2, 2025  /s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE

*OCLC, Inc. v. Baker & Taylor, LLC*, No. 2:25-cv-309
**Plaintiff OCLC, Inc.'s Position Statement re "OCLC WorldCat Customers"**

Plaintiff OCLC, Inc. ("OCLC") submits this summary of the discovery dispute before the Court related to OCLC's First Set of Interrogatories and Requests for Production to Defendant Baker & Taylor, LLC ("B&T") (the "Requests"). OCLC seeks certain documents related to "OCLC WorldCat Customers," which it defined in its Requests by providing a list of WorldCat customers. This is unsurprising, as this case is primarily about B&T wrongfully inducing OCLC's WorldCat customers to upload their WorldCat records into B&T's competing service, BTCat, and then using those wrongfully obtained records to offer BTCat at a significantly reduced price. B&T resists discovery, arguing that OCLC's WorldCat customer list is "untethered and irrelevant to the allegations, and defenses in this case" because the exact phrase "OCLC WorldCat Customer" does not appear in the Complaint or the underlying contractual agreements between OCLC and its WorldCat customers, the same agreements with which B&T has tortiously interfered. According to B&T, searching based on the names in this list "in the first instance is inherently burdensome." B&T's strangled view of relevance is wrong; OCLC is plainly seeking documents relevant to its claims.

Because B&T objects to relevance, OCLC briefly summarizes its claims. OCLC has invested hundreds of millions of dollars to develop WorldCat, the industry-leading bibliographic record database used by thousands of libraries. OCLC alleges that instead of creating a competing database from scratch, Defendants B&T and Bridgeall Libraries Limited ("Bridgeall") populated BTCat, their competing database, with wrongfully obtained WorldCat records. Among other things, Defendants inserted provisions into their service contracts that require signatories to give access to and grant B&T a license to use their cataloging records. For OCLC's WorldCat customers, their cataloging records *are* WorldCat records. Through the Framework Agreement and the WorldCat Rights and Responsibilities for the OCLC Cooperative (WorldCat Policy) agreement, OCLC's WorldCat customers are prohibited from licensing and granting access to large swaths of WorldCat records to third parties, including to OCLC's direct competitors. B&T also violated its licensing agreement with OCLC by downloading excessive records. OCLC alleges B&T's conduct constitutes tortious interference with OCLC's contracts with its WorldCat customers, tortious interference with prospective WorldCat customers, contractual breach, and unjust enrichment.

OCLC has four Requests with the term "OCLC WorldCat Customer," each of which seeks documents relevant to OCLC's claims. This Court has recognized that "[r]elevance is construed very broadly for discovery purposes." *E.g.*, *Mann v. LNKBox Grp., Inc.*, No. 2:22-cv-2553, 2025 WL 415761, at *1 (S.D. Ohio Jan. 27, 2025).

**RFP No. 3** seeks "communications between Defendants and OCLC WorldCat Customers about BTCat, OCLC, WorldCat, and/or WorldCat records." These communications are relevant to OCLC's tortious interference of contract claim because they go to B&T's knowledge of OCLC's contracts with its WorldCat customers, B&T's solicitation of WorldCat customers to share, upload, transfer, and/or license their WorldCat cataloging records in violation of those agreements, and the harm to OCLC, specifically, customers lost to B&T's BTCat. These communications are also relevant to OCLC's claim of tortious interference of prospective business relationships, including B&T's knowledge of OCLC's prospective business relationships, B&T's interference with those relationships, and again, OCLC's harm through lost future customers.

1

*OCLC, Inc. v. Baker & Taylor, LLC*, No. 2:25-cv-309
**Plaintiff OCLC, Inc.'s Position Statement re "OCLC WorldCat Customers"**

**RFP No. 4** seeks documents sufficient to show any contracts between B&T and OCLC WorldCat Customers related to BTCat and sharing, uploading, transferring, and/or licensing cataloging records for use in BTCat. This Request seeks relevant information because it targets contracts (beyond the contract in OCLC's complaint) that contain a provision requiring signatories to share, upload, transfer, and/or license their cataloging records, which OCLC alleges is B&T's way of inducing OCLC WorldCat Customers to breach their contracts with OCLC and upload and license their WorldCat records. It is relevant to OCLC's tortious interference of contract claim.

