UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OCLC, INC., | CASE NO. 2:25-CV-309 |
| PLAINTIFF, | JUDGE EDMUND A. SARGUS |
| V. | MAGISTRATE JUDGE ELIZABETH PRESTON DEAVERS |
| BAKER & TAYLOR, LLC, *ET AL.,* | |
| DEFENDANTS. | |

**STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

**1.  PURPOSE**

Discovery requests and subpoenas served in the above-captioned action ("Action") may call for the production of electronically stored information ("ESI"), as used in Fed. R. Civ. P. 34(a)(1)(A). Accordingly, this Stipulation will govern discovery of ESI in this Action as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

**2.  COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to consult and cooperate reasonably and in good faith as discovery proceeds.

Counsel shall be responsible for understanding their respective ESI and be in a position to discuss the technical aspects of the same, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will confer, as needed, about ESI, to endeavor to resolve disputes without court intervention and to provide guidance regarding search protocols (including, for example, symbols or terms to denote fuzzy searches, wildcards, or proximity searches) upon request from the Receiving Party.

**3.  PRESERVATION**

The parties have each acknowledged their preservation obligations and agree that preservation of potentially relevant ESI will be reasonable and proportionate. The parties acknowledge that they are obligated to preserve potentially relevant evidence consistent with their obligations under the Federal Rules of Civil Procedure.

4. **DEFINITIONS**

    A. <u>Document</u>: synonymous in meaning and equal in scope to the usage of this term in <u>Fed. R. Civ. P. 34(a)(1)(A)</u>.

    B. <u>Extracted Text</u>: text extracted from a Native Format file and includes at least all header, footer, Document body information, and any hidden text, if available.

    C. <u>Load File</u>: an electronic file that is used to import all required production information into a Document database, including, if available, Document images, Extracted Text or OCR text, Native Format files where required by this Order, and Metadata, as well as information indicating Document breaks, and Document relationships such as those between an Email or Instant Message and its attachments and a Document and information related to embedded content.

    D. <u>Metadata</u>: structured information about ESI that is created by the file system or application, embedded in the Document or Email or associated with it, and sometimes modified through ordinary business use. Metadata of the ESI describes, *inter alia*, the characteristics, origins, usage and validity of the collected ESI.

    E. <u>Native Format</u>: the file structure of ESI used by the application with which such ESI was originally created.

    F. <u>OCR</u>: the optical character recognition technology used to read paper Documents or electronic images of Documents and output such Documents to a searchable text format. The latter text is also referred to as the "OCR text" or simply "OCR."

    G. <u>Producing Party</u>: any Party or third-party in the Action that produces Documents.

    H. <u>Receiving Party</u>: a Party in the Action to whom Documents are produced.

    I. <u>Responsive Document</u>: any non-privileged and relevant Document that is responsive to any discovery request or subpoena served on the Producing Party in the Action based on criteria negotiated between the parties or determined by the Court, subject to the limitations set forth in the Federal Rules of Civil Procedure or Court order.

    J. <u>Tagged Image File Format</u>: or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Documents.

5.  **SCOPE**

The procedures and protocols set forth in this Stipulation shall govern the production format of Documents and ESI in this Action, to the extent such materials are produced.

Nothing in this Stipulation establishes any agreement as to either the temporal or subject matter scope of discovery in the Action. Nothing in this Stipulation establishes any agreement as to any search or review protocol, including which sources shall be searched for Responsive Documents or ESI, how a Responsive Document is to be identified, or how a Producing Party shall review its ESI prior to production. The parties agree to meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery, filter out ESI that is not subject to discovery, and reduce any unnecessary or disproportionate burden on the Producing Party.

6.  **PRODUCTION FORMATS**

    a.  <u>Format Guidelines</u>: The Parties shall, to the extent reasonably and technically possible, produce Documents and ESI according to the specifications provided in Exhibit A.

