# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **OCLC, Inc.** | Case No. 2:25-cv-309 |
| Plaintiff, | Judge Edmund A. Sargus, Jr. |
| v. | Magistrate Judge Elizabeth Preston Deavers |
| **Baker & Taylor, LLC and Bridgeall Libraries, Ltd.,** | |
| Defendants. | |

## MOTION FOR TEMPORARY RESTRAINING ORDER

Pursuant to Federal Rule of Civil Procedure 65(b), Plaintiff OCLC, Inc. moves for a temporary restraining order enjoining Defendant Baker & Taylor, LLC from selling, converting, disposing, transferring, encumbering, or secreting its BTCat asset, or any other assets related to BTCat, to a third-party for fourteen days or until this Court's ruling on OCLC's fully briefed preliminary injunction motion. For the reasons in the attached Memorandum of Law, OCLC respectfully requests that this Court grant its motion for a temporary restraining order.

Respectfully submitted,

/s/*Jeffrey M. Walker*
Jeffrey M. Walker (0096567), Trial Attorney
Traci L. Martinez (0083989)
Kathryn M. Brown (0100426)
Brittany Silverman (0102263)
Erin Hassett (0099970)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: (614) 365-2700
Facsimile: (614) 365-2499
jeffrey.walker@squirepb.com

traci.martinez@squirepb.com
kathryn.brown@squirepb.com
brittany.silverman@squirepb.com
erin.hassett@squirepb.com

*Attorneys for Plaintiff OCLC, Inc.*

## MEMORANDUM IN SUPPORT

Plaintiff OCLC, Inc. ("OCLC") moved this Court nearly six months ago for preliminary injunctive relief, and for five months, the parties and the Court have worked toward the hearing on OCLC's motion for a preliminary injunction that is currently scheduled for October 6, 2025. Defendant Baker & Taylor, LLC ("Baker & Taylor"), however, is scheduled to close an asset sale on September 26, 2025—six business days before the hearing. One of the assets being sold is BTCat, Baker & Taylor's cataloging product and the subject of this lawsuit. OCLC stands ready to demonstrate at the preliminary injunction hearing that Baker & Taylor wrongfully obtained and incorporated OCLC's WorldCat records and data into BTCat in order to unfairly compete with WorldCat and that equitable relief, namely, preliminary injunctive relief, is warranted. Only immediate injunctive relief can halt the irreparable harm OCLC is experiencing from Baker & Taylor's actions, including the loss of customers, the diminution in value of OCLC's WorldCat (OCLC's cornerstone customer offering), loss of goodwill, etc.

OCLC seeks a temporary restraining order ("TRO") to prevent Baker & Taylor from selling the BTCat asset—and the WorldCat records contained therein—at the last moment before the hearing to frustrate OCLC's motion for preliminary injunction. The timing of this sale is no coincidence, and Baker & Taylor's intent is clear: Baker & Taylor has represented to both OCLC and the Court that as soon as the sale of BTCat closes, it will argue that OCLC's preliminary injunction motion is moot since Baker & Taylor no longer owns BTCat-related assets. A TRO will prevent such gamesmanship and stop Baker & Taylor's efforts to frustrate OCLC's preliminary injunction motion. A TRO is necessary to preserve the status quo until the Court can hold an adversarial hearing on a preliminary injunction and rule on the same.

