UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OCLC, INC., <br><br> PLAINTIFF, <br><br> V. <br><br> BAKER & TAYLOR, LLC, *ET AL.,* <br><br> DEFENDANTS. | CASE NO. 2:25-CV-309 <br><br> JUDGE: EDMUND A. SARGUS <br><br> MAGISTRATE: ELIZABETH PRESTON DEAVERS |

**DEFENDANT BAKER & TAYLOR, LLC'S BRIEF IN OPPOSITION TO PLAINTIFF OCLC, INC.'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

Defendant Baker & Taylor, LLC ("***Baker & Taylor***") respectfully submits this Brief in Opposition to Plaintiff OCLC, Inc.'s ("***OCLC***") Motion for Temporary Restraining Order ("***TRO***") (ECF No. 71) (the "***Motion***"). For the reasons set forth in the accompanying Memorandum in Support, incorporated herein by reference, the Motion should be denied.

Respectfully submitted,

/s/ *Derek P. Hartman*
Derek P. Hartman (0087869), Trial Attorney
Michael C. Cohan (0013542)
Jose Mendez Valdez (0105056)
CAVITCH FAMILO & DURKIN CO., L.P.A.
1300 East Ninth Street, Twentieth Floor
Cleveland, Ohio 44114
Telephone:    216-621-7860
Facsimile:    216-621-3415
E-mail:    mcohan@cavitch.com
         dhartman@cavitch.com
         jvaldez@cavitch.com

*Attorneys for Defendant Baker & Taylor, LLC*

/s/ *Frank E. Noyes, II  (admitted pro hac vice)*
Frank E. Noyes, II (PA Bar No. 48366)
OFFIT KURMAN, P.A.
222 Delaware Avenue, Suite 1105
Wilmington, Delaware 19801
Telephone:    302-351-0900
Facsimile:    302-351-0915
Email:    fnoyes@offitkurman.com

*Attorneys for Defendant Baker & Taylor, LLC*

1

**MEMORANDUM OF LAW**

*A TRO Blocking the Article 9 Sale by Baker & Taylor's Lender Will Cause Irreparable Harm by Forcing Baker & Taylor's Liquidation, Terminating Over 900 Jobs, and Disrupting the National Supply Chain of Books to Libraries*

**I.      MATERIAL FACTS**

OCLC has intentionally misled this Court regarding the circumstances of the pending sale of Baker & Taylor's assets. Contrary to OCLC's insinuations, this transaction is not a stratagem designed to "frustrate" OCLC's request for preliminary injunctive relief. Far from it. The transaction is a foreclosure sale compelled by Baker & Taylor's senior secured lender, CIT Northbridge Credit LLC ("***CIT***"), under Article 9 of the Uniform Commercial Code.

As the Kochar Declaration (**Exhibit "A"**) demonstrates, Baker & Taylor exhausted every reasonable avenue to secure new capital to fund operations or to find a purchaser for its business. *See* Kochar Decl., ¶¶ 7–9. Those efforts failed. Facing severe and irreversible liquidity constraints, Baker & Taylor had no option but to consent to a foreclosure and lender-driven Article 9 sale. *Id.* at ¶¶ 11–12. On September 6, 2025, CIT and ReaderLink Distribution Services, LLC ("***ReaderLink***") executed a Letter of Intent, which Baker & Taylor acknowledged, for an Article 9 sale. *Id.* at ¶ 13. That sale is scheduled to close September 26, 2025, and will consist of CIT foreclosing on substantially all of Baker & Taylor's assets, followed immediately by CIT's sale of those assets to ReaderLink. *See* Kochar Decl., ¶ 16.

CIT—not Baker & Taylor—will receive substantially all of the sale proceeds in satisfaction of its senior lien. *Id.* ReaderLink, in turn, will honor hundreds of customer contracts involving tens of millions of dollars in prepayments, and will continue Baker & Taylor's essential role as a distributor for publishers nationwide. *Id.* at ¶¶ 19, 24. ***This sale preserves going-concern value, ensures continuity of supply for over 4,000 public libraries, schools, and colleges that depend on Baker & Taylor to get their books, and saves over 900 jobs***. *Id.* at ¶¶ 23–24. ***The alternative***

2

*is immediate liquidation, a devastating disruption to the national supply chain for books and media, and irreparable harm to Baker & Taylor's employees, customers, and counterparties*. Id. at ¶¶ 23–25.

