EXHIBIT B

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| OCLC, INC., | CASE NO. 2:25-CV-309 |
| PLAINTIFF, | JUDGE: EDMUND A. SARGUS |
| V. | MAGISTRATE: ELIZABETH PRESTON DEAVERS |
| BAKER & TAYLOR, LLC, *ET AL.*, | |
| DEFENDANTS. | |

## DECLARATION OF FRANK E. NOYES, ESQ. IN SUPPORT OF DEFENDANT BAKER & TAYLOR, LLC'S BRIEF IN OPPOSITION TO PLAINTIFF OCLC, INC.'S MOTION FOR A TEMPORARY RESTRAINING ORDER

I, Frank E. Noyes, Esq., declare the following pursuant to 28 U.S.C. § 1746:

1. I am over 18 years old, of sound mind, and competent to testify to the matters contained in this Declaration. I have personal knowledge of the facts stated in this Declaration.

2. I am a principal attorney at Offit Kurman, P.A. and co-counsel for Defendants Baker & Taylor, LLC ("***Baker & Taylor***") and Bridgeall Libraries Ltd. ("***Bridgeall***" and with Baker & Taylor, the "***Defendants***"). I have been admitted *pro hac vice* to appear before this Court in the above-captioned matter.

3. I am providing this Declaration to correct inaccurate assertions made by Plaintiff OCLC, Inc.'s ("***OCLC***") counsel in OCLC's Motion for a Temporary Restraining Order (ECF No. 71) (the "***TRO Motion***") and exhibits attached thereto.

4. On September 17, 2025, I participated in a meet and confer with OCLC's counsel (the "***First Conference***"). During this conference, OCLC's counsel explained that OCLC had learned about a prospective transaction with ReaderLink Distribution Services, LLC ("***ReaderLink***") (the "***ReaderLink Transaction***") from an announcement made only by a trade publication called Publishers Weekly. OCLC's counsel made it clear that the purpose of the First Conference was for OCLC to gather more information about the ReaderLink Transaction to understand how it could potentially impact an October 6, 2025, hearing on OCLC's Motion for a Preliminary Injunction (the "***PI Hearing***").

1

5.    Because I was not involved in the negotiations with ReaderLink, and what I did know was from attorney-client communications, I was able to do little more than confirm my understanding that the information in the Publishers Weekly announcement was accurate.

6.    During the First Conference, OCLC's counsel suggested the timing of the sale was suspicious and could constitute an attempt by Baker & Taylor to delay or interfere with OCLC's efforts to obtain a preliminary injunction at the PI Hearing. Critically, at the time, I knew that was not true, but I was not authorized to disclose that the sale was in fact an Article 9 foreclosure controlled by Baker & Taylor's lender, CIT Northbridge Credit, LLC ("**CIT**").

7.    During the First Conference, I did not affirmatively state that Baker & Taylor would propose to seek postponement of the PI Hearing. Rather, I pointed out that the sale of assets would likely make a hearing and potential preliminary injunction against Baker & Taylor moot, since Baker & Taylor would no longer own or control the asset at issue, being BTCat. I also suggested that it might be possible to bring ReaderLink into discussions about a potential stipulation for a "standstill" agreement, although I also confirmed I did not represent ReaderLink and was not authorized to speak for it.

8.    During the First Conference, counsel for the parties discussed - and agreed - that at some point the Court would need to be advised of the potential ReaderLink Transaction. Counsel did not agree when that disclosure should occur. On behalf of Baker & Taylor, I took the position that I had not yet determined when the right time would be to do that, since it was not clear if the ReaderLink Transaction would be consummated. I informed OCLC's counsel I was prepared to provide updates on the ReaderLink Transaction as they became available and suggested that counsel speak again early the following week. While OCLC's counsel was noncommittal; shortly thereafter, OCLC decided not to wait, and requested an "emergency status conference" with the Court.

9.    On September 18, 2025, OCLC's counsel announced to the Court their intention to pursue a TRO to enjoin the transaction, and a briefing schedule was set by the Court.

10.    A second meet and confer among counsel was set for September 19, 2025 (the "**Second Conference**") to discuss a potential stipulation that could obviate the need for the TRO briefing or the PI Hearing.

11.    During the Second Conference, I advised OCLC's counsel that I was now authorized to disclose that the ReaderLink Transaction was in fact an Article 9 foreclosure sale, that Baker & Taylor did not control the timing or terms of the sale, and that the timing, like the other terms, are dictated by Baker & Taylor's lender, CIT, and ReaderLink.

12.    OCLC's counsel Jeffrey Walker and Kathryn Brown were both present on the phone call, and Mr. Walker specifically acknowledged this disclosure. While this information was disclosed on an "Attorneys-Eyes' Only" basis; I specifically confirmed OCLC's general counsel was permitted to be privy to this information under the existing Stipulated Protective Order (ECF No. 22).

13. I also again pointed out that the sale of all Baker & Taylor assets would likely render the preliminary injunction moot or ineffective, since the new owner of the assets would not be before the Court or subject to any such TRO entered by the Court. Given my disclosures, there is no question OCLC understood that Baker & Taylor did not orchestrate the sale or determine the timing of the sale, or that the timing of the sale could reasonably be characterized as "gamesmanship" on the part of Baker & Taylor.

14. Ms. Brown's Declaration incorrectly states that I declared Baker & Taylor would seek to postpone the PI Hearing. In fact, I only stated that Baker & Taylor *might* seek that relief, while also pointing out that the Court might also postpone the hearing if the transaction was consummated.

15. Since the Second Conference, counsel for the parties have exchanged emails concerning potential stipulations addressing the preliminary injunction OCLC seeks on a confidential basis, and I have confirmed to OCLC's counsel that although I (still) do not represent ReaderLink, I have been authorized to convey proposals that it would consider participating in even though it is not a party.

I declare under penalty of perjury the foregoing is true and correct to the best of my knowledge and belief.

Executed on September 24, 2025.

_____
Frank E. Noyes