# Exhibit D

Case 2:25-cv-00309-EAS-EPD Doc #: 109-5 *SEALED* Filed: 11/04/25 Page: 2 of 14 PAGEID #: 897
Case 2:25-cv-00309-EAS-EPD Doc #: 61 *SEALED* Filed: 09/26/25 Page 2 of 14 PAGEID #: 589

ATTORNEYS' EYES ONLY PURSUANT TO PROTECTIVE ORDER

Page 1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE SOUTHERN DISTRICT OF OHIO
2              EASTERN DIVISION
3         ~~~~~~~~~~~~~~~~~~~~
4  OCLC, INC.
5         Plaintiff,
6
7     vs.           Case No.  2:25-cv-0039
8
9  BAKER & TAYLOR, LLC; BRIDGEALL LIBRARIES, LTD.,
10        Defendants.
11
12        ~~~~~~~~~~~~~~~~~~~~
13         (ATTORNEYS' EYES ONLY
14      PURSUANT TO PROTECTIVE ORDER)
15        ~~~~~~~~~~~~~~~~~~~~
16
17         30(b)(6) Deposition of:
18           DANIEL R. JOHNSON
19
              August 15, 2025
20              11:04 a.m.
21             Taken at:
              Offit Kurman
22     227 West Trade Street, Suite 2600
          Charlotte, North Carolina
23
24       Joyce Lynn Shannon, RPR
25

ATTORNEYS' EYES ONLY PURSUANT TO PROTECTIVE ORDER

```
                                                  Page 2
 1  APPEARANCES:
 2
 3      On behalf of the Plaintiff:
 4          Squire Patton Boggs (US), LLP, by
 5          JEFFREY M. WALKER, ESQ.
 6          KATHRYN M. BROWN, ESQ.
 7          2000 Huntington Center
 8          41 South High Street
 9          Columbus, Ohio   43215
10          (614) 365-2700
11          jeffrey.walker@squirepb.com
12          kathryn.brown@squirepb.com
13
14      On behalf of the Defendant:
15          Offit Kurman, by
16          FRANK NOYES, II, ESQ.
17          222 Delaware Avenue, Suite 1105
18          Wilmington, Delaware   19801
19          (267) 338-1381
20          fnoyes@offitkurman.com
21              AND
22
23
24
25
```

```
                                                  Page 3
 1  APPEARANCES, Continued:
 2
 3      Cavitch, Familo & Durkin, by
 4          DEREK P. HARTMAN, ESQ.
 5          1300 E. 9th Street, 20th Floor
 6          Cleveland, Ohio   44114
 7          (216) 621-7860
 8          dhartman@cavitch.com
 9
10              ~ ~ ~ ~ ~
11
12  ALSO PRESENT:
13      Julie Presas
14
15              ~ ~ ~ ~ ~
16
```

```
                                                  Page 4
 1          TRANSCRIPT INDEX
 2
 3  APPEARANCES............................   2
 4
 5  INDEX OF EXHIBITS .....................   5
 6
 7  EXAMINATION OF DANIEL R. JOHNSON
 8  By Mr. Walker..........................   8
 9
10  REPORTER'S CERTIFICATE................. 214
11
12  EXHIBIT CUSTODY:
13  EXHIBITS RETAINED BY COURT REPORTER
```

```
                                                          Page 5
 1          INDEX OF EXHIBITS
 2  NUMBER        DESCRIPTION              MARKED
 3  Exhibit 3   Complaint for Injunctive .....  45
                Relief and Damages
 4
    Exhibit 9   September, 2022 E-mail Chain  125
 5              Between Travis Kelley and
                Nancy Jo Brown
 6
    Exhibit 14  08-30-2023 E-mail Chain       181
 7              Between Susan Love,
                Support@collectionhq.com and
 8              Others
 9  Exhibit 40  Notice of Deposition..........  37
10
    Exhibit 45  Follow-up Questions           199
11              Regarding OCLC Injunction
                and Litigation
12
    Exhibit 47  WinWire B&T Executive Review   65
13
14  Exhibit 63  Motion for Preliminary        207
                Injunction Re:  OCLC versus
15              Baker & Taylor, LLC, and
                Bridgeall Libraries, Ltd.
16
    Exhibit 64  LinkedIn Profile of Daniel ... 11
17              R. Johnson
18  Exhibit 65  Notice of Deposition           38
19
20  Exhibit 67  04-08-2019 E-mail Chain.....  118
                Between Dan Johnson, James
21              Smith, Scott Schuster and
                Scott Crawford Re:  BTCAT
22              Subscription Models
23  Exhibit 68  09-09-2024 E-mail from Julia . 134
                Ramsbald to Travis Kelley
24
25
```

