# EXHIBIT E

*OCLC, Inc. v. Baker & Taylor, LLC*, No. 2:25-cv-309

Case 2:25-cv-00309-EAS-EPD Doc #: 61-5 Filed: 01/09/26 Page: 2 of 24 PAGEID #: 1121

CONFIDENTIAL TESTIMONY/ATTORNEYS' EYES ONLY

Page 1

```
 1            UNITED STATES DISTRICT COURT

 2             SOUTHERN DISTRICT OF OHIO

 3                 EASTERN DIVISION

 4                    *   *   *

 5   OCLC, INC.,

 6         Plaintiff,

 7         vs.              CASE NO. 2:25-cv-00309

 8   BAKER & TAYLOR, LLC;

 9   BRIDGEALL LIBRARIES, LTD.,

10         Defendants.

11                    *   *   *

12         Deposition of STEVEN LEGOWSKI, Witness

13   herein, called by the Plaintiff for

14   cross-examination pursuant to the Rules of Civil

15   Procedure, taken before me, Kathy S. Wysong, RPR,

16   a Notary Public in and for the State of Ohio, at

17   200 St. Vincent Street, Glasgow, Scotland, on

18   Monday, August 18, 2025, at 6:09 a.m. Eastern.

19                    *   *   *

20

21

22

23

24

25
```

CONFIDENTIAL TESTIMONY/ATTORNEYS' EYES ONLY

Page 2

1          EXAMINATION CONDUCTED          PAGE

2     BY MS. BROWN:........................     7

3

4              EXHIBITS MARKED

5     (Plaintiff's Exhibit 81, notice of

6     deposition, was marked for purposes

7     of identification.)....................     10

8     (Plaintiff's Exhibit 82, LinkedIn

9     profile, was marked for purposes of

10    identification.).......................     19

11    (Plaintiff's Exhibit 3, complaint

12    for injunctive relief and damages,

13    was previously marked for purposes

14    of identification.)....................     41

15    (Plaintiff's Exhibit 83,

16    BAKER00058010-58024, was marked for

17    purposes of identification.)..........     55

18    (Plaintiff's Exhibit 84,

19    BAKER00058025-58039, was marked for

20    purposes of identification.)..........     67

21    (Plaintiff's Exhibit 85,

22    BAKER00058040-58041, was marked for

23    purposes of identification.)..........     70

24

25

CONFIDENTIAL TESTIMONY/ATTORNEYS' EYES ONLY

Page 3

1     (Plaintiff's Exhibit 86,

2     BAKER00058042-58043, was marked for

3     purposes of identification.)..........     74

4     (Plaintiff's Exhibit 87,

5     BAKER00057995-58009, was marked for

6     purposes of identification.)..........     75

7     (Plaintiff's Exhibit 88,

8     BAKER00058044-58045, was marked for

9     purposes of identification.)..........     77

10    (Plaintiff's Exhibit 89,

11    BAKER00057910-57927, was marked for

12    purposes of identification.)..........     79

13    (Plaintiff's Exhibit 90

14    BAKER00058273, was marked for

15    purposes of identification.)..........     81

16    (Plaintiff's Exhibit 91,

17    BAKER00001476-1479, was marked for

18    purposes of identification.)..........     84

19    (Plaintiff's Exhibit 92

20    BAKER00055646-55647, was marked for

21    purposes of identification.)..........     95

22    (Plaintiff's Exhibit 93,

23    BAKER00053336-53343, was marked for

24    purposes of identification.)..........     97

25

CONFIDENTIAL TESTIMONY/ATTORNEYS' EYES ONLY

Page 4

```
 1      (Plaintiff's Exhibit 26,
 2      BAKER00035026-35032, was previously
 3      marked for purposes of
 4      identification.)...................... 99
 5      (Plaintiff's Exhibit 94,
 6      BAKER00040863-40865, was marked for
 7      purposes of identification.).......... 104
 8      (Plaintiff's Exhibit 95,
 9      BAKER00054329-54331, was marked for
10      purposes of identification.).......... 109
11      (Plaintiff's Exhibit 96, cHQ
12      upcoming events northeast, was
13      marked for purposes of
14      identification.)...................... 114
15      (Plaintiff's Exhibit 97, cHQ
16      upcoming events central, was marked
17      for purposes of identification.)...... 120
18      (Plaintiff's Exhibit 98, upcoming
19      conferences, was marked for purposes
20      of identification.)................... 122
21      (Plaintiff's Exhibit 99, cHQ
22      LinkedIn post, was marked for
23      purposes of identification.).......... 127
24
25
```