**RFP No. 5** seeks documents related to any agreement between OCLC and WorldCat Customers that pertain to the customer's contractual obligations to OCLC, including the Framework Agreement and WorldCat Policy. These documents directly speak to B&T's knowledge of OCLC WorldCat Customer's contractual agreements with OCLC and B&T's communications (both internally and with OCLC WorldCat customers) about the same, all of which are relevant to OCLC's tortious interference of contract claim.

Finally, **RFP No. 6** seeks documents sufficient to show which OCLC WorldCat Customers have downloaded, shared, transferred, and/or licensed bibliographic records to B&T and/or BTCat. OCLC alleges that its customers cannot engage in this conduct without violating the Framework Agreement and the WorldCat Policy. Accordingly, this seeks documents relevant to whether B&T induced OCLC WorldCat Customers to breach their contractual obligations with OCLC, how many OCLC WorldCat Customers did so, and the extent of harm to OCLC via its loss of WorldCat records to a direct competitor.

B&T argues that because "OCLC WorldCat Customers" is not a term used verbatim in the Complaint or underlying contracts (the Framework Agreement and the WorldCat Policy), OCLC's Requests seek irrelevant information and are thus "inherently overbroad" and "unduly burdensome." This is a case about B&T's tortious interference with OCLC's WorldCat customers and OCLC's loss of those customers. It cannot be that a Request that pertains to these customers is irrelevant simply because the precise term, "OCLC WorldCat Customers," does not appear in the Complaint or underlying contracts. The Complaint plainly discusses WorldCat customers and that these customers agree to the Framework Agreement and WorldCat Policy. Importantly, B&T's own discovery requests recognize that the customer communications and documents are relevant and important to this case, and OCLC will be unable to fully answer B&T's requests without Defendants participating in discovery on these issues, as large portions of this information are exclusively within Defendants' control. *See* B&T RFP Nos. 4 (OCLC customers), 6 (OCLC customers), 12 (BTCat customers). B&T has provided no authority to OCLC supporting its "magic-words" approach to relevance or its novel treatment of definitions in discovery requests.

Because relevance is the only basis for B&T's overbreadth and undue-burden objections, those objections fail, too. Previously, B&T argued that OCLC's Requests that include the term "OCLC WorldCat Customer" are overbroad and unduly burdensome because the customer list contains approximately 9,500 customers. To date, B&T has failed to actually substantiate any burden associated with collecting, running searches, or reviewing documents responsive to searches based on OCLC's WorldCat customer list. Accordingly, any further burden or overbreadth objections are speculative.

*OCLC, Inc. v. Baker & Taylor, LLC*, No. 2:25-cv-309
**Plaintiff OCLC, Inc.'s Position Statement re "OCLC WorldCat Customers"**

Importantly, there is no undue burden from running searches for OCLC's list, notwithstanding the number of customers on that list. By using standard e-discovery tools, a customer list can be run as a search from a .csv file (which OCLC has repeatedly offered to provide to B&T). In fact, OCLC confirmed it was able to upload the .csv file to its e-discovery platform and run a search with 1,000 customers in 8 minutes. Considering the crucial role of the Requests described above to OCLC's claims and its ability to show a likelihood of success on the merits, there is no basis for concluding that running searches for OCLC's Requests is overly broad or unduly burdensome.