    b.  <u>Document Numbers and Confidentiality Designations for TIFF Images</u>: Each page of a Document produced in TIFF file format shall have a legible, unique fixed-length numeric identifier ("Document Number") containing at least eight (8) digits electronically "burned" onto the image in no less than 10-point font. TIFF Images may be produced in black and white, provided the Receiving Party retains the right to request a color copy when the black and white copy does not adequately represent the full nature of the underlying document, as for example when a color-coded chart or diagram is rendered in gray scale. Unless it would obscure, conceal or interfere with any information originally appearing on the Document, the Document Number shall be burned on the lower right-hand corner of the Document. Unless it would obscure, conceal or interfere with any information originally appearing on the Document, any confidentiality designation pursuant to the Stipulated Protective Order issued by the Court on April 16, 2025, <u>Doc. No. 22</u>, (the "Protective Order") will appear on the lower left-hand side of each page of a Document produced, in no less than 10-point font. The Document Number for each Document shall be created so as to identify the Producing Party and the Document Number (*e.g.*, "PartyName00000000"). Each Party's Document Numbering scheme shall use the unique identifying name agreed upon by the Parties. The parties further agree that none will seek reimbursement for the cost of producing documents in any format other than Native Format on the basis that they incurred undue expense by producing documents in a format other than Native Format.

    c.  <u>Documents to Be Produced Natively</u>: Microsoft Excel and other spreadsheet files, delimited text files, or other raw data files, Microsoft

3

        Access and other database files, Microsoft PowerPoint files and other presentation program files, video, audio files, and animation files, shall be produced in Native Format, if available. If a Document to be produced in Native Format contains privileged information or information protected by privacy laws, the Document will be produced by producing the Document in TIFF format with redactions, to the extent reasonably and technically possible. To the extent Documents that fall under this Section contain privileged information or information protected by privacy laws and cannot be redacted or produced in TIFF format, such Documents will be logged on a privilege log. If appropriate, the Parties agree to meet and confer to discuss the possibility of redacting Documents that fall under this Section in Native Format. The production load files shall contain a link to the produced Native Format files as specified in the "Native Link" Metadata field described in Exhibit A. Each electronic file produced in Native Format shall be assigned a unique Document Number and the database record for that file shall include a single page TIFF image branded with this unique Document Number in the lower right corner of the image as a Bates number, with the phrase "PRODUCED IN NATIVE FORMAT" (or similar language) branded in the center of the page. As with Documents produced in TIFF format, in order to protect the confidentiality of files produced in Native Format, any confidentiality designations pursuant to the Protective Order must appear on the associated TIFF placeholder in no less than 10-point font. Files produced in Native Format shall be given file names identical to the Document Number, followed by the file extension and include the confidentiality designation after the file number, *e.g.*, PartyName00000000_CONF.xls or PartyName00000000_HIGHCONF.xls. For each file produced in Native Format, Producing Party shall also indicate its native status in the Native File Metadata field described in Exhibit A.

    d.    Embedded Files: Non-privileged embedded files that are responsive or that are embedded in Responsive Documents, exclusive of logos or other nonresponsive system-embedded object files, shall be produced as separate Documents. Metadata for both the parent document and the embedded file shall indicate the family relationship between the two, as described in Exhibit A. The Producing Party may produce a placeholder TIFF image in place of any embedded file that could not be extracted, provided the placeholder TIFF identifies the nature of the embedded file and its relationship to the parent. Upon request by either party, the Parties shall meet and confer in good faith regarding whether certain non-substantive embedded files may be excluded from production.

    e.    Production of Additional Documents in Native Format: Each Party reserves the right to request production of ESI in Native Format for any ESI that it believes is not adequately represented in the TIFF format specified in Exhibit A, and, upon a showing of reasonable need, such requests will not

    be unreasonably denied. The Parties shall not make categorical or wholesale requests for production of ESI in Native Format. If the Parties are unable to agree as to the production of the requested Documents in Native Format, the Parties may submit the matter to the Court.

  f. <u>Attachments</u>: The parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments will be produced, except any completely non-responsive logo attachments or attachments that must be withheld or redacted on the basis of privilege, immunity or privacy laws. Any attachment withheld pursuant to this Section shall be replaced with a single page Bates-stamped TIFF image slip-sheet reflecting the Party's confidentiality designation and basis for withholding the Document (i.e. non-responsive, privilege, attorney work product, etc.), and shall be entered into a privilege log containing sufficient information to enable the Receiving Party to discern the nature of the information being withheld, the privilege asserted, and the basis for asserting privilege, consistent with <u>Federal Rule of Civil Procedure 26(b)(5)(A)</u>.