## STATEMENT OF FACTS

OCLC briefly recounts the facts underlying this lawsuit and incorporates by reference the facts set forth in its Complaint, Motion for Preliminary Injunction, and Reply in support of its Motion for Preliminary Injunction. Dkts. 1, 5, 64. On March 26, 2025, OCLC filed this lawsuit against Baker & Taylor and Defendant Bridgeall Libraries Limited for improperly obtaining WorldCat records to populate its competing product, BTCat, to unlawfully and unfairly compete with OCLC's WorldCat. Compl., Dkt. 1. OCLC alleges claims for tortious interference with contract, tortious interference with prospective business relationships, contractual breach, and unjust enrichment. *Id.* OCLC also seeks declaratory, injunctive, and, in the alternative, monetary relief. *Id.* at # 28. In conjunction with its Complaint, OCLC filed a motion for preliminary injunction. Mot. for Preliminary Injunction, Dkt. 5. OCLC's motion seeks injunctive relief from the Court to stop Defendants from (1) including contractual provisions that grant Defendants a license to WorldCat records and induce WorldCat customers to share their WorldCat records, (2) accessing such records from WorldCat customers, (3) incorporating WorldCat records in BTCat or any other products and services, and (4) making WorldCat records available to customers through the BTCat product. *Id.* at # 82–83.

During the first status conference with the Court, OCLC requested that the preliminary injunction hearing be held in late August or early September, and that briefing and discovery related to the motion for a preliminary injunction commence promptly. Apr. 9, 2025 Conf. Tr., Dkt. 42 at 4:24–5:1. Defendants requested a 30-day pause on any briefing or discovery, and the Court gave Defendants two weeks. *Id.* at 7:1–3, 10:21–12:11. Ultimately, Defendants' request led to the hearing being scheduled for October 6, 2025 (Apr. 28, 2025 Order, Dkt. 27)—two weeks from today and a month later than OCLC requested.

The Court also ordered the parties to conduct expedited discovery. *Id.* at # 257. The parties have participated in expedited discovery for more than five months, exchanging written discovery requests, producing thousands of documents, and taking six depositions. The parties have also litigated several discovery disputes before the Court. There is no question that the Court and the parties have invested significant time, money, and other resources into expedited discovery for the preliminary injunction hearing.

On September 11, 2025, *Publishers Weekly* reported that Baker & Taylor had entered into a Letter of Intent to sell substantially all its assets to ReaderLink Distribution Services, LLC ("ReaderLink"). *See* K. Brown Decl. (attached here as Ex. 1) ¶ 3 & Ex. A. The article indicated that the deal was set to close on September 26, 2025 (*id.*), just six business days before the preliminary injunction hearing. Baker & Taylor's CEO, Amandeep Kochar, also announced the pending transaction to customers on the same day, assuring them that most of Baker & Taylor's executive team and employees would continue on after the transaction and that Mr. Kochar "will continue to lead the Baker & Taylor business" after the transaction closes. *Id.* ¶ 4 & Ex. B.

Baker & Taylor's counsel did not notify the Court or OCLC of this pending transaction or its impact on this case and OCLC's pending motion for preliminary injunction, and OCLC had to affirmatively reach out to counsel about the transaction. *Id.* ¶ 5. On September 17, 2025, OCLC's counsel met with defense counsel to discuss the acquisition between Baker & Taylor and ReaderLink. *Id.* ¶ 6. During this conference, defense counsel confirmed that the transaction (an asset sale) was scheduled to close on September 26 and that BTCat was part of the transaction, along with substantially all of Baker & Taylor's other assets. *Id.* Defense counsel further confirmed that Baker & Taylor's executive team would continue running the Baker & Taylor business following the transaction. *Id.* Additionally, defense counsel stated that once the transaction closed,

3

Baker & Taylor would reach out to the Court to request that the Court vacate the hearing on OCLC's motion for preliminary injunction (*id.* ¶ 7), which OCLC has waited for since March. Baker & Taylor's position is that because it would no longer own the asset that is at the center of this lawsuit, BTCat, which contains OCLC's WorldCat records, OCLC's motion for preliminary injunction would be moot. *Id.*

After confirming this news with defense counsel and being informed that Defendants planned to use the transaction to moot OCLC's motion for preliminary injunction and vacate the preliminary injunction hearing, OCLC requested an emergency status conference with the Court, which was held on September 18, 2025. Dkt. 68. During this conference, Baker & Taylor again expressed its view that selling BTCat before the hearing and before the Court could rule on the preliminary injunction would moot the motion.