OCLC was explicitly advised of these facts. On September 19, 2025—immediately after this Court's status teleconference—undersigned counsel disclosed to OCLC's counsel that the pending transaction was an Article 9 foreclosure sale. Declaration of Frank Noyes, **Exhibit "B"**, ¶ 11. OCLC's counsel, Mr. Jeffrey Walker, specifically acknowledged that disclosure. *Id.* at ¶ 12. Yet OCLC's Motion and accompanying Declaration from OCLC's co-counsel, Ms. Kathryn Brown, entirely omit this critical fact. Instead, they perpetuate a knowingly false narrative that the sale constitutes "gamesmanship" to evade judicial review. *See* Motion, Dkt. 71, at PageID #1893. This deliberate omission is not a misunderstanding; it is a calculated attempt to mislead the Court.

The record further demonstrates that Baker & Taylor's efforts to find a buyer long predated the TRO proceedings. Since 2024, CEO Amandeep Kochar engaged in multiple discussions—including several with OCLC's own CEO, "Skip" Pritchard—about a possible acquisition by OCLC itself.[1] *See* Kochar Decl., ¶¶ 7-8. Baker & Taylor also retained a professional investment advisor to solicit potential buyers, with no success. *Id.* at ¶ 9. Only when liquidation was imminent did ReaderLink step forward. *Id.* at ¶ 12.

By agreeing to the foreclosure and lender's sale, Baker & Taylor is avoiding liquidation, and is able to maintain the business as a going concern, preserving the vast majority of Baker & Taylor employees' jobs under the ownership of ReaderLink and enabling Baker & Taylor to continue its books distribution business for publishers across the country. *See* Kochar Decl., ¶ 19.

---

[1] OCLC previously entered into a Letter of Intent and engaged extensive due diligence for a potential sale of Baker & Taylor subsidiary Bridgeall Libraries, Ltd. before terminating that LOI and then commencing this litigation.

3

With no other potential buyer having been identified, the alternative to the Article 9 transaction is piecemeal liquidation of assets by CIT (including the BTCat database), the loss of over 900 jobs, and the liquidation of Baker & Taylor's business, resulting in the disruption of the supply chain for books across the country. Baker & Taylor's closure would impact publishers and libraries across the country. *Id.* at ¶¶ 23-25.

The fact that OCLC is continuing to pursue the TRO having been advised of the nature of the transaction, and in fact attempted to conceal the context from this Court, indicates that OCLC is attempting to use the TRO Motion not to protect itself from the minor potential delay of proceedings, but rather to extinguish Baker & Taylor's last best chance to continue as a going concern. If Baker & Taylor is forced to liquidate, then OCLC will have succeeded in eliminating a competitor in the online records cataloging market, without ever having established any valid basis for the claims it is asserting.

OCLC's purportedly "narrow" request for a 14-day TRO directed at the "BTCat asset" and other vague "assets related to BTCat" is a mirage. As established in the Kochar Declaration, Baker & Taylor lacks the authority to restructure the foreclosure sale or dictate carve-outs to satisfy OCLC's litigation strategy. *Id.* at 22. BTCat is an integrated component of Baker & Taylor's technology infrastructure and cannot be severed from the sale. Moreover, the timing of the sale is controlled exclusively by CIT and ReaderLink, not Baker & Taylor. *Id.* at ¶ 14. Any delay—even two weeks—creates an intolerable risk that the transaction will collapse, leaving only liquidation. OCLC knows this yet conceals it from the Court. *Id.* at ¶ 21.

Equally misplaced are OCLC's insinuations that Baker & Taylor or its counsel acted improperly in disclosing the sale. The Letter of Intent was signed on September 6, 2025, and publicly announced by ReaderLink on September 11. *See* Motion, Ex. A, Dkt. 71-1. Far from

4

concealing the transaction, Baker & Taylor's counsel disclosed its nature at the first appropriate opportunity, well before OCLC filed its Motion. *See* Noyse Decl. (Ex. B), at ¶¶ 11-13. OCLC also criticizes Baker & Taylor and its counsel on the basis that counsel pointed out during the meet and confer that the sale of all Baker & Taylor's assets would render the preliminary injunction moot or ineffective, since the new owner of the assets would not be before the court or subject to any such TRO entered by the Court.[2] Yet this same fact is one of the premises for OCLC's Motion. *See* Motion, Dkt. 71 at PageID #1898 (noting that the effect of the sale would moot an injunction).