ATTORNEYS' EYES ONLY PURSUANT TO PROTECTIVE ORDER

Page 6

| | | |
|---|---|---|
| 1 | Exhibit 69 | February and March, 2025 ..... 139 E-mail Chain Between Dan Fish, Steven Legowski, Brad Lucas and Others |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | Exhibit 70 | WorldCat Data and Licensing .. 144 Agreement with Baker & Taylor, LLC |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | Exhibit 71 | Request from OCLC Regarding .. 150 Number of Documents Extracted, With Attached Responses and Report |
| 10 | | |
| 11 | | |
| 12 | Exhibit 72 | Total Downloads from OCLC by . 158 BTCat Via 2019 License |
| 13 | Exhibit 73 | 02-12-2025 and 02-14-2025 .... 166 E-mail Chain Between Travis Kelley and BTCat Onboarding |
| 14 | | |
| 15 | Exhibit 74 | 06-01-2020 and 06-04-2020 .... 171 E-mail Chain Between Scott Schuster, Amandeep Kochar, Dan Johnson and Others |
| 16 | | |
| 17 | | |
| 18 | Exhibit 75 | List Regarding Customers of .. 175 collectionHQ |
| 19 | Exhibit 76 | 06-03-2025 E-mail from ....... 183 Noreply@collectionhq.com to Ollie Downs |
| 20 | | |
| 21 | Exhibit 77 | May, 2021 E-mail Chain ....... 186 Between James Smith, Trisha Vreeman, Whitney Bretzman and Others |
| 22 | | |
| 23 | | |
| 24 | Exhibit 78 | 05-10-2023 Teams Meeting ..... 191 Invitation List |
| 25 | | |

Page 7

| | | |
|---|---|---|
| 1 | Exhibit 79 | 01-17-2021 and 01-18-2021 .... 193 E-mail Chain Between Eric Throndson, Mark Kendall, Kathryn Harnish, Whitney Bretzman and Others |
| 2 | | |
| 3 | | |
| 4 | Exhibit 80 | 11-26-2024 Microsoft Copilot . 196 Search by Dan Johnson |

Page 8

    1    DANIEL R. JOHNSON, of lawful age, called
    2  for examination, as provided by the Federal
    3  Rules of Civil Procedure, being by me first
    4  duly sworn, as hereinafter certified, deposed
    5  and said as follows:
    6         EXAMINATION OF DANIEL R. JOHNSON
    7  BY MR. WALKER:
    8    Q.   So I'm Jeff Walker.  And I'm here
    9  today representing OCLC, Inc.
    10        Could you please state your full
    11  name for the record?
    12   A.   Daniel Roy Johnson.
    13   Q.   And do you understand that you're
    14  under oath?
    15   A.   Yes.
    16   Q.   And do you understand that the oath
    17  has the same meaning and effect here as it
    18  would if you were testifying in Court?
    19   A.   Yes.
    20   Q.   Okay.  Is there anything that might
    21  affect your ability to answer the questions
    22  we'll be asking you today?
    23   A.   No.
    24   Q.   Okay.  So no medical conditions
    25  that might prevent you from answering?

Page 9

    1   A.   No.
    2   Q.   No medications or other substances?
    3   A.   No.
    4   Q.   What is your current address?
    5   A.   [REDACTED]
    6        .
    7   Q.   And what is your date of birth?
    8   A.   [REDACTED].
    9   Q.   So I'm sure Counsel has spoken with
    10  you a little bit about this, but I wanted to
    11  lay out some ground rules to help this go as
    12  smoothly as possible.
    13        So the Court Reporter, sitting next
    14  to both of us, is taking down everything that
    15  you say, so when you provide a response, you
    16  must respond to my question audibly and with
    17  words.  So when you shake your head, she won't
    18  capture that, or say huh-uh, it's not clear.
    19   A.   Okay.
    20   Q.   And then please wait for me to
    21  finish asking you a question, and then I will
    22  do the same when you're providing a response.
    23   A.   Okay.
    24   Q.   If you don't hear or don't
    25  understand a question, let me know, and I'll

Veritext Legal Solutions
www.veritext.com                                          888-391-3376

ATTORNEYS' EYES ONLY PURSUANT TO PROTECTIVE ORDER

Page 10

1 repeat it or provide clarification.
2      If you answer a question, I will
3 assume you understood the question.
4      Is that fair?
5   A.  Okay.
6   Q.  If you need a break, let me know.
7 I just ask that you wait until the pending
8 question, if any, is answered.
9   A.  That works.
10  Q.  And you have a Lawyer here today,
11 and your Lawyer will sometimes object to my
12 questions, but you still must answer my
13 questions after he's stated his objection.  The
14 exception to that is if your Lawyer instructs
15 you not to answer based on privilege or other
16 grounds.
17      Have you ever had your deposition
18 taken before?
19  A.  Yes.
20  Q.  Okay.  And for what case?
21  A.  It was a sexual harassment case
22 over 20 years ago.
23  Q.  Okay.  And were you a party in that
24 case?
25  A.  I was an observer to the offense.