CONFIDENTIAL TESTIMONY/ATTORNEYS' EYES ONLY

Page 5

1    (Plaintiff's Exhibit 100,

2    BAKER00051941, was marked for

3    purposes of identification.).......... 143

4    (Plaintiff's Exhibit 101,

5    BAKER00014808-14811, was previously

6    marked for purposes of

7    identification.)...................... 151

8    (Plaintiff's Exhibit 14,

9    BAKER00005068, was previously marked

10   for purposes of identification.)...... 159

11   (Plaintiff's Exhibit 77,

12   BAKER00021733, was previously marked

13   for purposes of identification.)...... 163

14   (Plaintiff's Exhibit 102, Bridgeall

15   Supplemental Responses, was marked

16   for purposes of identification.)...... 165

17   (Plaintiff's Exhibit 37,

18   OCLC_00000034-43, 1-7, was

19   previously marked for purposes of

20   identification.)...................... 173

21

22

23

24

25

Case 2:25-cv-00009-EAS-EPD Doc #: 61-1 Filed: 01/09/26 Page: 7 of 24 PAGEID #: 1126

Page 6

```
1    APPEARANCES:
2       On behalf of the Plaintiff:
3           Squire Patton Boggs, LLP
4       By:  Kathryn M. Brown, Esq.
             Jeffrey M. Walker, Esq.
5           2000 Huntington Center
            41 South High Street
6           Columbus, Ohio  43215
            614-365-2700
7           kathryn.brown@squirepb.com
            jeffrey.walker@squirepb.com
8
        On behalf of the Defendants:
9
            Offit Kurman
10
        By:  Frank E. Noyes, II, Esq.
11           222 Delaware Avenue
             Suite 1105
12           Wilmington, Delaware  19801
             302-351-0900
13           fnoyes@offitkurman.com
14           Cavitch Familo & Durkin
15      By:  Derek P. Hartman, Esq.
             Michael Cohan, Esq.
16           1300 East Ninth Street
             20th Floor
17           Cleveland, Ohio  44114
             216-621-7860
18           dhartman@cavitch.com
             mcahon@cavitch.com
19
                        *    *    *
20
21
22
23
24
25
```

Case 2:25-cv-00009-EASE-PDD Doc #62-15 SEALED 01/09/26 Page 250 PageID PAGEID #: 1127

Page 7

```
 1              STEVEN LEGOWSKI
 2   of lawful age, Witness herein, having been first
 3   duly cautioned and sworn, as hereinafter
 4   certified, was examined and said as follows:
 5              CROSS-EXAMINATION
 6   BY MS. BROWN:
 7        Q.   Good morning, Mr. Legowski.  My name
 8   is Katie Brown.  We've never met before except the
 9   twenty seconds before we got started, right?
10        A.   Yes.
11        Q.   And I am counsel for OCLC, plaintiff
12   in this case.  Do you understand that?
13        A.   Yes.
14        Q.   Would you please state your full name
15   for the record?
16        A.   Steven Legowski.
17        Q.   And could you please spell Legowski?
18        A.   L-E-G-O-W-S-K-I.
19        Q.   Thank you.  Have you ever been
20   deposed before?
21        A.   No.
22        Q.   Have you ever testified at trial or
23   an arbitration or any other type of court
24   proceeding?
25        A.   No.
```

CONFIDENTIAL TESTIMONY/ATTORNEYS' EYES ONLY

Page 33

1    that reports directly to me.  However, we still --

2    he -- Baker & Taylor still support -- we have a

3    sales agreement where we still support sales for

4    collectionHQ so the VP of sales that reports to me

5    still coordinates sales activities with Fred who

6    previously was primarily responsible for that.

7           Q.    Okay.  And what is the name of the VP

8    of sales that reports to you now?

9           A.    That is Jamie Wright.

10          Q.    Oh, okay.  And who do you currently

11   report to?

12          A.    

13

14

15          Q.    So you've mentioned cHQ, ESP, and DEI

16   Analysis.  I'd like to learn a little bit more

17   about those products.  Could you explain to me

18   what cHQ is?

19          A.    Yeah, in general terms cHQ is a stock

20   performance management software application.  So

21   it's a software audit service.  So our customers

22   primarily were public libraries who were looking

23   for software that could help them essentially

24   manage their stock better, which really means

25   ensuring that they have the titles for the patrons

CONFIDENTIAL TESTIMONY/ATTORNEYS' EYES ONLY

Page 34

1   essentially.