At bottom, B&T is conflating OCLC's burden to show relevance with its merits-related burdens. In its most recent email, B&T explained, "Based upon the foregoing, ***there does not appear to be any support for the allegations*** in paragraph 60 of the Complaint which state: …all WorldCat customers must agree to OCLC's contractual requirements, including WorldCat's Rights and Responsibilities, to be part of the OCLC Cooperative ("WorldCat Policy") (attached here as Exhibit A). Under the WorldCat Policy, customers cannot (among other things) download WorldCat records en masse, distribute the records, or take any action that would devalue WorldCat and the OCLC Cooperative." But whether there is ***support*** for allegations is not the operative question—the question is whether the Requests seek information relevant to the claims in this case. Whether those claims survive summary judgment is a question for another day, and certainly not a basis to prohibit OCLC from attempting to discover the facts that will substantiate its claims. *Scooter Store, Inc. v. Spinlife.com, LLC*, No. 2:10-cv-18, 2011 WL 2160462, at *2 (S.D. Ohio June 1, 2011) (stating that a merits inquiry "has no bearing on whether the discovery Plaintiffs seek is relevant, particularly viewed in light of a party's broad rights to discovery under Rule 26."). Under B&T's approach, a plaintiff could only seek discovery if it can prove its claims when it files suit—a position this Court has rejected. *Access 4 All, Inc. v. W & D Davis Inv. Co.*, No. 2:06-CV-504, 2007 WL 614091, at *4 (S.D. Ohio Feb. 21, 2007) ("[P]laintiffs need not prove their case before they are entitled to discovery related to their claims.").

From OCLC's perspective, the above dispute is the only dispute ripe for this Court's intervention, as the parties are not yet at an impasse on other disputes. If B&T raises any other disputes, including those related to OCLC's Requests that contain the phrase, "WorldCat record," the Court should decline to adjudicate that dispute. B&T has objected to the phrase, "WorldCat record," contending it is not defined in the Complaint, the underlying contracts, or the Requests. However, OCLC has proposed search terms for "WorldCat record" and how to determine responsiveness for each Request that contains the phrase, and B&T has not yet responded to OCLC's proposal.

Accordingly, OCLC respectfully requests that the Court order B&T to respond to OCLC's Requests using the definition of "OCLC WorldCat Customers," as defined by OCLC's provided customer list.

*OCLC, Inc. v. Baker & Taylor, LLC, et al.,* No. 2:25-cv-309
**Defendant Baker & Taylor, LLC's Position Statement Regarding Discovery Impasse**

Defendant Baker & Taylor, LLC ("**Baker & Taylor**") submits this position statement in advance of the discovery conference which is set to occur before Magistrate Judge Elizabeth Preston Deavers via Zoom on May 29, 2025, at 1:30 PM. As explained below, OCLC, Inc.'s ("**OCLC**") demands are overbroad, unsupported by its Complaint, and unduly burdensome—demonstrating an improper attempt to impose sweeping and speculative discovery obligations without first establishing the relevance of the requested data under the Federal Rules of Civil Procedure.

As a preliminary matter, Baker & Taylor has already produced two reports to OCLC: 1) a report showing the total number of WorldCat records downloaded pursuant to the license agreement at issue (22,076); and 2) a report showing the identity of Baker & Taylor's customers whose "WorldCat records"[1] were allegedly transferred to BTCat (50 customers).[2] Baker & Taylor's position is that discovery should be limited to only customers who were allegedly involved in the "bad conduct" described in OCLC's Complaint. In essence, Baker & Taylor has led the metaphorical horse to water, and OCLC is demanding more.

### OCLC'S THEORY OF RELEVANCE IS SPECULATIVE AND UNMOORED FROM ITS CLAIMS

In its Discovery Requests, OCLC defines "OCLC WorldCat Customers" as "OCLC member libraries included in Exhibit 'A'"…" Exhibit "A" consists of the names of 13,451 libraries throughout the world, which Baker & Taylor understands to be every single one of OCLC's customers.[3] Essentially, OCLC handed its competitor – Baker & Taylor – a list of its customers and is now asking Baker & Taylor to identify and produce any and all communications between and documents exchanged with any of OCLC's customers. If this doesn't qualify as a fishing expedition, it's hard to imagine what would.