  g. <u>De-Duplication</u>: A Party is only required to produce a single copy of a Responsive Document. Each Party may remove exact duplicate Documents (i.e., identical copies of the same Document), including but not limited to Email, to reduce the unnecessary cost of reviewing and producing exact duplicate Documents. If a Party chooses to remove exact duplicate Documents, the Party shall make reasonable efforts to remove exact duplicate ESI according to the MD5/SHA-1 hashing method and shall identify the custodians of de-duplicated Documents. Moreover, (a) de-duplication shall be performed only at the Document family level[1] so that attachments are not de-duplicated against identical stand-alone versions of such Documents and vice versa, although each family member shall be hashed separately for purposes of populating the "HashValue" field in Exhibit A; (b) attachments to Emails, Instant Messages or other Documents shall not be disassociated from the parent Email, Instant Message or Document even if they are exact duplicates of another Document in the production, and (c) paper Documents shall not be eliminated as duplicates of responsive ESI. ESI that is not an exact duplicate according to the method

---

[1] Unless otherwise agreed upon by the Parties, a family can only be removed through de-duplication if each and every member of the de-duplication candidate family has identical MD5/SHA-1 hashcodes to the corresponding members of another family (other reasonable standard industry practices for identifying duplicate copies of the same documents in their various formats may be used provided the Receiving Party has been notified in advance and has agreed in advance to their use). For example, if there is a two-member family with a parent and an attachment, the MD5 hashcodes of the parent must be identical and the MD5 hashcodes of the attachments must also be identical. If a Party de-duplicates globally, the Party shall, if feasible, identify the de-duplication priority order at the request of any other Party. The Producing Party must produce the most-inclusive email thread and any lesser-included email threads that contain attachments not included in the most-inclusive email thread. The Producing Party may produce other lesser-included email threads separately in its production(s).

        specified in Exhibit A may not be removed. The Parties shall make reasonable efforts to reach agreement on any culling criteria to be used.

    h.    <u>Encryption</u>: The Parties will make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this Stipulation, and if produced in Native Format, the decrypted Document is produced. To the extent encrypted or password-protected Documents are successfully processed according to the requirements of this Stipulation, the Parties have no duty to identify the prior encrypted status of such Documents. To the extent such Documents are not successfully processed despite use of reasonable efforts, including reasonable efforts to obtain passwords, to the extent a family member of such a Document is a Responsive Document, a placeholder TIFF image may be produced in place of each such Document indicating that security protection could not be removed. Upon request from the Receiving Party, the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms to remove such security protection or the production of available Metadata.

    i.    <u>Databases</u>: Non-privileged responsive data kept in enterprise databases (such as Oracle, SQL or DB2 databases) that are maintained in the normal course of business will be produced in an electronic format. To the extent such databases exist, responsive data from those types of databases will be produced in database or delimited text file format, or, where necessary, the parties will discuss appropriate procedures and methods of production. This Stipulation does not obligate the Producing Party to create reports in a format not already available in any structured data source, but in the course of meeting and conferring over relevant requests for production, the parties will discuss the exchange of data maps, data dictionaries or sample reports to enable the Receiving Party to understand the data.

    j.    <u>Metadata Fields and Processing</u>: Each of the Metadata and coding fields set forth in Exhibit A that can reasonably and technically be extracted from a Document shall be produced for that Document. The Parties are not obligated to populate manually any of the fields in Exhibit A if such fields cannot be extracted from a Document and its context in the source data, with the exception of the following, if available: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian/Duplicate Custodian, (f) Redacted (Y/N), (g) Confidentiality, and (h) HashValue. Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension, Unicode (UTF-8) encoding, and ASCII 020 and 254 delimiters for column break and text qualifier. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. Nothing herein shall require a Producing Party to create or produce Metadata that does not exist or is not reasonably or technically accessible.

k.   Additional Processing Specifications: The Producing Party will generate and preserve the MD5 or SHA-1 hash values of all ESI based on the Native Format file. The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production: Where Documents are not otherwise produced natively, all TIFF images shall display tracked changes, comments and other rich data as displayed in the Document, regardless of the display setting for this information as last saved by the custodian, to the extent reasonably and technically possible. Producing Parties shall make reasonable efforts to process all ESI with a single time zone and a date and time setting that is consistent across all of the Parties' productions. The Parties agree to meet and confer in good faith with regard to any issues arising from this aspect of production that may arise.

l.   Production Media: The Producing Party shall produce Document images, Native Format files, Load Files (including Extracted Text / OCR text) and Metadata on hard drives, CDs, DVDs, secure FTP, or other mutually agreeable media ("Production Media"). Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of Documents on the Production Media and the Document Number ranges of the Documents in that production (*e.g.*, "Plfs' Production January 1, 2020, PartyName00000123-PartyName00000456"). All Production Media may be encrypted, with the Producing Party to provide a decryption key at the time of production. Productions should be accompanied by a cover letter identifying the custodians whose files are present in the production, if applicable, or otherwise describing the source(s) of the Documents present in the production.

m.   Third-Party Software: To the extent that Documents produced pursuant to this Stipulation cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such Documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

7.   **SEARCH TERMS FOR COLLECTING ELECTRONIC DOCUMENTS**

The Parties will cooperate in good faith regarding the disclosure and formulation of appropriate search terms and protocols in advance of any search to cull Document Custodians' ESI.