This motion for a TRO followed. In this motion, OCLC seeks immediate, targeted relief from the Court to temporarily restrain Baker & Taylor from selling, converting, disposing, transferring, encumbering, or secreting its asset, BTCat, or any other assets related to BTCat, to a third party for fourteen days or before this Court is able to rule on OCLC's fully briefed preliminary injunction motion.

## LAW AND ARGUMENT

Under Federal Rule of Civil Procedure 65, the purpose of a TRO is to preserve the relative positions of the parties, *i.e.*, the status quo, so that the Court can make a preliminary, reasoned decision on a motion for a preliminary injunction. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974); *see also Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 227 (6th Cir. 1996). Here, a TRO will preserve the status quo until the Court can hold an adversarial hearing for a preliminary injunction and rule on the fully briefed preliminary injunction motion.

4

Courts balance four factors when determining whether to issue a TRO under Federal Rule of Civil Procedure 65: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc) (internal quotation marks omitted); *see Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007) (applying these factors to a request for a TRO). These factors are not requirements, "'but are interrelated considerations that must be balanced together.'" *Ne. Ohio Coal. For Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citation omitted). "For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer." *Id.*

All four factors and the balance thereof weigh in favor of granting OCLC a TRO that will prevent Baker & Taylor from selling BTCat days before the preliminary injunction hearing and thereby attempt to avoid the entry of a preliminary injunction by the Court.

**A. OCLC Will Prevail on the Merits of Its Claims.**

As set forth in OCLC's Motion for Preliminary Injunction and Reply in support of its Motion for Preliminary Injunction, which OCLC incorporates here, OCLC is likely to prevail on the merits of each of its claims. *See* Mot. for Preliminary Injunction, Dkt. 5 at # 97–105; Reply in support of Mot. for Preliminary Injunction, Dkt. 64 at #1524–53. Accordingly, this factor weighs in favor of granting OCLC's motion for a TRO.

### B. Without a TRO, OCLC Will be Immediately and Irreparably Harmed.

To establish irreparable harm that cannot be compensated with money damages, Plaintiff must show that it will suffer "actual and imminent" harm, "rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006); *see also Doe v. Univ. of Cincinnati*, No. 1:15-CV-600, 2015 WL 5729328, at *1 (S.D. Ohio Sept. 30, 2015) (noting that the "standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo").

Baker & Taylor's conduct, transferring the BTCat asset, is imminent and will irreparably harm OCLC in a manner that cannot be compensated by money damages. As set forth in OCLC's motion for preliminary injunction, OCLC is currently suffering irreparable harm based on Defendants' improper use of WorldCat records in BTCat. *See* Mot. for Preliminary Injunction, Dkt. 5 at # 105–08; Reply in support of Mot. for Preliminary Injunction, Dkt. 64 at #1553–58. Additionally, the sale for substantially all Baker & Taylor's assets to ReaderLink is set to close on September 26, 2025—four days from today. If the BTCat asset is part of that closing, Baker & Taylor will no longer own BTCat. Therefore, OCLC will not be able to receive preliminary injunctive relief regarding the operation of BTCat, nor will it be able to prevent the transfer of the WorldCat records that are improperly within BTCat. Baker & Taylor's sale of BTCat six business days before the preliminary injunction hearing, after more than five months of discovery, will set OCLC—and the Court—back to zero, forcing OCLC to amend its complaint to add ReaderLink, file a renewed motion under Rule 65 against ReaderLink, and likely conduct additional (but repetitive) discovery. But in the meantime, the executive team behind BTCat and BTCat operations, including the incorporation and offering of WorldCat records, will continue unchecked

and unhindered. Under circumstances like these, this Court and others have granted motions for TRO that restrain the sale of certain assets, finding the sale of the asset would cause the other party immediate, irreparable harm. *E.g.*, *Three Gold Res., LLC v. Energex Power, Inc.*, No. 2:23-cv-3495, 2025 WL 572529, at *3 (S.D. Ohio Feb. 21, 2025) (restraining the sale of specific assets); *Jain v. Unilodgers, Inc.*, No. 21-cv-09747-TSH, 2024 WL 478030, at *4 (N.D. Cal. Feb. 7, 2024) (relying on state and federal law to restrain an asset purchase when "the transaction could potentially close before the resolution of a motion for a preliminary injunction" and concluding that "[a] TRO would 'preserve[ ] the status quo and prevent[ ] the irreparable loss of rights before judgment.'" (citation omitted)).