In reality, OCLC's Motion is not about protecting its legal interests. It is about eliminating Baker & Taylor as a competitor in the bibliographic cataloging market. By pressing a TRO that it knows threatens to derail a lender-mandated foreclosure sale, OCLC seeks to force liquidation, thereby extinguishing Baker & Taylor's final opportunity to survive as a going concern. That anticompetitive purpose—not any genuine risk of irreparable harm—drives OCLC's Motion.

## II. LAW AND ARGUMENT

### A. TROS ARE AN EXTRAORDINARY REMEDY REQUIRING A COMPELLING SHOWING.

In order to obtain a temporary restraining order, the moving party must establish the same four factors as necessary for a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without

---

[2] The Brown Declaration misstates the comments of Baker & Taylor's counsel in several other respects as well. In a meet and confer on September 17, Counsel agreed the Court would need to be advised of the transaction, but stated it was not yet clear the transaction would proceed to closing and suggested the parties touch base when more information could be clarified. *See id.* at ¶ 8. OCLC decided not to wait and requested a status teleconference. *See id.* Ms. Brown also incorrectly states the Baker & Taylor counsel declared Baker & Taylor would seek to postpone the scheduled October 6 hearing. In fact, counsel only stated that Baker & Taylor *might* seek that relief. *See id.* at ¶ 7. So far, Baker & Taylor has not asked for the hearing to be postponed. In any event, the scheduled hearing should include arguments on Defendants' partial motions to dismiss the Complaint, which will not be moot.

5

the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (internal quotation marks omitted); *see Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007) (applying preliminary injunction factors to review of temporary restraining order). This District has held that the "standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *Doe v. Univ. of Cincinnati*, No. 1:15-CV-600, 2015 WL 5729328, at *1 (S.D. Ohio Sept. 30, 2015).

In addition, the party moving for a TRO must "necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Israfil v. Jeffreys*, No. 2:11-CV-385, 2013 WL 494563, at *2 (S.D. Ohio Feb. 7, 2013) (Sargus, J.) (quoting *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir.2010)). "This is because '[t]he purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends [he] was or will be harmed through the illegality alleged in the complaint.'" *Colvin*, 605 F.3d at 300 (*quoting Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)).

In this case, the most decisive factor is the relative harm between Baker & Taylor, its employees and its customers on the one hand and OCLC on the other hand. There is no question here that the resulting harm to Baker & Taylor of granting a temporary injunction far outweighs the alleged harm to OCLC of the delay in any preliminary injunction hearing. Notably, as discussed herein, none of the cases relied upon by OCLC arise in the context of an Article 9 sale or are in

any way analogous to the present case or support the extraordinary relief request by OCLC.[3]

### 1.     OCLC Cannot Demonstrate a Likelihood of Success on the Merits

As discussed in detail in Baker & Taylor's Motion to Dismiss and Opposition to OCLC's Motion for a Preliminary Injunction (ECF Nos. 34, 47, and 62) – which are incorporated by reference - OCLC has not shown that it is likely to succeed in its claims. However, in a motion for a temporary restraining order, the most important consideration is whether Plaintiff has shown the need for a TRO based on a showing of immediate and irreparable harm, and whether any such harm is outweighed by harm to Defendants and other parties in the event the temporary restraining order is granted.

---

[3] For example, *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 730 (9th Cir. 1999) is not controlling and, in any event inapplicable. In that case, a minority shareholder sued the directors of a corporation derivatively alleging that a stock sale was unfair to the minority shareholders and a breach of the defendants' fiduciary duties. The court granted a preliminary injunction preventing the transaction based on evidence that transaction was inherently unfair to minority shareholders and that defendants had "engaged in a pattern of improperly dispersing of and transferring assets." Nothing of the sort has been shown here. And, in Walczak, unlike here, there was no claim that the preliminary injunction would result in the complete destruction of the defendant's business, and the court discredited the defendants' arguments that the preliminary injunction would cause $2 million in tax liability.