Page 11

1   Q.  Okay.  So you were a Witness?
2   A.  Yes.
3   Q.  And have you ever had your
4 deposition taken in any other cases?
5   A.  No.
6   Q.  Have you ever testified in Court?
7   A.  No.
8   Q.  Okay.  We're going to mark as an
9 Exhibit -- this is Exhibit 64.
10     - - - - -
11     (Thereupon, Plaintiff's Exhibit 64,
12     LinkedIn Profile of Daniel R.
13     Johnson, was marked for purposes of
14     identification.)
15     - - - - -
16  Q.  Do you recognize this document?
17  A.  Yes.
18  Q.  Okay.  And what is this?
19  A.  This is my LinkedIn profile.
20  Q.  Okay.  And did you create your
21 LinkedIn profile?
22  A.  Yes.
23  Q.  And is everything on your LinkedIn
24 profile accurate to the best of your knowledge?
25  A.  Yes.

Page 12

1   Q.  Okay.  I'd like to talk briefly
2 about your personal background and employment.
3   A.  Sure.
4   Q.  So do you have any formal education?
5   A.  Yes.  Through Olivet Nazarene
6 college at that time, now University.
7   Q.  Okay.  And did you get a degree
8 from there?
9   A.  Yes.  In Accounting.
10  Q.  Okay.  It says here also Computer
11 Science.
12      Is that right?
13  A.  Uh-huh.
14  Q.  Was it a double major?
15  A.  A minor.
16  Q.  Okay.  And then after graduation,
17 where did you work?
18      Actually, before I do that, any
19 other education?
20  A.  No.
21  Q.  Okay.
22  A.  Some certifications.
23  Q.  Okay.  What certifications?
24  A.  Scrum Master, a Vertex training
25 certification.  I think those are the only two.

Page 13

1   Q.  Okay.  What is Scrum Master?
2   A.  It's part of the Agile process.
3 Scrum Master is the leader of the development
4 group essentially.
5   Q.  Software development?
6   A.  Yeah.  Yes.
7   Q.  Okay.
8   A.  Scrum is a method of Agile development.
9   Q.  Okay.  And then what about Vertex
10 training?
11  A.  It was just the tech software that
12 we purchased as an organization.
13  Q.  And what was the purpose for that
14 software?
15  A.  Taxation of sales.
16  Q.  Oh, you said "tax"?
17  A.  Yes.
18  Q.  I thought you said "tech."
19      Tax?
20  A.  Tax, yes.
21  Q.  So after you graduated from
22 university, did where did you work first?
23  A.  The first place was Hardee's fast
24 foods as an assistant manager there.
25  Q.  Okay.

Veritext Legal Solutions
www.veritext.com                                          888-391-3376

ATTORNEYS' EYES ONLY PURSUANT TO PROTECTIVE ORDER

Page 34



18  Q.  Understood. So what you're saying
19 is, it sends back an indicator --
20  A.  [redacted]

Page 35

1  A.  That's right.
2  Q.  Okay. We'll come back to BTCat and
3 how it interacts a little later.
4      J Zeddick?
5  A.  He's a business analyst.
6  Q.  What's a business analyst?
7  A.  He takes the requirements from the
8 customer and translates those into technical
9 requirements, so he analyzes the business
10 requirements and moves those into technical.
11  Q.  So does he find out what feeds they
12 get, what publisher data, or what do you mean
13 by that?
14  A.  [redacted]
21  Q.  Okay.
22  A.  We know that whole team out there.
23  Q.  Who do you know at OCLC?
24  A.  Actually, I don't.
25  Q.  You don't know anyone at OCLC?

Page 36

1  A.  I don't. I could go through my
2 notes, but it's been a few years ago.
3  Q.  You don't remember. That's fair.
4     MR. NOYSE: Don't forget to let him
5 finish the question before you start talking.
6  Q.  And then Steve Legowski, you said
7 he was working on collectionHQ?
8  A.  Yeah, he was the head of
9 development for collectionHQ.
10  Q.  And then collectionHQ Academic and
11 all those other products?
12  A.  You should go a level higher. He's
13 the head of development for Bridgeall
14 Libraries, and so any product that came under
15 that portfolio.
16  Q.  Okay. Then what about Himanshu
17 Singh?
18  A.  Yeah, Himanshu and Gautam, those
19 are both security analysts. They just happen
20 to be direct reports.
21  Q.  And that's IT security?
22  A.  Yeah.
23  Q.  Keeping the bad guys out?
24  A.  That's right.
25  Q.  Who do you report to directly?

Page 37

1  A.  Amandeep Kochar.
2  Q.  And that's the CEO?
3  A.  (Witness nodding.)
4  Q.  Are you a member of the executive
5 team?
6  A.  Yes.
7     - - - - -
8     (Thereupon, Plaintiff's Exhibit 40,
9     Notice of Deposition, which was
10    previously marked, was shown for
11    purposes of identification.)
12    - - - - -
13  Q.  Okay. I'm going to hand you what's
14 marked as Exhibit 40.
15     And if you like, you can set that
16 to the side unless you need to refer to it later.
17     So have you seen this document before?
18     Without the highlighting, have you
19 seen the document before?
20  A.  I don't believe so.
21  Q.  Oh, that's the wrong one.
22     MS. BROWN: We'll have to mark it
23 as a different Exhibit.
24     MR. WALKER: Apologies.
25     MS. BROWN: This will be 65.