2             So the product looks at circulation;

3   you know, our book has been checked out.  Also the

4   condition of material; our books, you know,

5   they've been checked out so many times so maybe

6   you need to remove and get rid of those books and

7   replace nice fresh books so patrons coming in

8   they've got -- so it's really essentially stock

9   management analytics.  It provides actions --

10  recommending actions for librarians to take to be

11  able to manage their stock.

12             Q.   So when a library is using cHQ, do

13  they run the program monthly?  How often do they

14  run the analytics?

15             A.   ███████████  ████  ████████████

16  ██████████.  You know, we have a team -- a

17  customer success management team, our customer

18  experience team who is part of the service

19  delivery from us, you know, work with customers

20  and provide advice on how often they should run

21  certain reports.  We also have functionality that

22  allows them to schedule running certain reports

23  and action plans.  So, yeah, so, you know,

24  customers -- you get some customers more actively

25  using our product than others, but we --

CONFIDENTIAL TESTIMONY/ATTORNEYS' EYES ONLY

Page 60

1        MR. HARTMAN:  Okay.  Thank you.

2   Sorry.

3        MS. BROWN:  And just to make it clear

4   on the record, the first exhibit we led with today

5   was Exhibit 81 and that was Bridgeall's notice of

6   deposition.

7        MR. HARTMAN:  Got it.

8        THE WITNESS:  Yeah, I've read that

9   section.

10  BY MS. BROWN:

11       Q.   Okay.  Great.  So I want to read the

12  first sentence, in addition, as a subscriber to

13  the service, you have the opportunity to access

14  Baker & Taylor's BTCat community pool of

15  cataloging records at no charge if you authorize

16  the use of your cataloging records by Baker &

17  Taylor.  What do you understand that first

18  sentence to mean?

19       A.   Basically the customer is authorizing

20  Baker & Taylor to use their catalog records and

21  they will be able to access BTCat for free.

22       Q.   Okay.  And if you go to the next

23  sentence, by signing this agreement, you are

24  authorizing Baker & Taylor to utilize your

25  cataloging records and are confirming that you

CONFIDENTIAL TESTIMONY/ATTORNEYS' EYES ONLY

Page 61

1    have the right to make this authorization.  Did I
2    read that right?
3            A.    That seems correct.
4            Q.    Is that the authorization you're
5    talking about?
6            MR. NOYES:  Objection to the form.
7    BY MS. BROWN:
8            Q.    You can answer.
9            A.    I believe so, yes.
10           Q.    So by signing the agreement, the
11   customer is authorizing Baker & Taylor?
12           MR. NOYES:  Objection to the form.
13           THE WITNESS:  Should I answer?
14   BY MS. BROWN:
15           Q.    Yes.  Yes, unless your counsel
16   instructs you not to answer, he'll lodge an
17   objection but you still provide an answer.
18           A.    Okay.  I mean, that's what that
19   appears to say to me, yes.
20           Q.    Okay.  Do you know who Travis Kelley
21   is?
22           A.    I do, yes.
23           Q.    He was deposed earlier in this case
24   and he testified that when customers did not like
25   Section 4.5, it would be removed.  Is that

Page 62

1    consistent with your understanding?

2         A.   Yes.

3         Q.   So why would some customers want to

4    have this section removed?

5              MR. NOYES:  Objection to the form.

6              THE WITNESS:  I can't really speak

7    for the customer.

8    BY MS. BROWN:

9         Q.   What's your understanding of why they

10   would want it removed?

11        A.   I've actually not -- I've not

12   actually been aware of a specific reason.  I'm

13   aware of a customer asking for it to be removed.

14   The reason I couldn't really speak to.

15        Q.   Okay.  And when -- as far as you

16   know, when a customer has asked to have this

17   provision removed, has it been removed?

18        A.   Any conversation that's been passed

19   to me, yes, it has.

20        Q.   Okay.  Why was Section 4.5 added to

21   the contract for collectionHQ?

22        A.   ███████████████████████████████████,

23   ████████████████ █ ████████████████████ ████████

24   ███████████████ -- ██████████████████████████

25   █ ████████████ ████████

CONFIDENTIAL TESTIMONY/ATTORNEYS' EYES ONLY



Page 63

```
 1          Q.    ████████████████  ██
 2   ██████████████?
 3          A.    ██████████████████,
 4   ████████████████████████████████
 5   ████████.
 6          Q.    ████ █████  █████████
 7   ████████████  --
 8          ██  ██
 9          ██ --  ████████████████       I
10   apologize.
11          A.    Sorry.
12          Q.    What was your answer?
13          A.    ██.
14          Q.    Okay.  Is this Section 4.5 in every
15   collectionHQ agreement, except where a customer
16   has removed it?  I apologize.
17          A.    Historically do you mean?
18          Q.    Yes.  Yes.
19          A.    ██.
20          Q.    Which agreements were these added to?
21   Strike that.  Which provision -- strike that
22   again.
23          Which contracts was this provision
24   added to?
25          A.    ██████  ████████████  █████
```