OCLC's central premise—that "OCLC WorldCat Customers" is a coherent, legally significant category—is flawed. The term does not appear in:

- The Complaint itself;

- The *WorldCat Rights and Responsibilities for the OCLC Cooperative* ("WorldCat Policy," Ex. A to the Complaint); or

---

[1] OCLC's discovery requests repeatedly refer to "WorldCat records"—a term it has not defined in the Complaint, the contractual exhibits, or the discovery requests themselves. Without a clear and operable definition, Baker & Taylor cannot reasonably determine what constitutes a "WorldCat record," how to identify such records in its systems, or how those records are relevant to the pleaded claims and defenses.

[2] These reports are not attached because they have been designated as "Confidential – Attorneys' Eyes Only" pursuant to that certain Stipulated Protective Order, issued on April 16, 2025.

[3] Exhibit "A" is not attached because it has been designated as "Confidential – Attorneys' Eyes Only" pursuant to that certain Stipulated Protective Order, issued on April 16, 2025.

- The *Framework Agreement* (Ex. D to the Complaint), which governs OCLC's customer relationships.

These governing documents differentiate between members of the OCLC Cooperative and subscribers to OCLC services. As Section 13.1 of the Framework Agreement makes explicit, not all service subscribers are cooperative members. Institutions become members only by fulfilling certain qualifying obligations—such as contributing intellectual content or agreeing to share resources—not merely by using WorldCat. Thus, OCLC's attempt to impose a definition onto 13,451 institutions—based solely on its own internal list - is legally and factually baseless. Simply put, OCLC cannot rewrite the meaning of "customer," "member," or "participant" through its discovery definitions – and OCLC's attempts to retroactively define a term in discovery that does not appear in its own pleadings or the agreements at issue circumvents the notice function of the Complaint and imposes obligations beyond the scope of the claims actually asserted.

OCLC claims that its requests are necessary to prove tortious interference and breach of contract. However, OCLC has failed to show how communications with an unbounded, internally defined group of 13,451 customers—relate directly to specific, actionable breaches or instances of interference. Crucially, OCLC assumes without evidence that each entity on its list is a current contractual counterparty, subject to enforceable restrictions under the WorldCat Policy. That assumption is unverified and contested. Without individualized proof of contractual privity and relevant restrictions, discovery premised on that list is speculative and overreaching.

OCLC's insistence that its customer list be used to generate bulk searches across Baker & Taylor's systems ignores the principles of proportionality and specificity required by Rule 26(b). Even if e-discovery tools can technically process large datasets, OCLC has provided no justification for why communications with *all* entities on its list are relevant to its claims—particularly given that many of those institutions may have no subscription to WorldCat at all or may never have interacted with Baker & Taylor regarding BTCat. Legal discovery is not a license to conduct a fishing expedition. It must be "proportional to the needs of the case" under Rule 26(b)(1). OCLC's approach amounts to discovery by assertion—asserting the term has meaning and then demanding B&T engage in costly, time-consuming searches based on it. This is not the standard.

### THE BURDEN OF COMPLIANCE IS DISPROPORTIONATE TO THE LIKELY BENEFIT

OCLC's insistence that Baker & Taylor use 13,451 name list to search across communications and contracts is unduly burdensome. OCLC downplays the scope and complexity of the task by pointing to hypothetical search efficiencies using its own systems. However, OCLC's unilateral assertions about search speed and cost-efficiency do not obviate OCLC's obligation to establish that these communications and documents are relevant in the first place. OCLC has not met its burden to justify such extensive discovery.

### OCLC'S REQUEST PRESUPPOSES MERITS WITHOUT FIRST ESTABLISHING FOUNDATION

Paragraph 60 of the Complaint asserts that "all WorldCat customers must agree to OCLC's contractual requirements," including the WorldCat Policy. But this sweeping claim is contradicted by the very agreements attached to the Complaint, which explicitly distinguish between members

and general users of OCLC products and services. OCLC has failed to substantiate how institutions on its customer list are bound by the restrictive obligations it references.