If, after agreed upon search terms are applied and hit reports have been provided to the Receiving Party, the Producing Party determines that the search terms proposed result in an unreasonably large number of potentially responsive documents, then the parties shall negotiate in good faith to attempt to reach mutually acceptable revisions to the terms.

7

If, after ESI is produced, the Receiving Party concludes that search terms should be revised or that new search terms and/or custodians should be added, then the parties shall negotiate in good faith to attempt to reach a mutually acceptable agreement concerning the search terms and custodians.

**8. DOCUMENTS PROTECTED FROM DISCOVERY**

a. Documents shall be subject to the terms of the Protective Order, as well as Fed. R. Civ. P. 26(c) and Fed. R. Evid. 502.

b. Communications involving counsel that post-date the filing of the complaint need not be placed on a privilege log.

**9. MODIFICATION**

This Stipulation may be modified by the parties through mutual agreement or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

*s/ Jeffrey M. Walker*
Jeffrey M. Walker (0096567), Trial Attorney
Traci L. Martinez (0083989)
Kathryn M. Brown (0100426)
Brittany Silverman (0102263)
Erin K. Hassett (0099970)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: (614) 365-2700
Facsimile: (614) 365-2499
jeffrey.walker@squirepb.com
traci.martinez@squirepb.com
kathryn.brown@squirepb.com
brittany.silverman@squirepb.com
erin.hassett@squirepb.com

*Attorneys for Plaintiff OCLC, Inc.*

*s/ Derek P. Hartman (per authorization)*
Derek P. Hartman (0087869), Trial Attorney
Michael C. Cohan (0013542)
CAVITCH, FAMILO & DURKIN CO., L.P.A.
1300 East Ninth Street, 20th Floor
Cleveland, Ohio 44114
Telephone: (216) 621-7860
Facsimile: (216) 621-3415
mcohan@cavitch.com
dhartman@cavitch.com

Frank E. Noyes, II (admitted *pro hac vice*)
OFFIT KURMAN
222 Delaware Avenue, Suite 1105
Wilmington, Delaware 19801
fnoyes@offitkurman.com

*Attorneys for Defendants Baker & Taylor, LLC & Bridgeall Libraries Ltd.*

**IT IS SO ORDERED.**

Date: ____July 7____, 2025         */s/ Elizabeth A. Preston Deavers*
                                                             ELIZABETH A. PRESTON DEAVERS
                                                             UNITED STATES MAGISTRATE JUDGE

## EXHIBIT A

1. **PRODUCTION LOAD FILES**

    There will be two Load/Unitization files accompanying all productions of ESI.

    - The first will be a Metadata import file, in Concordance-format delimited file with a .DAT file extension, that contains the agreed upon Metadata fields in UTF-8 encoding.

    - The second will be a cross-reference file that contains the corresponding image information [IDX] identifying Document breaks. The acceptable formats for the cross-reference files are .log and .opt.

2. **IMAGES**

    - Produce Documents in Single Page Group IV TIFF.

    - Image Resolution of at least 300 DPI.

    - If any Party deems the quality of the Document produced in TIFF format to be insufficient, the Parties will meet and confer in good faith to determine whether the Producing Party must produce the Document as a JPEG file or as a color image in TIFF or PDF format. The Parties shall not make categorical or wholesale requests for color images and such requests are deemed invalid.

    - File Naming Convention: Match Bates Number of the page.

    - Insert placeholder image for files produced in Native Format (*see* Section 6(c).).

    - Original Document orientation or corrected orientation shall be retained.

3. **SPECIAL FILE TYPE INSTRUCTIONS**

    - Certain file types shall be produced in Native Format, as specified in Section 6(c).

    - If redactions are required, see production requirements specified in Section 6(c).

4. **FULL TEXT EXTRACTION/OCR**

    - Where available, produce full extracted text for all file types (Redacted text will not be produced). Redacted Documents should be re-OCRed and only the unredacted text should be produced.

    - Produce OCR text output for any paper Document.