The circumstances surrounding this sale further highlight the immediate harm OCLC will suffer if the Court does not restrain the sale of BTCat. Baker & Taylor's counsel never disclosed to OCLC that an asset sale with such significant ramifications on this litigation was pending, even though a Letter of Intent had been signed. OCLC had to affirmatively reach out to Defendants to confirm the truth of these reports. OCLC did not discover that Defendants intended to use the closing of the ReaderLink transaction as a means to moot OCLC's pending preliminary injunction motion and vacate the October 6, 2025 hearing until defense counsel revealed these plans on September 17, 2025. This asset sale comes only *after* Defendants were able to persuade the Court to hold the preliminary injunction hearing in October, not August, as OCLC originally requested. And because Baker & Taylor's counsel did not disclose the sale of BTCat to OCLC, OCLC was not able to seek relief from this Court sooner, and now, only four days remain before the sale of BTCat closes. And importantly, the effect of the sale of this asset will be that OCLC must procedurally begin again with a new party to seek preliminary injunctive relief, even though the same product and the same actors behind that product continue to wrongfully obtain and use

7

WorldCat records and harm OCLC. At bottom, the effect of the sale of BTCat will have been to frustrate this Court's efforts to carefully consider OCLC's motion for preliminary injunction and thus OCLC's efforts to obtain preliminary relief.

To be clear, OCLC is not seeking a TRO to protect its ability to collect on a money judgment on exclusively legal claims by freezing all assets, which the Supreme Court prohibited in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999). OCLC is seeking a TRO to protect its ability to receive equitable relief, specifically preliminary injunctive relief, in the timeframe set by this Court. This is well within the Court's authority to grant. *See, e.g.*, *Gascho v. Glob. Fitness Holdings, LLC*, No. 2:11-cv-436, 2017 WL 2226604, at *9 (S.D. Ohio May 19, 2017); *see also Grupo Mexicano*, 527 U.S. at 325 (distinguishing preliminary injunctions in cases seeking equitable relief from legal cases seeking equitable assistance to pursue monetary relief). Importantly, OCLC advances an unjust enrichment claim about BTCat and seeks permanent injunctive relief that BTCat not be able to retain and use WorldCat records. Compl., Dkt. 1 at # 27–28; *see Abrahamson v. Jones*, No. 1:16-cv-712, 2016 WL 3855204, at *7 (S.D. Ohio July 15, 2016) (granting a TRO restraining certain assets when the plaintiff advanced an unjust enrichment claim and sought equitable relief). And granting intermediate relief, such as a TRO, "is always appropriate [when the] intermediate relief of the same character as that which may be granted finally," *i.e.*, a permanent injunction, as OCLC requests here. *Concheck v. Barcroft*, No. 2:10–cv–656, 2010 WL 4117480, at *2 (S.D. Ohio Oct. 18, 2010) (quoting *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945)) (discussing a preliminary injunction). Moreover, OCLC is not seeking a total asset freeze or to prevent the transfer of any assets unrelated to BTCat; OCLC is only seeking to restrain the sale of BTCat, the heart of OCLC's claims and requests for equitable injunctive relief. *See Walczak v. EPL Prolong, Inc.*, 198 F.3d

8

725, 730 (9th Cir. 1999) (explaining that an injunction that pauses a transaction does not "freeze" assets but merely preserves the status quo).