Likewise, *HBA Motors, LLC v. Brigante*, No. 1:21-CV-624, 2021 WL 4709733, at *5 (S.D. Ohio Oct. 7, 2021) is totally inapplicable and does not support OCLC's argument that the requested TRO in this case is in the public interest. That case involved a brazen scheme where Plaintiff was fraudulently induced to wire defendants almost $1 million to purchase luxury automobiles which defendants never delivered. The court granted a preliminary injunction based on substantial evidence of fraud, including the fact that the defendants, who had disappeared, were wanted by FBI for wire fraud and money laundering. Unsurprisingly, in that case, the court found it was in the public interest to enjoin Defendants from using, disposing of, or distributing Plaintiff's assets because "the temporary restraining order may deter others from orchestrating fraudulent schemes." Nothing of this sort has been alleged or shown here.

> **2.    A TRO Would Trigger Immediate Irreparable Harm to Baker & Taylor, Including the Loss of Over 900 Jobs.**

As discussed further below, OCLC fails to make a showing of any immediate and irreparable harm requiring a TRO. But setting that aside, the balance of equities and harm is massively one-sided in favor of denying the TRO. If the sale is delayed, Baker & Taylor expects that CIT will immediately cut off funding to Baker & Taylor. Baker & Taylor's next payroll is Friday, September 26, the day closing is scheduled. If the sale is enjoined, Baker & Taylor expects that payroll will not be met for its 900-plus employees.

Further, since no other realistic option has been identified that would allow Baker & Taylor's business to continue absent the sale, Baker & Taylor would be forced to liquidate its assets, which primarily consist of its inventory of books for public libraries. With no organization available to continue book distribution, Baker & Taylor's customers would stop getting shipments, and the inventory would instead be auctioned off. Since many of Baker & Taylor's customers have prepaid for books, the libraries would suffer the ultimate harm, with the distribution process gone and no way to recoup their prepayments.

In addition, the contemplated transaction with ReaderLink will save the employment of the great majority of Baker & Taylor's employees, who are expected to be employed by ReaderLink. But if the transaction is enjoined, over 900 jobs at Baker & Taylor would be lost as the company is liquidated. This would in turn result in the disruption of the supply chain for books across the country for over 4,000 public libraries, schools, and colleges that depend on Baker & Taylor to get their books. Kochar Decl. ¶ 24. In short, contrary to OCLC's contention that the TRO will preserve the status quo (Motion, Dkt. 71 at at PageID #1893, #1896, #1898, #1899), the TRO would, in fact, radically and fundamentally alter the status quo.

These devastating harms to third parties caused by the requested TRO, if granted, will far

outweigh any alleged marginal harm to OCLC caused by a short delay in the proceedings. *See Cavalier Distrib. Co., Inc. v. Lime Ventures, Inc.*, No. 23-3283, 2023 WL 9052002, at *4 (6th Cir. Dec. 28, 2023) (affirming denial of preliminary injunctive relief where harm to third parties outweighed alleged harm to plaintiff's goodwill); *Damon's Restaurants, Inc. v. Eileen K. Inc.*, No. 2:04CV1028, 2005 WL 8161456, at *3 (S.D. Ohio Oct. 7, 2005) ("The unemployment of approximately 200 individuals constitutes substantial harm, which significantly outweighs any evidence of harm heretofore presented by Plaintiff.")

### 3. Entering the TRO Would Harm Customers, Disrupt the National Supply Chain, and Undermine the Public Interest

For the same reasons, and by extension, entering the TRO would have a clearly negative impact on the public interest. *See Cavalier Distrib. Co., Inc.*, 2023 WL 9052002, at *4 (a preliminary injunction that would harm third parties and threaten the availability of defendants' product in the market was not in the public interest).

Baker & Taylor's publisher customers have significant inventories of books that Baker & Taylor holds, and which the publishers already paid for. If Baker & Taylor is liquidated, there will be no way to distribute those books, and the publishers would not be able to recoup their costs.