ATTORNEYS' EYES ONLY PURSUANT TO PROTECTIVE ORDER

Page 38

```
 1         - - - - -
 2         (Thereupon, Plaintiff's Exhibit 65,
 3         Notice of Deposition, was marked for
 4         purposes of identification.)
 5         - - - - -
 6    Q.   Okay.  It's the same document.  We
 7  have different highlighting in it.
 8         So you haven't seen this document
 9  before?
10    A.   No.
11    Q.   Okay.  So this is the 30(b)(6)
12  Notice that we served on Baker & Taylor.
13         Do you understand that Baker &
14  Taylor has designated you to testify on its
15  behalf today?
16    A.   Yes.
17    Q.   Okay.  And what did you do, if
18  anything, to prepare for this deposition?
19    A.   Let me correct.  I have seen this
20  document before.
21    Q.   Okay.
22    A.   So I met with our Baker & Taylor
23  Counsel --
24    Q.   And we don't want to know your
25  conversations, but go ahead.
```

Page 39

```
 1    A.   -- and spent time reviewing the
 2  requests, and helped formulate our responses.
 3    Q.   Okay.  And then did you meet with
 4  anyone else?
 5    A.   Yes.  Yes.
 6    Q.   Who else?
 7    A.   Trisha Vreeman.
 8    Q.   Who is she?
 9    A.   She runs our cataloging services.
10    Q.   And anyone else?
11    A.   Amandeep Kochar.
12    Q.   Anyone else?
13    A.   And you have Counsel, right?
14    Q.   Of course.
15    A.   Counsel is just one, big umbrella
16  for the ones we met.
17         One of the requests required input
18  from two other individuals, Colleen -- Corrine
19  Lagassi and Dan Cao, C-a-o.
20    Q.   And which request was that, or
21  which topic?
22    A.   That was a request for data that
23  came out of the --
24    Q.   Oh, yeah.
25         MR. NOYSE:  I'm not sure he
```

Page 40

```
 1  finished his answer.
 2    Q.   Apologies.
 3    A.   -- that came out of the other
 4  requests associated.
 5    Q.   Okay.
 6    A.   But that's it.
 7    Q.   Okay.  Apologies.  I spoke over
 8  you.
 9    A.   That's all right.
10         C-a-o for Cao.
11    Q.   C-a-o.  She'll get it right.
12  Sometimes I spell it phonetically so I can say
13  it right back to you.
14    A.   Got you.
15    Q.   Okay.  So did you meet with Trisha
16  Vreeman about a specific topic?
17    A.   Yes.
18    Q.   Which topic?
19    A.   Topic 5.
20    Q.   Okay.  And you'll see in Topic 5
21  we've highlighted only a portion of that.
22         Is that the portion of the topic
23  you're prepared to speak about?
24    A.   Yes.
25    Q.   Then with Mr. Kochar, did you meet
```

Page 41

```
 1  with him about -- I'm sorry.  Go ahead.
 2    A.   And Topic 6.
 3    Q.   Okay.  Anything else that you met
 4  with her about?
 5    A.   Topics 7 -- 5, 6 and 7.
 6    Q.   Okay.  Anything else?
 7    A.   No.
 8    Q.   Okay.  With Mr. Kochar?
 9    A.   No.  We were just in the general
10  meeting together.
11    Q.   What about Corrine?
12    A.   Nothing here.
13    Q.   Okay.  That was related to the
14  Discovery Requests?
15    A.   Related to the Discovery Requests,
16  yeah.
17    Q.   And that's true of Dan?
18    A.   Dan, as well.
19    Q.   Dan Cao.
20         And you see the other topics we've
21  highlighted?
22    A.   Yes.
23    Q.   And Counsel for both parties have
24  provided additional clarifications that we'll
25  assume.
```

ATTORNEYS' EYES ONLY PURSUANT TO PROTECTIVE ORDER

Page 42

```
 1        Do you generally understand that
 2   this encompasses the topics you're going to be
 3   discussing today?
 4        A.   Yes.
 5        Q.   Okay.  Did you review any documents
 6   in preparation for your deposition?
 7        A.   Yes.
 8        Q.   Any documents not provided directly
 9   by Counsel?
10        A.   Yes.
11        Q.   What documents?
12        A.   I received a document on the record
13   count --
14        Q.   Record count.
15        A.   -- that was not provided by Counsel.
16        Q.   And is that the BTCat record count?
17        A.   Uh-huh.
18        Q.   Okay.
19        A.   And I'm going to make an
20   assumption -- or make a statement, and I
21   believe it's correct.  I may need direction.
22   But Trisha provided some -- some lists were
23   provided to Counsel, of which I was on the
24   distribution list for those items.
25        Q.   Okay.  And I don't want to know
```