CONFIDENTIAL TESTIMONY/ATTORNEYS' EYES ONLY



Page 64

1 
2 
3 
4 
5 
6 Is that
7 accurate?
8      A.   Sorry, Katie, could you repeat that,
9 please?
10      Q.   No problem.
11 
12 wanted it to be removed, it would be
13 removed?
14      A.   I'm sorry, when you say
15 
16 
17      Q.   I guess what I mean by -- yeah,
18 exactly, the template.
19 
20      A.
21      Q.   Okay.  And then if a customer
22 ; is
23 that accurate?
24      A.
25      Q.   Okay.  Got it.  So you said it was in

1      A.   Yes.

2      Q.   And what do you understand this

3  provision to mean?

4      A.   Be governed by the laws of a

5  particular state of a -- where the customer is

6  located.

7      Q.   So this is in reference to a U.S.

8  agreement, correct?

9      A.   Yes.

10     Q.   And would a state include any state

11  in the U.S.?

12          MR. NOYES:   Objection to the form.

13  You can answer.

14          THE WITNESS:   I would have to assume

15  so, but I couldn't confirm.

16  BY MS. BROWN:

17     Q.   Okay.  And that would include Ohio,

18  correct, since it's a state?

19     A.   I would assume so, yes.

20     Q.   Okay.  So Mr. Legowski, we've talked

21  about Section 4.5 quite a bit.  ███████████ ███

22  ████████████████████ ████████████████

23  ██████████████████████████████████?

24      ███   ████

25      ███   ██████████████████

CONFIDENTIAL TESTIMONY/ATTORNEYS' EYES ONLY

Page 67

1      A.    ███.

2      Q.    Okay.  And was that a result of

3  discussions with counsel?  If so, I don't want to

4  know, but that will help me decide if I ask

5  further questions.

6      A.    No.

7      Q.    Okay.  Do you know why it was taken

8  out?

9      A.    Yes.  I instructed the removal of it.

10     Q.    And why did you do that?

11     A.    ████████████████████████████

12  ████████████████████████.  The documents

13  were updated to reflect the new organization's

14  owners so it seemed appropriate.

15     Q.    Okay.

16     MS. BROWN:  We've been going for

17  about an hour, how about a five-minute break.

18     MR. NOYES:  It's been more like an

19  hour and a half, but I agree to a five-minute

20  break.

21     MS. BROWN:  Okay.  No problem.

22     THE WITNESS:  Thank you.

23     (Pause in proceedings.)

24     (Plaintiff's Exhibit 84,

25  BAKER00058025-58039, was marked for purposes of

CONFIDENTIAL TESTIMONY/ATTORNEYS' EYES ONLY

Page 70

```
 1              THE WITNESS:  It seems -- yeah, it
 2    seems to be in this instance.
 3    BY MS. BROWN:
 4         Q.   Okay.  And is it the same -- strike
 5    that.
 6              In the rest of world version, are you
 7    aware of any customers asking for Section 4.5 to
 8    be removed?
 9         A.   I'm not aware, no.
10         Q.   Okay.  If a customer had asked for it
11    to be removed, was that something that Bridgeall
12    would have negotiated with the customer?
13         A.   We would have just removed it.
14         Q.   Okay.
15              (Plaintiff's Exhibit 85,
16    BAKER00058040-58041, was marked for purposes of
17    identification.)
18    BY MS. BROWN:
19         Q.   We're going to move on to the next
20    document.  This will be Plaintiff's Exhibit 85,
21    and in your file, Mr. Legowski, it will be
22    BAKER00058040.
23         A.   I have that.
24         Q.   Okay.  I'll give you a minute to
25    review it.
```

Case 2:25-cv-00009-EASEPPD Doc # 6:15-1 SEALED 01/09/26 Page 19 of 24 PAGEID #: 4809
#: 1138

CONFIDENTIAL TESTIMONY/ATTORNEYS' EYES ONLY

Page 78

1   we just looked at, was that a template agreement

2   as well, as far as you know?

3          A.   Yes, it looks like a, yeah, a

4   template.  Yeah.

5          Q.   And if the customer had asked to

6   remove Section 4.5, is that something Bridgeall

7   would have negotiated?

8                MR. NOYES:  Objection to the form.

9                THE WITNESS:  We would have just

10  removed it.