***Absent individualized evidence that each customer is subject to OCLC's "contracts", it is improper to force Baker & Taylor to search and produce documents involving thousands of institutions based on speculative assumptions that have no basis in fact.***

## CONCLUSION

Discovery must be precise enough to allow the responding party to locate and assess responsive material. OCLC's failure to define core terms renders compliance unduly burdensome and fundamentally unfair. Further, OCLC's position ignores the basic tenets of relevance, proportionality, and specificity that govern modern discovery. The Court should decline to enforce the use of the term "OCLC WorldCat Customers" as a valid basis for broad discovery until OCLC substantiates the factual and contractual underpinnings of that label on a customer-by-customer basis.

*OCLC, Inc. v. Baker & Taylor, LLC*, No. 2:25-cv-309
**Plaintiff OCLC, Inc.'s Response re "OCLC WorldCat Customers"**

As directed by the Court, Plaintiff OCLC, Inc. ("OCLC") submits this response to Defendant Baker & Taylor, LLC's ("B&T") summary of the discovery dispute related to OCLC's First Set of Interrogatories and Requests for Production to B&T (the "Requests"). OCLC maintains that its Requests containing the term "OCLC WorldCat Customer" are not just relevant, but essential, to OCLC's claims and its ability to show a likelihood of success on the merits at the preliminary injunction hearing. These Requests are also proportional to the needs of the case, as set forth in its summary statement. OCLC has three responses to B&T's summary.

**1**. As OCLC pointed out previously, B&T is improperly injecting the merits into this discovery dispute. B&T takes no pains to hide this, stating that "[w]*ithout individualized proof* of contractual privity and relevant restrictions," OCLC is not entitled to its discovery. B&T Summary at 2 ("OCL assumes *without evidence* . . . . That assumption is *unverified and contested*."); *id.* at 3 ("*Absent individualized evidence* that each customer is subject to OCLC's 'contracts', it is improper to force Baker & Taylor to search and produce documents[.]" (emphasis omitted)). Simply put, B&T's position and approach to this dispute defies Federal Rule of Civil Procedure 26(b)(1) and this Court's prior precedent. *See, e.g.*, *Access 4 All, Inc. v. W & D Davis Inv. Co.*, No. CIV.A. 2:06-CV-504, 2007 WL 614091, at *4 (S.D. Ohio Feb. 21, 2007) ("[P]laintiffs need not prove their case before they are entitled to discovery related to their claims."). This position is especially inequitable because much of the information that OCLC needs to prove its claims is *exclusively* within B&T's control, such as B&T's communications with WorldCat customers and documents evidencing its knowledge about OCLC's contracts with its WorldCat customers; B&T's efforts to encourage WorldCat customers to breach their contract obligations; the WorldCat customers that have uploaded and/or licensed their cataloging records (which *are* WorldCat records) to BTCat; and the past and prospective WorldCat customers OCLC has lost to B&T.

The crux of B&T's relevance objection is that B&T disagrees with OCLC's construction of its contracts, the Framework Agreement and the WorldCat Policy, arguing that OCLC's interpretation of its contracts is contrary to the contracts themselves. B&T Summary at 1–2. Indeed, B&T provides its own interpretation of the contracts—the only basis for its relevance objection—but the place for disagreements on the merits is dipositive motions, not a discovery dispute. OCLC is entitled to discovery that will help OCLC develop and support OCLC's theories of liability. B&T cannot unilaterally narrow discovery by arguing B&T's theory of the case on the merits and claim that relevance turns exclusively on its theory of the case. 8 Fed. Prac. & Proc. Civ. § 2011 (3d ed.) ("Finally, a party is entitled to seek discovery on its theory of the facts and the law, and is not limited in discovery by the opponent's theory."). The operative question is clear—whether OCLC's Requests seeks documents and information relevant to its claims.