- Produce OCR text output for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) where Extracted Text cannot be provided, using industry standard OCR technology (Redacted text will not be produced).

- Production format: Single text file for each Document, not one text file per page.

- File Naming Convention: Match Beg Bates Number.

- Text encoding: Encoding of the text files shall be Unicode (UTF-8).

5. **ESI (AND PAPER TO THE EXTENT APPLICABLE) PRODUCTION METADATA FIELDS**

   - BegBates: Beginning Bates Number.

   - EndBates: Ending Bates Number.

   - BegAttach: Beginning Bates number of the first Document in a Document family range. Documents that are part of Document families, *i.e.*, containing parents and attachments should receive a value.

   - EndAttach: Ending Bates number of the last Document in attachment range in a Document family range. Documents that are part of Document families, *i.e.*, containing parents or attachments, should receive a value.

   - Custodian: Name of the Custodian of the Document produced. (LastName_FirstName format)

   - Duplicate Custodians: Names of all custodians who had a copy of a Document that was removed through the de-duplication process (if applicable). (LastName_FirstName format)

   - FileName: Filename of the original source ESI as stored by the custodian.

   - NativeLink: Path and filename to produced Native Format file (*see* Section 6(c).)

   - EmailSubject: Subject line extracted from an Email message.

   - Title: Title field extracted from the metadata of a non-Email Document.

   - Author: Author field extracted from the metadata of a non-Email Document. The Parties acknowledge that the Author field may not actually be the Author of the Document.

   - From: From field extracted from an Email message.

- To: To or Recipient field extracted from an Email message.

- Cc: CC or Carbon Copy field extracted from an Email message.

- BCC: BCC or Blind Carbon Copy field extracted from an Email message.

- DateSent: Sent date of an Email message (mm/dd/yyyy format).

- TimeSent: Sent time of an Email message (hh:mm:ss format)

- ParentDate: The date of the parent email should be applied to the parent email and all of the email attachments to the extent reasonably practicable.

- DateLastModified: Last modification date (mm/dd/yyyy).

- TimeLastModified: Last modification time (hh:mm:ss format)

- DateCreated: Date Document was created. The Parties acknowledge that the DateCreated field may not actually be the DateCreated due to the ease of change to that field and the technical definition of the field (e.g., the created date reflects the date when the file was created in that particular location on the computer or on the other storage device location).

- TimeCreated: Time Document was created. The Parties acknowledge that the TimeCreated field may not actually be the TimeCreated due to the ease of change to that field and the technical definition of the field (e.g., the created time reflects the time when the file was created in that particular location on the computer or on the other storage device location).

- HashValue: MD5 or SHA-1 hash value.File Extension: File extension of Document (.msg, .doc, .xls, etc.).

- File Size: File size in kilobytes (KB).

- Redacted: Identifies a Document containing redactions and shall be populated with Y/N.

- ExtractedText: File path to Extracted Text/OCR File.

- Confidentiality: "Confidential" or "Highly Confidential," if a Document has been so designated under the Protective Order; otherwise, blank.

- Page Count: Total number of pages in the Document.

- Attach Count: Number of attached files.

- Message-ID: The Outlook Message ID assigned by the Outlook mail server (if applicable).

- Reference Chain or Conversation Index: The Outlook message "Reference Chain" or "Conversation Index" (if applicable).

- Embedded Source: The Document Number of the source file from which the embedded file was extracted (if applicable).

The Parties agree that with respect to the above-referenced metadata fields:

1. There is no obligation for a Producing Party to rename metadata fields as long as all fields above are accounted for (if applicable).

2. With respect to the date and time metadata fields above, the Parties reserve the right to produce such metadata as a single field (e.g. DateSent = DateSent + TimeSent) since the metadata may already be exported and logged as such.

3. With respect to the Custodian and Duplicate Custodians metadata fields above, the Parties reserve the right to produce such metadata as a single field (e.g. Custodian = Custodian + Duplicate Custodians) since the metadata may already be exported and logged as such.

**6. DE-DUPLICATION**

- De-duplication method: Parties may make reasonable efforts to de-duplicate stand-alone Documents or entire Document families globally using MD5 or SHA-1 Hash value matching.

- Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced.

- Logos extracted from emails and files do not need to be produced as separate Documents or attachments.

**CERTIFICATE OF SERVICE**

On July 3, 2025, this document was filed electronically with the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties.

*Jeffrey M. Walker*
One of the Attorneys for Plaintiff OCLC