### C. The Balance of Equities Favors Entry of a TRO.

The irreparable harm OCLC will experience absent a TRO far outweighs harm to others. There is a risk that Baker & Taylor and ReaderLink will be harmed if the sale of BTCat is temporarily restrained, and restraining this sale may impact the overall asset transaction. However, OCLC's requested TRO will only restrain the transfer of the BTCat asset, and any other BTCat-related assets for fourteen days. *See* Fed. R. Civ. P. 65(b)(2). If the Court grants this Motion on September 25 or 26, the TRO would encompass the preliminary injunction hearing on October 6. At that time, the Court can determine whether "good cause" exists to extend the TRO until the Court can issue its ruling on the preliminary injunction motion. *See id.*

Further, any harm to Baker & Taylor and ReaderLink from a delay in closing on the BTCat transaction must be discounted. Defense counsel represented to the Court during the September 18 conference that ReaderLink is aware of this litigation, indicating ReaderLink is willing to accept at least some risk in connection with purchasing BTCat. And any harm to Baker & Taylor from complying with the TRO is "self-inflicted damage," as Baker & Taylor has known since March that OCLC is seeking a preliminary injunction and has known since April that a preliminary injunction hearing is set for October 6. *Gascho*, 2017 WL 2226604, at *10 (citation omitted). And as this Court has observed, "maintaining the status quo . . . does not create unjustifiable harm to any third parties or to [Defendants]." *Three Gold Res.*, 2025 WL 572529, at *3. Thus, any harm to either Defendants or ReaderLink by having to comply with the TRO would be "self-inflicted damage" and, as a result, such harm does not outweigh the harm to OCLC absent a TRO.

9

### D. A TRO is in the Public's Interest.

Here, it is the public interest to grant OCLC's motion for a TRO. A TRO will prevent Baker & Taylor, and deter other future litigants, from attempting to divest themselves of assets that are at the center of a party's imminent request for equitable and injunctive relief. *See HBA Motors, LLC v. Brigante*, No. 1:21-CV-624, 2021 WL 4709733, at *5 (S.D. Ohio Oct. 7, 2021). At a minimum, the public will not be harmed if a transaction for a single asset between two corporations is delayed for fourteen days. *See Three Gold Res.*, 2025 WL 572529, at * 3 ("[T]he Court does not see a potential harm to the public interest from temporarily enjoining the sale of Energex's assets."). Thus, this factor also favors a TRO.

### E. The Court Should Order OCLC to Post Only a Minimal Bond.

A TRO may only be granted initially for fourteen days. *See* Fed. R. Civ. P. 65(b)(2). In the next fourteen days, Baker & Taylor will experience slight harm. The TRO addresses a narrow band of Baker & Taylor's assets—BTCat and any related assets. There is no indication that such a restraint will harm Baker & Taylor's transaction with ReaderLink in relation to its other assets. Accordingly, this Court should order that OCLC post only a minimal bond, if any.

### CONCLUSION

For the reasons set forth above, OCLC respectfully requests that the Court issue a temporary restraining order prohibiting Baker & Taylor from selling, converting, disposing, transferring, encumbering, or secreting its BTCat asset, or any other assets related to BTCat, to a third-party for fourteen days or until this Court's ruling on OCLC's fully briefed preliminary injunction motion.

Respectfully submitted,

*/s/ Jeffrey M. Walker*
Jeffrey M. Walker (0096567)
Kathryn M. Brown (0100426)

        Traci L. Maritnez (0083989)
Brittany Silverman (0102263)
Erin Hassett (0099970)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: (614) 365-2700
Facsimile: (614) 365-2499
jeffrey.walker@squirepb.com
kathryn.brown@squirepb.com
brittany.silverman@squirepb.com
erin.hassett@squirepb.com

*Attorneys for Plaintiff OCLC, Inc*

11

## CERTIFICATE OF SERVICE

On September 22, 2025, this document was filed electronically with the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties.

*/s/ Jeffrey M. Walker*
One of the Attorneys for Plaintiff OCLC