OCLC relies on *Jain v. Unilodgers, Inc.*, No. 21-cv-09747-TSH, 2024 WL 478030, at *4 (N.D. Cal. Feb. 7, 2024) as an example of a Court enjoining the sale of a business to "preserve the status quo" by preventing a transaction that would "drain [the defendant] of all assets." *See* Motion, Dkt. 71 at PageID #1899. *Jain* is distinguishable and only confirms that the TRO should not be granted here. In *Jain*, the plaintiff was a shareholder in the defendant corporation and alleged that her shares were stolen by the defendant, and sought return of her shares. *Jain*, 2024 WL 478030, at *1. When the defendant corporation entered into a transaction to sell all of its assets to a foreign entity, the court granted a TRO to prevent the asset sale in order to "preserve the status quo" by

9

preventing a transaction that would "drain [the defendant] of all assets" and destroy the value of plaintiff's shares. *Id.* at ¶¶ 11, 20. Thus, the TRO was necessary in that case to preserve the value of plaintiff's shares in the defendant corporation, which in that case would have been destroyed if the corporation's assets were sold. The court in *Jain* acted to prevent the dissipation of defendant's value, which - in that case - would have occurred if the assets were sold.

Here, the opposite is true. In this case, the only way to preserve the value of Baker & Taylor and its assets is to allow the sale to go forward, since the only alternative is the liquidation of Baker & Taylor. *See Jain*, 2024 WL 478030 at *6–7 (noting that preventing the transaction served to prevent "liquidating of the company").

*Jain* is further instructive as to the importance of considering the public harm resulting from entering an injunction. In *Jain*, the court noted that the public harm factor is neutral when the parties to the litigation are affected. *Id.* at *5. Here, as the Kochar Declaration establishes, the impact of the requested TRO extends to Baker & Taylor customers who have prepaid, and so the impact on third parties and the public must be considered.

In addition, given that entering the TRO would almost certainly end the prospects of closing on the asset sale, which would lead to the liquidation of Baker & Taylor, it would be harmful to the public interest in that it would enhance OCLC's monopoly position in the market for online cataloging records, for the reasons stated in Baker & Taylor's Opposition to the Preliminary Injunction motion. Opp. to Preliminary Injunction at 60–61 (*citing Cavalier Distrib. Co. v. Lime Ventures*, 2023 WL 9052002, at *4).

### 4. OCLC's "Irreparable Harm" Claim Collapses into Mere Inconvenience and Delay

In the face of the catastrophic consequences that would result from enjoining the Article 9 sale, the only harm that OCLC can articulate if the TRO is rejected is marginal additional delay

10

and legal costs.

The purported delay, however, does not impose any new form of harm, but simply extends the time until the preliminary injunction (which Baker & Taylor contends lacks merit) can be addressed. Since OCLC chose not to seek any TRO at the time the complaint was filed, it recognized and has proceeded under a schedule in which months would go by before the possibility of any injunctive relief could be entered. OCLC specifically proposed a schedule that included extensive discovery prior to completing briefing on the Preliminary Injunction motion. While the initial 5 months of delay was acceptable to OCLC, the potential delay of another one to two months while ReaderLink can be served is somehow unacceptable.

Moreover, delay in adjudicating the preliminary injunction claims is all the more insufficient because OCLC's preliminary injunction fails to establish any legitimate irreparable harm.[4] As confirmed in the Motion, OCLC's Motion for a Preliminary Injunction only identifies two aspects of alleged irreparable harm: (1) lost customers who have moved their cataloging business to Baker & Taylor, and (2) "diminution in value" of the WorldCat repository and loss of

---

[4] OCLC acknowledges that under *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), this Court lacks authority to grant a TRO to preserve OCLC's ability to collect a money judgment based on legal claims. But, while courts have interpreted *Grupo Mexicano* not to apply when a requested TRO is based on equitable claims, rather than legal claims, the movant must still show that the TRO relates to the equitable relief sought in the complaint, and that the TRO is "of the same character as that which may be granted finally." *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945). The only arguable equitable claim in the complaint is OCLC's unjust enrichment claim, which is pleaded not as a purely equitable claim but as an alternative to OCLC's breach of contract claim. The complaint does not seek, as ultimate relief, the return of any property alleged to be unjustly in B&T's possession, and OCLC thus fails to explain how its requested TRO preventing the Article 9 sale, will preserve the status quo for its unjust enrichment claim or is of the "same character" as the relief requested. The cases OCLC cites are thus distinguishable on that basis. *See, e.g., Concheck v. Barcroft*, No. 2:10–cv–656, 2010 WL 4117480, at *2 (S.D. Ohio Oct. 18, 2010) (granting preliminary injunction preventing transfer of funds wrongfully obtained by defendants as part of an investment fraud, where ultimate relief sought in complaint was return of such funds based on unjust enrichment theory).