Page 43

```
 1   about the substantive communications.
 2        But you reviewed those documents,
 3   as well?
 4        A.   That's right.  Documents that came
 5   from Trisha, but were provided to Counsel, I
 6   was provided with them at the same time.
 7        Q.   As we go through documents, I'll
 8   ask you if you've seen them before, and we can
 9   discuss them.
10        A.   Yeah.
11        Q.   Who gave you the record count
12   document that you reference?
13        A.   Dan Cao.
14        Q.   Okay.  And any other documents that
15   you reviewed that weren't provided by Counsel
16   to prepare you for your deposition today?
17        A.   No.
18        Q.   Okay.  And as we look at these
19   topics, are you prepared to testify about
20   information known or reasonably available to
21   Baker & Taylor about these topics?
22             MR. NOYSE:  Objection to the form.
23             You can answer.
24        A.   I don't know if I understand the
25   question, known or reasonably available about
```

Page 44

```
 1   the topics.
 2        Q.   Do you understand that you're
 3   testifying on behalf of Baker & Taylor today?
 4        A.   Yes.
 5        Q.   And you've prepared to testify
 6   about the information that Baker & Taylor knows
 7   about these topics?
 8        A.   Me being Baker & Taylor, yes.
 9        Q.   Okay.  Would you say you're the
10   person best suited to cover these topics on
11   behalf of Baker & Taylor?
12        A.   Yes.
13        Q.   Okay.  Do you know if your
14   documents have been collected in relation to
15   this litigation?
16        A.   I believe so.
17        Q.   Okay.  And do you understand that
18   Baker & Taylor has produced certain of your
19   communications and documents to us as part of
20   this litigation?
21        A.   Yes.
22        Q.   And that it has also produced
23   documents and communications from others at the
24   company?
25        A.   Yes.
```

Page 45

```
 1        Q.   Okay.  Are you being offered
 2   anything today by your employer in exchange for
 3   your testimony?
 4        A.   No.
 5        Q.   Okay.  You can set that aside, use
 6   it as a friendly reference as we go throughout.
 7             - - - - -
 8             (Thereupon, Plaintiff's Exhibit 3,
 9             Complaint for Injunctive Relief and
10             Damages, which was previously,
11             marked, was shown for purposes of
12             identification.)
13             - - - - -
14        Q.   I'm going to hand you that.  It's
15   been marked Plaintiff's Exhibit 3.
16        A.   Okay.
17        Q.   Have you seen that document before?
18        A.   Yes.
19        Q.   Okay.  What is it?
20        A.   The Complaint for Injunctive Relief
21   and Damages.
22        Q.   And the Complaint is brought -- do
23   you understand that this is in relation to this
24   litigation?
25        A.   Yes.
```

Page 178

1  Q. I'm sorry, ILS system of the library?
2  A. Oh, yes, they're in the ILS system
3  of the library.
4  Q. And do they send you a -- how do
5  they transfer them into BTCat?
6     MR. NOYSE: Objection to the form.
7  A. So the customer doesn't transfer
8  them, but the CHQ folks, they just pass on the
9  customers' MARC files.
10 Q. And then Number of Bibs Added, what
11 does that mean?
12 A. That's the number of new records
13 created in BTCat Community.
14 Q. Okay. And so these for ▮▮▮▮
15 ▮▮▮▮▮▮, this is the number of records that were
16 added for ▮▮▮▮▮▮ on October 16, 2021?
17 A. Correct.
18 Q. And then down at the bottom, the
19 Total, what does that represent?
20 A. That's just the sum of these number
21 of Bibs added.
22 Q. To BTCat by these customers?
23 A. Yes.
24 Q. Okay. And then what is this Active
25 Records in BTCat?

Page 179

1  A. This is the total record account --
2  record count across all repositories, not de-duped.
3  Q. Not de-duped?
4  A. That's right.
5  Q. When it's de-duped, what's the total?
6  A. I don't know. I don't know that
7  we've done that.
8  Q. And so this percentage is what?
9  A. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 Q. So you have the capability --
25 apologies.

Page 180

1  A. Y▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 Q. So I think you testified before
13 that BT Main, you only allow Baker & Taylor
14 employee records to be in that.
15 A. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Page 181

1  A. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4  Q. And I think you testified before
5  that no records have been added through
6  collectionHQ in the last -- is it year?
7     When was the last time a record was
8  added?
9  A. October 19, 2023.
10 Q. Okay. Were you part of the
11 discussions on whether to add collectionHQ
12 records into BTCat?
13    MR. NOYSE: Objection to the form.
14 Q. Were there discussions about
15 whether or not to add collectionHQ records into
16 BTCat?
17 A. There were. I was primarily
18 involved in the discussions on how, not the
19 discussion to add.
20     - - - - -
21    (Thereupon, Plaintiff's Exhibit 14,
22    08-30-2023 E-mail Chain Between
23    Susan Love, Support@collectionhq.com
24    and Others, which was previously
25    marked, was shown for purposes of



ATTORNEYS' EYES ONLY PURSUANT TO PROTECTIVE ORDER

Page 182

1  identification.)
2  - - - - -
3  Q. I'm handing you what has been
4  marked as Plaintiff's Exhibit 14.
5  Do you recognize this document?
6  A. No.
7  Q. Okay. Do you have an understanding
8  what this document is communicating?
9  A. Yes.
10 Q. Okay. What's happening here?
11 A. So this is a file from [redacted]
12 [redacted] whoever this customer is represented
13 here -- oh, [redacted] has
14 been FTP'd, placed on the FTP server of BTCat.
15 Q. Okay. And so you see here it says
16 "BTCat Records Approved," and provides a date?
17 A. Yes.
18 Q. Okay. What is that communicating?
19 A. The source of the e-mail is coming
20 from collectionHQ. It's communicating that
21 this is a customer that's on the BTCat Records
22 Approved List, and, therefore, they FTP'd.
23 Q. Does this mean that they've sent
24 their records via FTP to Baker & Taylor?
25 A. That's correct.