11  BY MS. BROWN:

12         Q.   Okay.  So turning back to this

13  document, which, again, is Plaintiff's Exhibit 88

14  and the Bates is BAKER58044, do you recognize this

15  document?

16         A.   Just as a similar renewal agreement

17  to the ones I've looked at, yes.

18         Q.   And the file name here, I'll

19  represent to you, includes North American in the

20  title.  And is that consistent with the first part

21  of this contract that refers to Baker & Taylor as

22  indirect owner and agent of Bridgeall?

23         A.   Yes.

24         Q.   Okay.  And if we go to the second

25  page, Section 3e.  I'll give you a minute to look

Case 2:23-cv-00009-EAS-EPD Doc #: 61-1 *SEALED* Filed 01/09/26 Page: 20 of 24 PAGEID #: 1139

Page 174

1  think in your file, Mr. Legowski, it will show up

2  as OCLC_000034 exhibit, if you can find that.

3          A.    Yeah, I've got that.

4          Q.    Okay.  If you could review the

5  document and let me know when you've had a chance

6  to do so.

7          A.    Okay.

8          Q.    Okay.  I'll represent to you that

9  this is OCLC's Framework Agreement which is

10 essentially like a master services agreement.

11 Have you ever seen this document before?

12         A.    I don't believe so.

13         Q.    Okay.  So you did not look at this

14 document in connection with your preparation for

15 today?

16         A.    To be honest, I looked at a few

17 documents, but this -- I don't recall looking at

18 this.

19         Q.    Okay.  If you go to page eleven, and

20 I also have this pulled up on my screen if you

21 want to look and see what I'm looking at --

22         A.    Okay.

23         Q.    -- this is WorldCat rights and

24 responsibilities for the OCLC cooperative.  Have

25 you ever seen this document before?

Page 175

1        A.    It's not familiar to me, no.

2        Q.    Okay.  Are you familiar with any of

3   OCLC's efforts to enforce its contractual

4   restrictions on its WorldCat's records?

5        A.    No.

6        Q.    Have you ever heard of Clarivate?

7        A.    Yes.

8        Q.    Okay.  Are you aware of a litigation

9   brought by OCLC against Clarivate for a product

10  called MetaDoor?

11       A.    No.

12       Q.    One minute.  Did Bridgeall rely

13  exclusively on Baker & Taylor for legal and to

14  stay abreast of these types of issues that might

15  arise with Marc records?

16            MR. NOYES:  Objection to the form.

17  You can answer.

18            THE WITNESS:  So did we -- so I'm not

19  aware of any previous issue.  We've not -- I can't

20  remember another time, you know, speaking to

21  legal -- B&T legal about a similar issue -- or a

22  similar case.

23  BY MS. BROWN:

24       Q.    Okay.  I was asking more generally so

25  let me take a step back and rephrase it a little

Case 2:25-cv-00009-EAS-EPD Doc #: 61-1 *SEALED* Filed: 01/09/26 Page: 22 of 24 PAGEID #: 1141

Page 181

1   Mr. Legowski, correct?

2                    MS. BROWN:   That's correct.   All

3   right.   I think we're off the record, Kathy.

4                    (Thereupon, signature was not

5   waived.)

6                    (Thereupon, the deposition was

7   concluded at 11:34 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL TESTIMONY/ATTORNEYS' EYES ONLY

Page 182

```
 1    STATE OF OHIO            )
 2    COUNTY OF MONTGOMERY )  SS: CERTIFICATE
 3              I, Kathy S. Wysong, RPR, a Notary
 4    Public within and for the State of Ohio, duly
 5    commissioned and qualified,
 6              DO HEREBY CERTIFY that the
 7    above-named STEVEN LEGOWSKI, was by me first duly
 8    sworn to testify the truth, the whole truth and
 9    nothing but the truth.
10              Said testimony was reduced to
11    writing by me stenographically in the presence
12    of the witness and thereafter reduced to
13    typewriting.
14              I FURTHER CERTIFY that I am not a
15    relative or Attorney of either party, in any
16    manner interested in the event of this action,
17    nor am I, or the court reporting firm with which
18    I am affiliated, under a contract as defined in
19    Civil Rule 28(D).
20
21
22
23
24
25
```

CONFIDENTIAL TESTIMONY/ATTORNEYS' EYES ONLY

Page 183

1      IN WITNESS WHEREOF, I have hereunto set

2  my hand and seal of office at Dayton, Ohio, on

3  this 20th day of August, 2025.

4

5

6  _____

   KATHY S. WYSONG, RPR

7  NOTARY PUBLIC, STATE OF OHIO

   My commission expires 12-25-2028

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25