Instead of addressing OCLC's Requests as drafted, B&T has only ever objected to OCLC's Requests based on the defined term "OCLC WorldCat Customers" in a vacuum, without any connection to OCLC's actual Requests, and inserted its merits-based disagreements. B&T has never responded to OCLC's explanations why each Request seeks information relevant to OCLC's claims. The only relevance objection that B&T has offered arises from its strained interpretation of OCLC's Complaint, which primarily turns on whether certain words appear verbatim in the underlying agreements, so that it can argue that all OCLC's Requests are per se irrelevant. B&T's merits-based relevance arguments are an improper distraction in this expedited discovery.

*OCLC, Inc. v. Baker & Taylor, LLC*, No. 2:25-cv-309
**Plaintiff OCLC, Inc.'s Response re "OCLC WorldCat Customers"**

**2.** B&T's position statement also contains two fundamental misunderstandings of OCLC's Requests containing "OCLC WorldCat Customer." *First*, OCLC's list of "OCLC WorldCat Customers" (Exhibit A)[1] does not contain "every single one of OCLC's customers" (B&T Summary at 1), including those that are ***not*** WorldCat subscribers and ***not*** bound by the Framework Agreement and the WorldCat Policy. OCLC has 29,000 total customers, and OCLC has never represented to B&T that Exhibit A includes all OCLC's customers. OCLC is not seeking discovery related to its customers who are not WorldCat subscribers and thus not bound by the Framework Agreement (including Section 13.1 and Schedule 2) and the WorldCat Policy.

*Second*, OCLC is not requesting that B&T run "bulk searches" of its WorldCat customer list across all B&T's documents and data. B&T Summary at 1. The Requests demonstrate B&T's position is baseless—OCLC's Requests about "OCLC WorldCat Customers" contain limiting terms or request only documents sufficient to show. Even RFP No. 3, which is potentially the broadest Request at issue, does not seek all communications with "OCLC WorldCat Customers"; it is limited to only those communications "about BTCat, OCLC, WorldCat and/or WorldCat records."[2] This is in stark contrast to B&T's own request served on OCLC, which seeks "***All*** Communications between OCLC and BTCat customers," although OCLC has agreed to search for responsive documents if B&T provides a list of its BTCat customers. Moreover, the Federal Rules of Civil Procedure do not require B&T to run searches across <u>all B&T's systems</u> to meet its discovery obligations. OCLC has never suggested that B&T should not engage in typical e-discovery practices, such as identifying pertinent custodians and document repositories to search.

**3.** B&T references a report that it produced earlier, which consists of BTCat customers that uploaded what B&T has unilaterally declared to be WorldCat records (based on only one data field). That proposal is insufficient three reasons. *First*, OCLC's tortious interference of contract claim addresses more than WorldCat customers who have uploaded, transferred, and/or shared their records; it also addresses WorldCat customers who have licensed their records to B&T, *i.e.*, the WorldCat customers who have agreed to B&T's provisions that require them to grant a license to B&T to use their cataloging records in BTCat. *Second*, B&T's search for WorldCat records when producing its "report" raises more questions than answers and is fundamentally flawed and self-serving. By only searching its BTCat system for one of the many enhancements that are added to WorldCat records, B&T's list does not reflect those records that contain the other enhancements and indicators present in WorldCat records, meaning B&T's proposal would omit WorldCat customers whose WorldCat records are being used in BTCat. *Third*, this proposal deprives OCLC of the opportunity to see documents and communications with other WorldCat customers that go to B&T's knowledge of OCLC's WorldCat customer contracts, understanding of its conduct toward WorldCat customers, and show past and prospective customers that OCLC lost to BTCat.

Accordingly, OCLC respectfully requests that the Court order B&T to respond to OCLC's Requests that contain the term "OCLC WorldCat Customer" as defined by Exhibit A.

---

[1] In OCLC's summary, OCLC inadvertently misstated that there were approximately 9,500 customers on this list. There are approximately 13,450 customers on the list.

[2] B&T has represented that communications with OCLC's WorldCat customers will likely not exist because "many of those institutions" on Exhibit A "may never have interacted with Baker & Taylor regarding BTCat." B&T Summary at 2. If true, that would certainly decrease the burden for B&T. Nevertheless, OCLC is still entitled to independently confirm B&T's representation through discovery.