11

goodwill. As discussed in detail in Baker & Taylor's Opposition, neither of these constitute a legitimate bases for irreparable harm. The alleged loss of customers amounts to 26 customers out of 10,000 customers and another 10 customers OCLC claims are at risk of leaving, which together constitute 0.36% of the customer base, plus any lost customers are obviously compensable through damages and so do not establish any irreparable harm. *See* Opp. to Preliminary Injunction at 56. The alleged diminution (referred to in the Complaint as "diminishment" of WorldCat) is purely speculative, given that OCLC makes no claim that the quality or quantity of records in WorldCat has been reduced in any way by Baker & Taylor's alleged misconduct. *Id.* at 57. Rather, the "diminution" is based on the fact that BTCat is somehow becoming a threat to WorldCat – even though WorldCat continues to dwarf BTCat in terms of size. *Id.* at 57–56. Likewise, the loss of goodwill (i.e., reputation) claimed by OCLC is nothing more than an amorphous speculative notion that BTCat's presence in the market reduces OCLC's reputation as the dominant provider of cataloging records. *Id.* at 54.

Given the tenuous nature of the irreparable harm OCLC is presenting in support of its preliminary injunction motion, any additional delay in the preliminary injunction proceedings purportedly to add ReaderLink as a party, is not a sufficient basis to claim irreparable harm. After all, from the outset of this case, OCLC has proceeded with an extensive and lengthy period of discovery prior to adjudication of its preliminary injunction motion and has been willing to proceed knowing it would be months before the injunction was determined.

In fact, whatever urgency OCLC may have perceived at the outset of the case has actually been significantly reduced and is currently less than it was at the time of filing. During discovery, it was established that two of the four aspects of injunctive relief OCLC seeks are already moot. The central claim in the Complaint is that WorldCat records provided to Baker & Taylor's former

subsidiary Bridgeall were transferred to Baker & Taylor and made available to Baker & Taylor customers by being uploaded into the BTCat and community pool repositories. Compl., Dkt. 1 at ¶¶ 81–87. As it turns out, the path by which records were incorporated into the repositories has been shut down for almost two years. *See* Opp. to Preliminary Injunction at 57. Accordingly, it poses no harm.

The circumstances here are fundamentally different than those presented in *Three Gold Res., LLC v. Energex Power, Inc.*, No. 2:23-cv-3495, 2025 WL 572529, at *3 (S.D. Ohio Feb. 21, 2025), relied on by OCLC. In that case, plaintiff sought a TRO only after plaintiffs had prevailed on the merits of their claim for unpaid royalties on default — three days after which the defaulting defendant entered into a transaction to sell substantially all of its assets. Likening the case to one involving "fraudulent conveyances," *Three Gold Res., LLC*, 2025 WL 572529, at *3 (citing *HBA Motors, LLC v. Brigante*, No. 1:21-CV-624, 2021 WL 4709733, at *5 (S.D. Ohio Oct. 7, 2021), this Court found that the sale "may have the effect of obstructing, delaying, or otherwise thwarting [Plaintiffs'] efforts to recover damages owed to them under this Court's entry of default judgment against [Defendant]." *Id*.

In stark contrast to the movant in *Three Gold*, OCLC has not even shown it is likely to succeed — much less that it *already prevailed* — on its claims. Moreover, there is no hint here, much less a showing, that B&T is attempting to move assets to a third party to thwart the enforcement of a judgment. Contrary to OCLC's disingenuous position, the contemplated sale is an Article 9 sale by a secured creditor of B&T, the terms and timing of which is outside B&T's control. And OCLC has been on notice *for years* of the lender's security interest in the assets – including the BTCat records that are the subject of its claims.

In sum, because two of the four aspects of injunctive relief are moot, and the remaining

13

bases for irreparable harm OCLC has identified are tenuous, OCLC's claim of prejudice from additional delay in the hearing is not persuasive and does not merit entry of a TRO.

OCLC's suggestion that its proposal only concerns "BTCat, or any other assets related to BTCat," somehow mitigates the harm to Baker & Taylor is likewise unavailing. Baker & Taylor has no ability to restructure the sale to carve out sectors of the business or dictate new terms to CIT. Kochar Decl., ¶ 18. Further, even though OCLC contends it seeks only a limited TRO, the BTCat software and assets cannot be carved out from the sale. Although BTCat is a small part of Baker & Taylor's business, the BTCat utility is a core technology driving Baker & Taylor's business.