Page 183

1  Q. And is this for use in BTCat?
2  A. This would be records that could be
3  loaded to the BTCat Community.
4  Q. Okay. And does this represent an
5  actual upload to the FTP site for use in BTCat?
6  A. This represents the upload to the
7  FTP site. It does not represent the upload of
8  records into BTCat.
9  Q. Okay. But the records are uploaded
10 to the FTP site that is held by Baker & Taylor?
11 A. Yes.
12 - - - - -
13 (Thereupon, Plaintiff's Exhibit 76,
14 06-03-2025 E-mail from
15 Noreply@collectionhq.com to
16 Ollie Downs, was marked for purposes
17 of identification.)
18 - - - - -
19 Q. This we've marked as Plaintiff's
20 Exhibit 76.
21 Is this a similar report to what we
22 were discussing before?
23 A. Yes.
24 Q. And so this is another situation
25 where a customer has uploaded records to the

Page 184

1 FTP site from collectionHQ?
2  A. No.
3  Q. What is this?
4  A. So this is where a customer has
5 uploaded records to collectionHQ, and then
6 collectionHQ has pushed those records to the
7 Baker & Taylor FTP site.
8  Q. And is that for potential use in
9 BTCat?
10 A. That directory is for the staging
11 of use in BTCat.
12 Q. And where is that directory located?
13 A. On a Baker & Taylor server.
14 Q. And is that one of the repositories
15 that we've discussed?
16 A. No. They haven't made it to a
17 repository. That's just a staging location
18 where the file sits.
19 Q. And so a collectionHQ customer in
20 this instance authorized collectionHQ to
21 transfer records to Baker & Taylor, and those
22 are stored on a server for Baker & Taylor; is
23 that right?
24 A. Yes.
25 Q. And then for potential use in BTCat

Page 185

1 Community?
2  A. That's correct.
3  Q. Do you know how many records are
4 sitting on that server?
5  Let me be more specific.
6  Do you know how many of these
7 collectionHQ uploads are sitting on that server?
8  A. [redacted]
[redacted lines]
19 Q. Okay. And for all of those files,
20 those are -- do they represent individual
21 customers?
22 A. I don't know. There could be some
23 repeats of customers, but they would be
24 individual customer files, but there might be
25 some repetitive customers submitting their

47 (Pages 182 - 185)

Page 186

```
 1  annual file or whatever.
 2      Q.   And none of those files have been
 3  uploaded to BTCat?
 4      A.   That's correct.
 5           - - - - -
 6      (Thereupon, Plaintiff's Exhibit 77,
 7       May, 2021 E-mail Chain Between James
 8       Smith, Trisha Vreeman, Whitney
 9       Bretzman and Others, was marked for
10       purposes of identification.)
11           - - - - -
12      Q.   I'm handing you what's been marked
13  as Plaintiff's Exhibit 77.
14      A.   Okay.
15      Q.   Have you seen this document before?
16      A.   No.
17      Q.   Okay.  Who's James Smith?
18      A.   Senior Vice President of Sales for
19  Baker & Taylor.
20      Q.   And I don't know if I've asked you,
21  who is Trisha Vreeman?
22      A.   She runs our Cataloging
23  Servicing Department.
24      Q.   And then what about Scott Crawford?
25      A.   He's no longer an employee, but he
```

Page 187

```
 1  was the head of operations, with cataloging
 2  reporting to him.
 3      Q.   And --
 4      A.   I'm sorry.  Scott Crawford.  Scott
 5  Crawford was the sales owner of BTCat.
 6      Q.   Okay.  So do you see the e-mail at
 7  the bottom?
 8      A.   Yes.
 9      Q.   What do you understand them to be
10  discussing?
11      A.   The contents of the file that's
12  transferred to Baker & Taylor.
13      Q.   Transferred by whom?
14      A.   From collectionHQ to Baker & Taylor.
15      Q.   So this is referring to the sharing
16  of customer records from collectionHQ to
17  Baker & Taylor for use in BTCat?
18      A.   Yes.
19      Q.   So James Smith said "What would our
20  specific ask be for the CHQ records from
21  customers?"
22           The first one is "Full file of
23  their records."
24      A.   Yep.
25      Q.   And "We strip OCLC number out ...
```