### a. OCLC's Alleged Harm Is Theoretical at Best and Mitigated in Practice

In addition, Baker & Taylor has proposed a means to mitigate any potential alleged harm that could arguably result from the delay in adding an additional defendant. Baker & Taylor has initiated (confidential) discussions with OCLC about a potential stipulation to preserve the status quo, in which the proposed buyer, ReaderLink, could be included. *See* Noyes Decl., ¶ 16. To the extent any such terms could be agreed to, any purported, immediate need for OCLC to join ReaderLink as a defendant in this action would be obviated.

### B. OCLC MUST POST A BOND TO PROTECT AGAINST THE ENORMOUS HARM A TRO WOULD CAUSE

As OCLC acknowledges, under Rule 65(c), the Court is required to consider whether it should, as a condition to the entry of a TRO, order OCLC to post a bond in "an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." As a mere afterthought in its TRO Motion, OCLC dismissively states that no bond should be required because any harm to Baker & Taylor would be "slight" if

the sale is enjoined for 14 days. But as established in the Declaration of Mr. Kochar, any delay is likely to be catastrophic. *See* Kochar Dec., ¶¶ 21–25. As OCLC well knows (but failed to disclose to the Court), the sale is an Article 9 foreclosure sale. Baker & Taylor controls neither the timing nor the terms. If the asset sale to ReaderLink is not consummated, Baker & Taylor will be exposed to immediate liquidation of its assets, potentially in piecemeal fashion, which will put hundreds out of work and destroy the value of the business. In the event the Court were to enter the TRO, which Baker & Taylor vigorously contends is not supported by the facts or law and should be denied, Baker & Taylor should be entitled to petition the Court for an order requiring OCLC to post a bond sufficient to protect Baker & Taylor from the catastrophic harm that could result.

### III.    CONCLUSION

In sum, OCLC's Motion is predicated on a knowingly false narrative designed to obscure the reality that the Baker & Taylor asset sale is not voluntary "gamesmanship," but rather a lender-driven Article 9 foreclosure sale over which Baker & Taylor has no control. The relief OCLC seeks would not preserve the status quo but would instead impose catastrophic harm on Baker & Taylor, its 900-plus employees, its publisher and library customers, and the broader public, while conferring no meaningful benefit to OCLC beyond a short procedural delay in this litigation. The balance of equities is overwhelmingly against the entry of a TRO, as the requested injunction would extinguish Baker & Taylor's only opportunity to remain a going concern and force an immediate liquidation, eliminating jobs and disrupting the nationwide supply chain for books. OCLC's attempt to exploit this process to eliminate a competitor should not be countenanced. For all these reasons, and as supported by the record and the governing standards for temporary injunctive relief, OCLC's Motion for TRO must be denied.

Respectfully submitted,

| | |
|---|---|
| */s/ Derek P. Hartman* | /s/ Frank E. Noyes *admitted pro hac vice)* |
| Derek P. Hartman (0087869), Trial Attorney | Frank E. Noyes, II (PA Bar No. 48366) |
| Michael C. Cohan (0013542) | OFFIT KURMAN, P.A. |
| CAVITCH FAMILO & DURKIN CO., L.P.A. | 222 Delaware Avenue, Suite 1105 |
| 1300 East Ninth Street, Twentieth Floor | Wilmington, Delaware 19801 |
| Cleveland, Ohio 44114 | Telephone: 302-351-0900 |
| Telephone: 216.621.7860 | Facsimile: 302-351-0915 |
| Facsimile: 216.621.3415 | Email: fnoyes@offitkurman.com |
| Email: mcohan@cavitch.com | nafiz.cekirge@offitkurman.com |
| dhartman@cavitch.com | |
| *Attorneys for Defendant Baker & Taylor, LLC* | *Attorneys for Defendant Baker & Taylor, LLC* |

## CERTIFICATE OF SERVICE

On September 24th, 2025, this document was filed electronically with the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties.

*/s/ Derek P. Hartman*
Derek P. Hartman (0087869), Trial Attorney
*One of the Attorneys for Defendant Baker & Taylor, LLC*