Page 188

```
 1  what else do we take out?"
 2      A.   Yes.
 3      Q.   What do you understand both 1 and 2
 4  to be referring to?
 5      A.   So I think they go together.  We
 6  get their full file of records.  And he says
 7  "OCLC number out," but I believe he means we
 8  strip OCLC records out of the file.
 9      Q.   What makes you think that?
10      A.   He's just talking about files from
11  the customer.  We have an internal policy where
12  we do not replace the OCLC number with our own
13  number.  That is not something that we do.  So
14  I don't -- it just seems a little odd that he
15  would be talking about stripping an OCLC number
16  out in this context.
17      Q.   And that's because of your policy?
18      A.   Yes.
19      Q.   Is that written down somewhere?
20      A.   I don't know.
21      Q.   Okay.  And how long has that policy
22  been in place?
23      A.   We've, I think, always done it.
24      Q.   So what he's suggesting, you're
25  saying is contrary to that policy?
```

Page 189

```
 1           MR. NOYSE:  Objection to the form.
 2           You can answer.
 3      A.   We had some -- I understand the
 4  context of these discussions.  As we were
 5  talking requirements for the load, we had some
 6  discussions about excluding OCLC records from
 7  the download from collectionHQ.  I do know that
 8  what got implemented is not this.
 9      Q.   So why did you have discussions
10  about taking out OCLC records from the downloads?
11           MR. NOYSE:  Objection to the extent
12  that that may include discussions that included
13  Counsel.
14           And I would direct the Witness to
15  answer that, but not reveal any information
16  that is from an Attorney-client communication.
17      A.   I don't know why.
18      Q.   Okay.
19      A.   I was -- again, I was in the
20  developer role, and those were discussions.
21      Q.   And you said that -- the current
22  process, do you take out OCLC records from the
23  downloads?
24      A.   We do not.
25      Q.   Okay.  Do you take out OCLC records
```

Page 210

1  signed this provision not allowing access. If
2  there was a carveout that said that they
3  continue with the Third-Party Agreements, then
4  it likely would not provide any harm.
5      Q.  And when you say -- so if there was
6  a separate agreement between Baker & Taylor,
7  OCLC and the customer, it wouldn't provide any
8  harm?
9          MR. NOYES:  Objection to the form
10 of the question.
11     A.  If that agreement -- if the
12 Third-Party Agreement continued to operate
13 without interruption, then there should be no
14 harm.
15         MR. WALKER:  I don't think I have
16 any further questions.
17         MR. NOYSE:  Okay.  We don't have
18 any questions, but I do want to make a
19 statement on the record.
20         MR. WALKER:  Okay.
21         MR. NOYSE:  So let me just say what
22 it is.  So this Witness has provided detailed
23 testimony about information that is not nearly
24 highly confidential under the AEO or under the
25 stipulated PO, but includes critically

Page 211

1  important trade secret information of the
2  highest order for Baker & Taylor.
3          Baker & Taylor has allowed this
4  line of questioning because of the stipulated
5  Protective Order, which allows the presence of
6  OCLC in-house Counsel and in-house General
7  Counsel to listen to the information.  Baker &
8  Taylor already had concerns about potential
9  motivations from OCLC arising from the due
10 diligence process for the potential purchase of
11 Bridgeall, which immediately preceded the
12 litigation.
13         So we are simply underscoring that
14 this testimony is of the highest importance in
15 terms of protection.  And we expect that OCLC
16 will take appropriate and verifiable protocols
17 and steps sufficient to make sure that this
18 information is not leaked through this process
19 to other principals at OCLC.
20         MR. WALKER:  Okay.  Anything else?
21         MR. NOYSE:  No.
22         MR. WALKER:  We have a statement,
23 as well.
24         MR. NOYSE:  Okay.
25         MR. WALKER:  So OCLC has been

Page 212

1  prejudiced by Defendants' late and incomplete
2  document productions, which have been missing
3  materially responsive documents.  This has
4  hindered OCLC's ability to review and assess
5  completeness of Defendants' production, and to
6  prepare for this Rule 30(b)(6) deposition that
7  OCLC noticed.
8          Accordingly, OCLC leaves open this
9  deposition and reserves the right to explore
10 the 30(b)(6) topics noticed for today during
11 merits discovery.
12         MR. NOYSE:  And you made that
13 statement after Aman Kochar's testimony.  We
14 will incorporate our response.
15         I will ask one clarification.
16         By saying that the depositions
17 remain open, you are not suggesting that we
18 can't talk to the Witnesses in the normal
19 course of involving and management of
20 litigation as if we were in the middle of a
21 deposition?
22         MR. WALKER:  I think that's fine.
23         MR. NOYSE:  Okay.
24         MR. WALKER:  And that same
25 clarification applies to yesterday.

Page 213

1          Nothing further.  We're off the
2  record.
3          - - - - -
4      (Deposition adjourned at 6:22 p.m.)
5          - - - - -

54 (Pages 210 - 213)

ATTORNEYS' EYES ONLY PURSUANT TO PROTECTIVE ORDER

Page 214

1      REPORTER'S CERTIFICATE
2
3  The State of North Carolina,  )
4             SS:
5  County of Lincoln.            )
6
7      I, Joyce L. Shannon, RPR, a Notary
8  Public within and for the State of North
9  Carolina, duly commissioned and qualified, do
10 hereby certify that the within named witness,
11 DANIEL R. JOHNSON, was by me first duly sworn
12 to testify the truth, the whole truth and
13 nothing but the truth in the cause aforesaid;
14 that the testimony then given by the
15 above-referenced witness was by me reduced to
16 stenotypy in the presence of said witness;
17 afterwards transcribed, and that the foregoing
18 is a true and correct transcription of the
19 testimony so given by the above-referenced
20 witness.
21     I do further certify that this
22 deposition was taken at the time and place in
23 the foregoing caption specified.
24
25

Page 215

1      I do further certify that I am not
2  a relative, counsel or attorney for either
3  party, or otherwise interested in the event of
4  this action.
5      IN WITNESS WHEREOF, I have hereunto
6  set my hand and affixed my seal of office at
7  Maiden, North Carolina, on this 20th day of
8  August, 2025.
9
10
11
12
13         [signature: Joyce Lynn Shannon]
14     Joyce L. Shannon, RPR, Notary
15     Public within and for the State of
16     North Carolina
17
18 My commission expires August 18, 2028.

Page 216

            Veritext Legal Solutions
              1100 Superior Ave
                Suite 1820
             Cleveland, Ohio 44114
             Phone: 216-523-1313

August 20, 2025

To: Mr. Noyse

Case Name: Oclc Inc v. Baker & Taylor LLC Et Al

Veritext Reference Number: 7526707

Witness: Daniel R. Johnson , 30(b)(6)    Deposition Date: 8/15/2025

Dear Sir:

Enclosed please find a deposition transcript. Please have the witness review the transcript and note any changes or corrections on the included errata sheet, indicating the page, line number, change, and the reason for the change. Have the witness' signature notarized and forward the completed page(s) back to us at the Production address shown

above, or email to production-midwest@veritext.com.

If the errata is not returned within thirty days of your receipt of this letter, the reading and signing will be deemed waived.

Sincerely,

Production Department

NO NOTARY REQUIRED IN CA

Page 217

         DEPOSITION REVIEW
       CERTIFICATION OF WITNESS

ASSIGNMENT REFERENCE NO: 7526707
CASE NAME: Oclc Inc v. Baker & Taylor LLC Et Al
DATE OF DEPOSITION: 8/15/2025
WITNESS' NAME: Daniel R. Johnson , 30(b)(6)

     In accordance with the Rules of Civil
Procedure, I have read the entire transcript of
my testimony or it has been read to me.

     I have made no changes to the testimony
as transcribed by the court reporter.

_____     _____
Date                Daniel R. Johnson , 30(b)(6)

     Sworn to and subscribed before me, a
Notary Public in and for the State and County,
the referenced witness did personally appear
and acknowledge that:

     They have read the transcript;
     They signed the foregoing Sworn
         Statement; and
     Their execution of this Statement is of
         their free act and deed.

     I have affixed my name and official seal

this _____ day of_____, 20____.

         _____
         Notary Public

         _____
         Commission Expiration Date

55 (Pages 214 - 217)

```
                                                       Page 218
 1        DEPOSITION REVIEW
          CERTIFICATION OF WITNESS
 2
      ASSIGNMENT REFERENCE NO: 7526707
 3    CASE NAME: Oclc Inc v. Baker & Taylor LLC Et Al
      DATE OF DEPOSITION: 8/15/2025
 4    WITNESS' NAME: Daniel R. Johnson , 30(b)(6)
 5        In accordance with the Rules of Civil
      Procedure, I have read the entire transcript of
 6    my testimony or it has been read to me.
 7        I have listed my changes on the attached
      Errata Sheet, listing page and line numbers as
 8    well as the reason(s) for the change(s).
 9        I request that these changes be entered
      as part of the record of my testimony.
10
          I have executed the Errata Sheet, as well
11    as this Certificate, and request and authorize
      that both be appended to the transcript of my
12    testimony and be incorporated therein.
13    _____    _____
      Date             Daniel R. Johnson , 30(b)(6)
14
          Sworn to and subscribed before me, a
15    Notary Public in and for the State and County,
      the referenced witness did personally appear
16    and acknowledge that:
17        They have read the transcript;
          They have listed all of their corrections
18            in the appended Errata Sheet;
          They signed the foregoing Sworn
19            Statement; and
          Their execution of this Statement is of
20            their free act and deed.
21        I have affixed my name and official seal
22    this _____ day of_____, 20____.
23            _____
              Notary Public
24
25        Commission Expiration Date
```

```
                                                       Page 219
 1            ERRATA SHEET
          VERITEXT LEGAL SOLUTIONS MIDWEST
 2        ASSIGNMENT NO: 7526707
 3  PAGE/LINE(S) /    CHANGE     /REASON
 4  _____
 5  _____
 6  _____
 7  _____
 8  _____
 9  _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19
    _____    _____
20  Date               Daniel R. Johnson , 30(b)(6)
21  SUBSCRIBED AND SWORN TO BEFORE ME THIS _____
22  DAY OF _____, 20_____ .
23         _____
           Notary Public
24
           _____
25         Commission Expiration Date
```